**KAHN SWICK & FOTI, LLC**
Kim E. Miller (SBN 178370)
kim.miller@ksfcounsel.com
250 Park Avenue, 7th Floor
New York, NY 10177
Telephone: (212) 696-3730
Facsimile: (504) 455-1498

*Lead Counsel for Lead Plaintiff Timothy M. Weis,*
*Additional Plaintiff Angelo Federico, and the Settlement Class*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAM FARRAR, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>WORKHORSE GROUP, INC., DUANE HUGHES, STEVE SCHRADER, ROBERT WILLISON, and GREGORY ACKERSON<br><br>Defendants. | Case No. 2:21-cv-02072-CJC-PVC<br><br>LEAD PLAINTIFF'S NOTICE OF MOTION AND UNOPPOSED MOTION FOR (I) PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; (II) CERTIFICATION OF THE CLASS FOR SETTLEMENT PURPOSES; (III) APPROVAL OF LEAD COUNSEL AS CLASS COUNSEL; (IV) APPROVAL OF PLAINTIFFS AS CLASS REPRESENTATIVES; (V) APPROVAL OF KCC AS CLAIMS ADMINISTRATOR; AND (VI) APPROVAL OF PROPOSED DISTRIBUTION OF NOTICE TO CLASS<br><br>JUDGE: Hon. Cormac J. Carney<br>DATE: February 27, 2023<br>TIME: 1:30 p.m.<br>CTRM: 9B |

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................. iii

NOTICE OF MOTION AND MOTION ................................................ 1

MEMORANDUM OF LAW ................................................................. 2

I.      PRELIMINARY STATEMENT ................................................. 2

II.     SUMMARY OF THE LITIGATION AND SETTLEMENT .................. 3

    A.    Nature of the Case ............................................................... 3

    B.    Procedural History .............................................................. 4

        1.    The Complaint and Motion to Dismiss ...................... 4

        2.    Discovery ............................................................... 4

        3.    Post-Complaint Developments .................................. 5

        4.    Mediation ............................................................... 6

        5.    The Settlement ........................................................ 6

III.    THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT ............................................................... 7

    A.    Lead Plaintiff and Lead Counsel Have Zealously Represented the Settlement Class ................................. 9

    B.    The Settlement Resulted from Good Faith, Arm's Length Negotiations ........................................................ 9

    C.    The Relief Provided to the Settlement Class Is Adequate ................. 11

        1.    Amount Offered in Settlement ................................ 11

        2.    Costs, Risks, Complexity, and Delay of Further Litigation ..... 12

        3.    Proposed Method for Distributing Relief .................. 14

        4.    Attorneys' Fees ..................................................... 14

        5.    Service Award ....................................................... 15

        6.    23(e)(3) Agreement ............................................... 15

    D.    The Settlement Treats All Settlement Class Members Equitably ....... 16

    E.    The Remaining Factors Support Approval ......................... 16

        1.    Extent of Discovery Completed and Stage of Proceedings ...... 16

        2.    Risks of Maintaining the Class Through Trial ........... 17

IV.   THE COURT SHOULD CERTIFY THE CLASS FOR
      SETTLEMENT PURPOSES ...................................................................17

    A.   Rule 23(a)'s Requirements Are Met .........................................18

        1.   Numerosity Is Satisfied....................................................18

        2.   Questions of Law and Fact Are Common ...............................18

        3.   Plaintiffs' Claims Are Typical ...........................................19

        4.   Plaintiffs Will Fairly and Adequately Protect the Interests
            of the Settlement Class.....................................................19

    B.   Rule 23(b)(3)'s Requirements Are Met ............................................20

        1.   Common Questions of Law or Fact Predominate....................20

        2.   A Class Action Is a Superior Method of Adjudication.............20

V.    THE COURT SHOULD APPOINT PLAINTIFFS AS CLASS
      REPRESENTATIVES AND LEAD COUNSEL AS CLASS
      COUNSEL....................................................................................21

VI.   KCC SHOULD BE APPOINTED CLAIMS ADMINISTRATOR.........21

VII.  THE PROPOSED NOTICE SHOULD BE APPROVED .......................21

VIII. PROPOSED SCHEDULE.........................................................................22

IX.   CONCLUSION ......................................................................................23

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## TABLE OF AUTHORITIES

**Cases**

*Amchem Prods. v. Windsor*, 521 U.S. 591 (1997) ........................................ 17, 20, 21

*Becerra-South v. Howroyd-Wright Emp't Agency, Inc.*, No. 18-08348,
  2021 U.S. Dist. LEXIS 14633 (C.D. Cal. Jan. 25, 2021) .................................... 15

*Beck v. Banc of Cal. N.A.*, No. 16-1676, 2019 U.S. Dist. LEXIS 3503
  (C.D. Cal. Jan. 7, 2019) .......................................................................... 14, 16

*Beirne v. Trepco Imps. & Distrib.*, No. 19-170, 2020 U.S. Dist. LEXIS 250856
  (C.D. Cal. July 28, 2020) ................................................................................ 19

*Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245 (N.D. Cal.
  Mar 19, 2015) ................................................................................................. 15

*Briseno v. Henderson*, 998 F.3d 1014 (9th Cir. 2021) .................................. 9

*Brooks v. Life Care Ctrs., Inc.*, No. 12-659, 2015 U.S. Dist. LEXIS 196428
  (C.D. Cal. Oct. 19, 2015) ................................................................................ 17

*Brown v. China Integrated Energy*, No. 11-02559, 2016 U.S. Dist. LEXIS
  204416 (C.D. Cal. July 22, 2016) .................................................................. 8, 13

*Churchill Vill. LLC v. Gen. Elec.*, 361 F.3d 566 (9th Cir. 2004) ................... 8

*Class Plaintiffs v. Seattle*, 955 F.2d 1268 (9th Cir. 1992) ........................... 7

*Conti v. Am. Honda Motor Co.*, No. 19-2160, 2022 U.S. Dist. LEXIS 1561
  (C.D. Cal. Jan. 4, 2022) .................................................................................. 9

*Desai v. Deutsche Bank Sec. Ltd.*, 573 F.3d 931 (9th Cir. 2009) ............... 17

*Epstein v. MCA, Inc.*, 50 F.3d 644 (9th Cir. 1995) ...................................... 17

*Franklin v. Kaypro Corp.*, 884 F.2d 1222 (9th Cir. 1989) ........................... 7

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ........................ 7, 19

*Hartranft v. TVI, Inc.*, No. 15-1081, 2019 U.S. Dist. LEXIS 222619
  (C.D. Cal. Oct. 21, 2019) ................................................................................ 2

*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011)...... 10, 15

*In re Broadcom Corp. Sec. Litig.*, No. 01-275, 2005 U.S. Dist. LEXIS 41983
    (C.D. Cal. Sept. 14, 2005) ..................................................................12

*In re Cooper Cos. Secs. Litig.*, 254 F.R.D. 628 (C.D. Cal. 2009) ............. 17, 19, 20

*In re Critical Path, Inc. Sec. Litig. v. Critical Path, Inc.*, No. 01-00551,
    2002 U.S. Dist. LEXIS 26399 (N.D. Cal. June 18, 2002) ..................................11

*In re Diamond Foods, Inc.*, No. 11-05386, 2014 U.S. Dist. LEXIS 3252
    (N.D. Cal. Jan. 10, 2014) ..................................................................13

*In re Emulex Corp.*, 210 F.R.D. 717 (C.D. Cal. 2002)...........................................19

*In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.*, No. MDL 901,
    1993 U.S. Dist. LEXIS 21272 (C.D. Cal. Feb. 26, 1993) ....................................18

*In re Heritage Bond Litig.*, No. 02-ML-1475, 2005 U.S. Dist. LEXIS 13555
    (C.D. Cal. June 10, 2005) ..................................................................9

*In re Nexus 6P Procs. Liab. Litig.*, No. 17-cv-02185, 2019 U.S. Dist. LEXIS
    197733 (N.D. Cal. Nov. 12, 2019) ..........................................................14

*In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036 (N.D. Cal. 2008) .................14

*In re Oracle Corp. Sec. Litig.*, 627 F.3d 376 (9th Cir. 2010) ...............................13

*In re Polaroid ERISA Litig.*, 240 F.R.D. 65 (S.D.N.Y. 2006)..................................9

*In re Portal Software, Inc. Sec. Litig.*, No. 03-5138, 2007 U.S. Dist. LEXIS
    88886 (N.D. Cal. Nov. 26, 2007) ...........................................................14

*In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078 (N.D. Cal. 2007) ...............8

*Jiangchen v. Rentech, Inc.*, No. 17-1490, 2019 U.S. Dist. LEXIS 180474
    (C.D. Cal. Oct. 10, 2019)........................................................ 8, 9, 10, 16

*Johnson v. Gen. Mills, Inc.*, No. 10-61, 2013 U.S. Dist. LEXIS 90338
    (C.D. Cal. June 17, 2013) ............................................................. 7, 15

*Linney v. Cellular Alaska P'ship*, 151 F.3d 1234 (9th Cir. 1998)............................8

*Longo v. OSI Sys., Inc.*, No. 17-8841, 2022 U.S. Dist. LEXIS 158606
    (C.D. Cal. Aug. 31, 2022) ........................................................... 10, 16

*Lopez v. Areotek, Inc.*, No. 14-803, 2017 U.S. Dist. LEXIS 233622

(C.D. Cal. Aug. 3, 2017) ...................................................................20

*Maley v. Del Global Techs. Corp.*, 186 F.Supp. 2d 358 (S.D.N.Y. 2002) ....... 11, 15

*McKenzie v. Federal Exp. Corp.*, No. 10-02420, 2012 U.S. Dist. LEXIS

103666 (C.D. Cal. July 2, 2012) ......................................................17

*Negrete v. Allianz Life Ins. Co.*, 238 F.R.D. 482 (C.D. Cal. 2006) .......................20

*Officers for Justice v. Civ. Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982) .................8

*Pederson v. Airport Terminal Servs.*, No. 15-02400, 2018 U.S. Dist. LEXIS

93862 (C.D. Cal. Apr. 5, 2018) .........................................................9

*Retina Assocs. Med. Grp. v. Keller Instruments*, No. 18-1358,

2019 U.S. Dist. LEXIS 240001 (C.D. Cal. July 22, 2019) ................................21

*Smilovits v. First Solar, Inc.*, 295 F.R.D. 423 (D. Ariz. 2013) ...............................19

*Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003) ......................................7

*Tadepalli v. Uber Techs., Inc.*, No. 15-cv-04348, 2015 U.S. Dist. LEXIS

169076 (N.D. Cal. Dec. 17, 2015) .....................................................21

*Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227 (9th Cir. 1996) ..........................20

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011) .........................................18

*Weeks v. Kellogg Co.*, No. 09-08102, 2011 U.S. Dist. LEXIS 155472

(C.D. Cal. Nov. 23, 2013) ...............................................................13

**Statutes**

15 U.S.C. §78u-4(a)(7) ..........................................................................23

Exchange Act §10(b) ...........................................................................4

Exchange Act §20(a) ...........................................................................4

**Rules**

Fed R. Civ. P. 23(c)(2)(B) ......................................................................21

Fed. R. Civ. P. 23(a) ...........................................................................17

Fed. R. Civ. P. 23(b)(3) ........................................................................20

Fed. R. Civ. P. 23(c)..................................................................17

Fed. R. Civ. P. 23(e)(1)(B) ......................................................22

Fed. R. Civ. P. 23(e)(2)..........................................................7, 8

Rule 10b-5(a) .............................................................................3

Rule 10b-5(b) .............................................................................3

Rule 10b-5(c) .............................................................................3

## **Other Authorities**

Cornerstone Research, *Securities Class Action Settlements: 2021 Review and Analysis*....................................................................13

NERA Economic Consulting, *Recent Trends in Securities Class Action Litigation: 2021 Full-Year Review* ...................................................12

## NOTICE OF MOTION AND MOTION

Lead Plaintiff Timothy M. Weis ("Lead Plaintiff") moves, pursuant to Fed. R. Civ. P. 23(e), for entry of the Parties' agreed-upon Proposed Order Preliminarily Approving Settlement and Providing for Notice (the "Preliminary Approval Order"), attached hereto as Exhibit 1.

If entered, the Preliminary Approval Order will, among other things:

(1) Preliminarily approve the proposed class action settlement for $35,000,000 ($15,000,000 in cash and $20,000,000 in shares of Workhorse common stock), subject to notice to the Class and later consideration of final approval to resolve this Litigation in its entirety;

(2) Certify the Class for purposes of the Settlement only;

(3) Appoint Lead Counsel as Class Counsel;

(4) Appoint Lead Plaintiff and Additional Plaintiff Angelo Federico (together with Lead Plaintiff, "Plaintiffs") as Class Representatives;

(5) Approve KCC Class Action Services, LLC as Claims Administrator;

(6) Approve the form, content and manner of the proposed Notice to Class Members; and

(7) Schedule a hearing, and certain deadlines related thereto, on final approval of the Settlement and Lead Counsel's motion for an award of attorneys' fees, litigation expenses, and a service award to Plaintiffs.

The specific terms of the proposed Settlement are set forth in the Stipulation of Settlement dated January 13, 2023 (the "Stipulation"), attached hereto as Exhibit 2.[1]

---

[1] All capitalized terms used herein that are not otherwise defined herein shall have the meanings provided in the Stipulation.

**MEMORANDUM OF LAW**

## I.   PRELIMINARY STATEMENT

The proposed Settlement – which will resolve all claims against Defendants for $35 million in cash and stock – is fair, reasonable, and in the best interests of the Settlement Class.[2] The risks of prosecuting this litigation through the remainder of discovery, class certification, summary judgment, and trial would delay any recovery for years and, in fact, raise the strong likelihood of recovering substantially less, or nothing at all in the future. This risk is exacerbated by the Company's precarious financial position, rapidly depleting insurance coverage available to fund a settlement, and ongoing governmental investigation. The Settlement "bypasses these risks and guarantees a tangible and substantial result" for investors <u>now</u>. *Hartranft v. TVI, Inc.*, No. 15-1081, 2019 U.S. Dist. LEXIS 222619, at *9-10 (C.D. Cal. Oct. 21, 2019) (Carney, J.). Moreover, the Settlement was creatively structured to maximize recovery for the Settlement Class: it will receive virtually all of Defendants' remaining insurance coverage ($15 million), as well as $20 million in Workhorse common stock.

Lead Plaintiff and Lead Counsel are well-situated to evaluate the risks and benefits of settlement after extensively investigating the claims, researching and drafting an amended complaint, opposing Defendants' motion to dismiss, reviewing more than 100,000 pages of documents produced by Defendants and third parties, preparing for multiple depositions, consulting with an economic expert, and engaging in a full-day in-person mediation and ongoing settlement discussions thereafter. The Settlement resulted from good-faith, arm's length negotiations

---

[2] "Settlement Class" is defined as all Persons who purchased or otherwise acquired Workhorse securities during the Class Period and were damaged thereby, excluding Defendants, officers, and directors of Workhorse, members of their immediate families and their legal representatives, heirs, successors, or assigns, any entity in which Defendants have or had a controlling interest, and Persons who timely and validly request exclusion.

between experienced counsel, under the supervision of a seasoned, well-respected mediator.

For these reasons, the Court should preliminarily approve the Settlement. Lead Plaintiff also seeks provisional certification of the Class for settlement purposes only, appointment of Lead Counsel as Class Counsel, and appointment of Plaintiffs as Class Representatives. Finally, Lead Plaintiff seeks approval of KCC Class Action Services, LLC ("KCC") as Claims Administrator and a finding that the proposed Notice satisfies the Federal Rules and the PSLRA and can be disseminated to the Settlement Class.

## II.   SUMMARY OF THE LITIGATION AND SETTLEMENT

### A. <u>Nature of the Case</u>

Plaintiffs allege Defendants Workhorse Group, Inc. ("Workhorse" or the "Company") and certain of its executives – Duane Hughes, former Chief Executive Officer, Steve Schrader, former Chief Financial Officer, Robert Willison, former Chief Operating Officer, and Gregory Ackerson, Chief Accounting Officer and Corporate Controller (collectively, "Defendants"): (1) made materially false and misleading statements regarding the Company's production and manufacturing capabilities, "backlog" of purchase orders, and positioning for a multi-billion dollar contract with the United States Postal Service ("USPS") to manufacture its new fleet of next generation delivery vehicles ("NGDV"; the "NGDV Contract"), in violation of Exchange Act §§10(b) and 20(a) and Rule 10b-5(b) and (2) engaged in a scheme to defraud investors into believing, among other things, that Workhorse was capable of winning the NGDV Contract, in violation of Rules 10b-5(a) and (c). As a result of Defendants' misrepresentations, Plaintiffs allege the price of Workhorse's stock was artificially inflated. This inflation was removed through a series of corrective disclosures beginning on October 8, 2020, when an independent research firm issued a report finding Workhorse lacked the ability to produce vehicles anywhere near the rate it had touted and there were no active purchase orders for its vehicles, and

culminating on May 10, 2021, when Defendants revealed Workhorse had only produced a fraction of its year-end target of vehicles. Workhorse's stock dropped precipitously, harming Plaintiffs and the Class.

### B. Procedural History

#### 1. The Complaint and Motion to Dismiss

On March 8, 2021, the initial complaint was filed in this Action. Three days later, a substantially similar complaint was filed in *Kinney v. Workhorse Group, Inc., et al*, No. 2:21-cv-02207-CJC-PVC (C.D. Cal.). On May 18, 2021, the Court consolidated the actions, appointed Mr. Weis as Lead Plaintiff, and appointed Kahn Swick & Foti LLC ("KSF") as Lead Counsel. ECF No. 61.

Following an extensive investigation involving interviews of former employees, substantial legal and factual research, and consultation with an economic expert, Lead Plaintiff filed the operative Amended Complaint on July 16, 2021, naming Mr. Federico as an Additional Plaintiff. ECF No. 64 (the "AC"). Defendants moved to dismiss on September 3, 2021, which the Court substantially denied on December 2, 2021. ECF Nos. 65, 74.

#### 2. Discovery

Immediately thereafter, the Parties began formal discovery, exchanging initial disclosures on January 14, 2022. In the ensuing months, Lead Plaintiff propounded Requests for Production and Interrogatories on Defendants and served document subpoenas on 18 third parties, including Workhorse's accountant and various Workhorse customers. Counsel engaged in numerous meet-and-confers and exchanged written correspondence regarding Defendants' objections, the scope of document discovery, search terms, custodians and electronically-stored information and other potential sources of relevant information. Lead Counsel also corresponded extensively with Counsel for Defendants and conducted meet-and-confers with subpoenaed third parties.

At the time of the Settlement, discovery was ongoing. Lead Counsel had reviewed and analyzed more than 100,000 pages of documents produced by Defendants and third parties, had served a 30(b)(6) deposition notice on Workhorse, and was preparing for that deposition as well as depositions of third-party VT Hackney, (Workhorse's initial partner on the NGDV Contract), and several Workhorse employees with knowledge of the NGDV Contract, Workhorse's production capabilities, and other topics central to Plaintiffs' claims. Lead Counsel had also reached out to Defendants to coordinate on specific dates for depositions of Workhorse's former Director of Dealer and Support Operations and Workhorse's former Director of Business Development.

### 3. **Post-Complaint Developments**

On July 29, 2021, the Company announced it was "withdrawing its previously stated guidance" and had replaced Defendant Hughes as CEO effective August 1, 2021. Less than a month later, on August 29, 2021, the Company revealed it dramatically failed to meet its production goals and would be completely re-designing its trucks. On September 22, 2021, the Company announced an immediate suspension of vehicle deliveries and a recall because it needed to conduct "additional testing and modifications" to comply with federal safety standards. On September 30, 2021, the Company announced Defendants Schrader and Willison had left the Company. And on November 8, 2021, the Company announced it was being investigated by the SEC and the DOJ for matters relating to the allegations set forth in this Action. The DOJ investigation is still ongoing, while the SEC investigation concluded very recently with no enforcement action taken.[3] On December 28, 2022,

---

[3] *See* Workhorse 8-K filed Dec. 28, 2022, *available at* https://www.sec.gov/ix?doc=/Archives/edgar/data/0001425287/000121390022083 044/ea170910-8k_workhorse.htm.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

the Company announced it had discontinued production of C1000 vehicles[4] – the
same vehicles that are the subject of this litigation.

### 4.  Mediation

On August 23, 2022, the Parties participated in a full-day, in-person mediation
in New York City before Jed D. Melnick, Esq., of JAMS, a nationally recognized
mediator. Prior thereto, the Parties exchanged extensive briefs setting forth their
positions on the claims and defenses, the evidence adduced during discovery,
damages, and other contested issues. No settlement was reached at the mediation,
but the Parties continued to negotiate both with and without Mr. Melnick's
assistance, as discovery continued on a parallel track.

### 5.  The Settlement

Approximately two months after mediation, on October 24, 2022, the Parties
accepted a mediator's proposal to settle the case and signed a Term Sheet.  Pursuant
to the Settlement, Defendants will pay $35 million (the "Settlement Amount") –
consisting of virtually all of their remaining insurance policies, $15 million, in cash
(the "Settlement Cash") and $20 million in Workhorse common stock (the
"Settlement Stock").[5] Ex. 2 at ¶¶1.39, 2.2. In return, Settlement Class Members will
dismiss, with prejudice, all claims that were, or could have been, brought, against
Defendants. *Id.* at ¶¶1.34, 4.1-4.3. Each Authorized Claimant will receive a *pro rata*
share of the Net Settlement Fund,[6] in some combination of cash and/or Workhorse

---

[4] *Id.*

[5] The Settlement Stock will be valued based on the volume weighted average price
("VWAP") for the fifteen consecutive trading days ending the trading day
immediately preceding the date the Judgment is entered. *See* Ex. 2 at ¶1.39. To
protect the Settlement Class, the Stipulation provides if, at market close on the
trading day before the Transfer Date, the price per share deviates more than 25%
above or below the VWAP, the number of shares of Settlement Stock shall be
adjusted so its overall value is $20,000,000. *Id.* at ¶2.4.

[6] Net Settlement Fund means the Settlement Fund less: (i) any Court awarded
attorneys' fees, costs, and expenses; (ii) any notice and administration costs; (iii)
taxes and tax expenses; and (iv) other Court-approved deductions.  *Id.* at ¶1.29.

MOTION FOR PRELIMINARY APPROVAL
Case No. 2:21-CV-02072-CJC-PVC

common stock, based on their "recognized claim" – which depends on the number of shares acquired and the dates of their purchase and sale as compared to the alleged corrective disclosure date. *Id.* at Ex. A-1, pp. 11-20.

The Parties notified the Court of the Settlement on October 28, 2022, ECF No. 100, and signed the Stipulation of Settlement ("Stipulation") on January 13, 2023.

## III.   THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT

The Ninth Circuit recognizes "a 'strong judicial policy that favors settlements, particularly where complex class action litigation is concerned.'" *Johnson v. Gen. Mills, Inc.*, No. 10-61, 2013 U.S. Dist. LEXIS 90338, at *7 (C.D. Cal. June 17, 2013) (Carney, J.) (quoting *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)). Thus, courts should defer to "the private consensual decision of the parties to settle" and advance the "overriding public interest in settling and quieting litigation." *Franklin v. Kaypro Corp.*, 884 F.2d 1222, 1229 (9th Cir. 1989).

Approval of a settlement "'requires the district court to determine whether a proposed settlement is fundamentally fair, adequate, and reasonable.'" *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003) (citation omitted). Under recent amendments to Rule 23(e)(2), the Court must consider whether:

> (A) class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account (i) the costs, risks, and delay of trial and appeal, (ii) the effectiveness of any proposed method of distributing relief to the class, (iii) the terms of any proposed award of attorneys' fees, and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

The Court can also look to the factors traditionally considered in the Ninth Circuit (the "*Staton* factors"), which include "'the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of

maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; . . . and the reaction of the class members . . . .'" *Jiangchen v. Rentech, Inc.*, No. 17-1490, 2019 U.S. Dist. LEXIS 180474, at *12 (C.D. Cal. Oct. 10, 2019) (citing *Churchill Vill. LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)).[7]

In reviewing the Settlement, the Court "should neither judge the merits of the claims in dispute, nor compare the proposed settlement 'against a hypothetical or speculative measure of what might have been achieved by the negotiators.'" *Brown v. China Integrated Energy*, No. 11-02559, 2016 U.S. Dist. LEXIS 204416, at *15 (C.D. Cal. July 22, 2016) (citing *Officers for Justice v. Civ. Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982)). Further, "[a] proposed settlement may be fair, adequate, and reasonable even though greater recovery might be available to the class members at trial." *Id.* (citing *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998)). Indeed, "[i]t is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair." *Officers for Justice*, 688 F.2d at 628.

Finally, at preliminary approval, a full "fairness hearing" is not required; rather, the inquiry is whether the settlement "appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007). Where, as here, "there are no subtle signs of collusion, 'courts should [not] unnecessarily meddle in class

---

[7] The Rule 23(e)(2) amendments were not intended to "displace any factor [used by federal courts], but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." *Jiangchen,* 2019 U.S. Dist. LEXIS 180474, at *12 (citing Advisory Committee's note and applying Rule 23(e)(2) "through the lens of the Ninth Circuit's factors and existing relevant precedent").

settlements negotiated by the parties[.]'" *Conti v. Am. Honda Motor Co.*, No. 19-2160, 2022 U.S. Dist. LEXIS 1561, at *15 (C.D. Cal. Jan. 4, 2022) (Carney, J.) (citing *Briseno v. Henderson*, 998 F.3d 1014, 1027 (9th Cir. 2021)).

### A. <u>Lead Plaintiff and Lead Counsel Have Zealously Represented the Settlement Class</u>

Lead Plaintiff has prosecuted the claims on behalf of the Settlement Class with diligence. Further, Lead Plaintiff's interests have been, at all times, aligned with Settlement Class Members' interests: they bring the same claims asserting the same legal theories over the same Class Period. *See In re Polaroid ERISA Litig.*, 240 F.R.D. 65, 77 (S.D.N.Y. 2006) ("Where plaintiffs and class members share the common goal of maximizing recovery, there is no conflict of interest between the class representatives and other class members.") (cited in *Jiangchen*, 2019 U.S. Dist. LEXIS 180474, at *15).   Lead Counsel has vigorously litigated this case from its inception, investigating and developing the claims, successfully defeating Defendants' motion to dismiss, and conducting meaningful discovery. This factor supports preliminary approval.

### B. <u>The Settlement Resulted from Good Faith, Arm's Length Negotiations</u>

"The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive'" and "weighs in favor of preliminary approval." *Pederson v. Airport Terminal Servs.*, No. 15-02400, 2018 U.S. Dist. LEXIS 93862, at *17 (C.D. Cal. Apr. 5, 2018) (citation omitted). Further, "[t]he recommendation of experienced counsel carries significant weight in the court's determination of the reasonableness of the settlement." *In re Heritage Bond Litig.*, No. 02-ML-1475, 2005 U.S. Dist. LEXIS 13555, at *33 (C.D. Cal. June 10, 2005) (quotation omitted).

Here, the Parties settled only after participating in a full-day, in-person mediation, overseen by an experienced mediator who actively explored the relevant issues with the Parties – including the Company's financial condition. After

intensive back-and-forth arm's length negotiations, which continued for two months after the mediation, during which time Lead Counsel continued to collect and review documents and prepare for depositions, the Parties reached an agreement to settle in accordance with the mediator's recommendation. The Parties and their counsel were informed and knowledgeable about the strengths and weaknesses of the case prior to reaching a settlement, having researched and investigated the claims before filing the AC, briefing the opposition to Defendants' motion to dismiss, and conducting substantial discovery. Lead Counsel has extensive experience prosecuting federal securities class actions, having served as lead or co-lead counsel in numerous securities actions around the county, and has secured substantial sums for investors. *See* ECF No. 31-5 (KSF's résumé); ECF No. 61 (order appointing Lead Counsel). That counsel "are experienced litigators in this field, have worked on this case at length, and have an understanding of its risks, also cuts in favor of finding the settlement procedurally robust and the product of arm's length negotiations." *Jiangchen*, 2019 U.S. Dist. LEXIS 180474, at *17 (citation omitted).

Finally, "none of the 'subtle signs of collusion' [referred to as the "*Bluetooth* factors"] that the Ninth Circuit has warned of are present here." *Id.* These include "(1) when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded"; "(2) when the parties negotiate a 'clear sailing' arrangement[;]"[8] and "(3) when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund[.]" *Id.* (citing *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011)). The Settlement Class will receive a substantial Settlement Amount, and Lead Counsel will seek attorneys' fees of no more than 25% of the

---

[8] A "clear sailing" agreement is one that "provid[es] for the payment of attorneys' fees separate and apart from class funds," or where "the defendant agrees not to oppose a petition for a fee award up to a specified maximum value." *Longo v. OSI Sys., Inc.*, No. 17-8841, 2022 U.S. Dist. LEXIS 158606, at *9 n.4 (C.D. Cal. Aug. 31, 2022) (citing *Bluetooth*, 654 F.3d at 940, 947 n.6).

Settlement Fund – a reasonable percentage consistent with the complexity of this Action, the excellent results achieved, and the amount of effort expended, and risk faced, by Lead Counsel. Further, there is neither a "clear sailing arrangement" nor any provision that un-awarded fees will revert to Defendants.

### C. The Relief Provided to the Settlement Class Is Adequate

#### 1. Amount Offered in Settlement

If Lead Plaintiff had continued to litigate the case, any available funds or insurance proceeds would have been depleted, resulting a lower recovery, or likely no recovery at all. *See In re Critical Path, Inc. Sec. Litig. v. Critical Path, Inc.*, No. 01-00551, 2002 U.S. Dist. LEXIS 26399, at *20-21 (N.D. Cal. June 18, 2002) ("Through protracted litigation, the settlement class could conceivably extract more, but at a plausible risk of getting nothing…; watching [defendant] fall into bankruptcy; and, most certainly, drying up the available insurance."). By settling now, Lead Plaintiff and Lead Counsel achieved an exceptional result for the Settlement Class: they were able to extract virtually all of Defendants' remaining insurance proceeds, and a sizeable amount of Workhorse common stock – for a total Settlement Fund valued at $35 million – from a company with rapidly-dwindling cash, limited insurance coverage, business uncertainties, and ongoing regulatory issues. *See Maley v. Del Global Techs. Corp.*, 186 F.Supp. 2d 358, 365 (S.D.N.Y. 2002) (approving settlement consisting of cash, stock, and warrants because it "provides the Class with the maximum available cash -- in light of the limited insurance coverage and poor cash position of the Company -- while also providing substantial compensation in equity and notes.").

Finally, after consulting with an economic expert, Lead Plaintiff and Lead Counsel believe a successful verdict on all claims could result in aggregated damages as high as $1.2 billion. However, given Workhorse's precarious financial position, the Settlement Class could have recovered nothing had litigation continued while the policies quickly wasted. At any rate, taking this number at face value, the

Settlement constitutes approximately 3% of maximum Class-wide damages – within the range of reasonableness and on par with comparable securities class action settlements. *See In re Broadcom Corp. Sec. Litig.*, No. 01-275, 2005 U.S. Dist. LEXIS 41983, at *20-21 (C.D. Cal. Sept. 14, 2005) (2.7% of damages "not [] inconsistent with the average recovery in securities class action[s]").[9]

### 2. <u>Costs, Risks, Complexity, and Delay of Further Litigation</u>

A substantial portion of Defendants' insurance policies has already been depleted – not only by defense costs of this litigation, but also by related shareholder derivative suits and governmental investigations. Absent settlement, defense costs will fully exhaust Defendants' remaining insurance proceeds before any eventual judgment could ever be paid. Moreover, the Company has very limited cash; just after the Term Sheet was executed, the Company reported it had approximately $120 million, which would be sufficient to fund its operating expenses for only the next twelve months, and it had suffered a net loss of $35.4 million.[10] Further, the outcome and impact of the pending DOJ investigation is uncertain.

"[I]t is not unreasonable for counsel and the class representative to prefer the bird in hand,' given concerns about [Workhorse's] strained financial state and its

---

[9] *See also* NERA Economic Consulting, *Recent Trends in Securities Class Action Litigation: 2021 Full-Year Review* at 23 (median settlement value 1.3% of "NERA-defined investor losses" for securities class actions with damages of $1 billion to $1.49 billion between 2012 and 2021), *available at* https://www.nera.com/publications/archive/2022/recent-trends-in-securities-class-action-litigation--2021-full-y.html; Cornerstone Research, *Securities Class Action Settlements: 2021 Review and Analysis* at 6 (median recovery of 2.3% of simplified tiered damages for securities class actions with damages over $1 billion between 2012-2020), *available at* https://www.cornerstone.com/wp-content/uploads/2022/03/Securities-Class-Action-Settlements-2021-Review-and-Analysis.pdf. Further, as in any securities class action, it is almost certain that less than 100% of eligible Settlement Class Members will file claims (despite efforts to notify as many eligible claimants as possible); accordingly, the percentage of damages Settlement Class Members will recover will likely be higher.

[10] *See* Workhorse 10-Q for quarter ended Sept. 30, 2022, at 23, *available at* https://www.sec.gov/ix?doc=/Archives/edgar/data/1425287/000142528722000102/wkhs-20220930.htm. Workhorse had approximately $201 million in cash at the same time the previous year. *Id.* at 6, 23.

ability to pay a judgment following further litigation.'" *In re Diamond Foods, Inc.*, No. 11-05386, 2014 U.S. Dist. LEXIS 3252, at *9 (N.D. Cal. Jan. 10, 2014) (citation omitted); *see also Hartranft*, 2019 U.S. Dist. LEXIS 222619, at *9 ("Defendants' economic difficulties and risk of declaring bankruptcy" weighed in favor of approval); *Brown*, 2016 U.S. Dist. LEXIS 204416, at *21-22 (approving settlement where eroding insurance coverage and lack of assets raised concerns regarding defendant's ability to pay a judgment).

Putting aside these concerns, there are other risks to consider. Although Lead Plaintiff and Lead Counsel believe the merits of the case are strong, Defendants advanced several potentially meritorious defenses: they disputed the falsity and materiality of their alleged misstatements; challenged whether certain alleged misstatements inflated Workhorse's stock price; and argued the requisite scienter was lacking. Even if Plaintiffs established liability, Defendants would have contested damages. Each of these would have presented significant obstacles to Plaintiffs' success at summary judgment and/or trial. *See*, *e.g.*, *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 395 (9th Cir. 2010) (affirming summary judgment for defendants on loss causation); *Weeks v. Kellogg Co.*, No. 09-08102, 2011 U.S. Dist. LEXIS 155472, at *47-48 (C.D. Cal. Nov. 23, 2013) ("[T]hat this issue, which is at the heart of plaintiffs' case, would have been the subject of competing expert testimony suggests that plaintiffs' ability to prove liability was somewhat unclear; this favors a finding that the settlement is fair.").  Further, even if Plaintiffs won at trial and their expert economist's approach was endorsed by the jury and the verdict upheld on appeal, the issue of collectability would come into play given Defendants' lack of insurance and liquid assets.

Considering the risks of continued litigation and the time and expense required to prosecute this litigation through trial, the Settlement represents a meaningful and certain recovery that is in the best interests of the Settlement Class. *See Beck v. Banc of Cal. N.A.*, No. 16-1676, 2019 U.S. Dist. LEXIS 3503, at *5-6

MOTION FOR PRELIMINARY APPROVAL
Case No. 2:21-CV-02072-CJC-PVC

(C.D. Cal. Jan. 7, 2019) (Carney, J.) ("The obstacles inherent in continued litigation, when coupled with the risks in obtaining class certification, weigh in favor of granting final approval of the Settlement Agreement.") (citing *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1041-42 (N.D. Cal. 2008) (settlement offered "immediate and certain award" in face of litigation risks); *In re Portal Software, Inc. Sec. Litig.*, No. 03-5138, 2007 U.S. Dist. LEXIS 88886, at *8 (N.D. Cal. Nov. 26, 2007) ("Additional consideration of increased expenses of fact and expert discovery and the inherent risks of proceeding to summary judgment, trial and appeal also support the settlement.")).

### 3. <u>Proposed Method for Distributing Relief</u>

"A plan of allocation 'need only have a reasonable, rational basis, particularly if recommended by experienced and competent counsel.'" *In re Nexus 6P Procs. Liab. Litig.*, No. 17-cv-02185, 2019 U.S. Dist. LEXIS 197733, at *28 (N.D. Cal. Nov. 12, 2019) (citation omitted).

KCC, an experienced Claims Administrator selected by Lead Counsel after a competitive bidding process (subject to Court approval), will process claims under Lead Counsel's guidance and distribute the Net Settlement Fund *pro rata* to Settlement Class Members according to a Plan of Allocation developed by Lead Counsel in conjunction with an economic expert. Ex. 2 at ¶5.1; *id.* at Ex. A-1, pp. 11-20. KCC will audit claims, provide Settlement Class Members with a reasonable opportunity to cure deficiencies, and evaluate the proposed distribution according to the Plan of Allocation. Ex. 2 at ¶¶5.6-5.10. Because the Plan of Allocation was proposed by experienced counsel and has a reasonable and rational basis, it should be preliminarily approved.

### 4. <u>Attorneys' Fees</u>

As disclosed in the Notice, Lead Counsel will apply for a fee award not to exceed 25% of the Settlement Fund – in the same proportion of Settlement Cash and

Settlement Stock as the Settlement Class will receive.[11] As will be addressed more fully in the briefing on final approval and for attorneys' fees, this award is justified in light of the complexity of the case, the high quality of work and effort expended by Lead Counsel, the excellent result achieved, and the risks Lead Counsel undertook on a wholly contingent basis, and is consistent with the Ninth Circuit's "benchmark" for a reasonable fee award. *See Johnson*, 2013 U.S. Dist. LEXIS 90338, at *16-17 (citing *Bluetooth*, 654 F.3d at 942).

### 5. Service Award

Plaintiffs were actively involved in this case. They assisted with the investigation of the claims, reviewed the AC, provided extensive documents supporting the claims to Lead Counsel, monitored the litigation, provided input during settlement negotiations, and approved the Settlement. For these efforts, they should receive a service award no greater than $10,000. *See Becerra-South v. Howroyd-Wright Emp't Agency, Inc.*, No. 18-08348, 2021 U.S. Dist. LEXIS 14633, at *15 (C.D. Cal. Jan. 25, 2021) (Carney, J.). ("In the Ninth Circuit, a $5,000 incentive award is 'presumptively reasonable"; awarding $5,000 to plaintiff in light of time and effort spent) (citing *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 266 (N.D. Cal. Mar 19, 2015)).[12]

### 6. 23(e)(3) Agreement

The Stipulation identifies the Supplemental Agreement, which allows Defendants to terminate the Settlement if Settlement Class Members possessing a certain aggregate number of securities exclude themselves from the Settlement

---

[11] "Counsel, in seeking payment *pari passu* with the recovery to be received by members of the Class, will bear the same risks of the 'paper' components of the Settlement as the Class." *Maley*, 186 F.Supp. 2d at 368 n.4.

[12] $5,000 in March 2015 (when *Bellinghausen* was decided) is equivalent to $6,304 in November 2022 (the most recent date this information is available). *See* https://www.bls.gov/data/inflation_calculator.htm. Thus, in light of the time and effort expended by Plaintiffs here, a collective award of up to $10,000 for both of them is reasonable.

Class. *See* Ex. 2 at ¶2.9. To protect the Settlement Class, the specific terms of the Agreement are confidential "to prevent third parties from utilizing it for the improper purpose of obstructing the settlement and obtaining higher payouts." *Longo*, 2022 U.S. Dist. LEXIS 158606, at *17 (citation omitted). "This type of agreement is common in securities fraud actions and does not weigh against preliminary approval." *Jiangchen*, 2019 US. Dist. LEXIS 180474, at *24 (citation omitted).

### D. <u>The Settlement Treats All Settlement Class Members Equitably</u>

Under the proposed Plan of Allocation, each Authorized Claimant will receive a *pro rata* share of the Net Settlement Fund – determined by their Recognized Loss divided by the total Recognized Losses of all Authorized Claimants, multiplied by the total amount in the Net Settlement Fund. Ex. 2 at Ex. A-1, pp. 11-20. Courts regularly approve similar plans, *see*, *e.g.*, *Longo*, 2022 U.S. Dist. LEXIS 158606, at *17-18, and should approve this one as well.

### E. <u>The Remaining Factors Support Approval</u>[13]

#### 1. <u>Extent of Discovery Completed and Stage of Proceedings</u>

"Where the 'parties have sufficient information to make an informed decision about settlement,' this factor weighs in favor of approving the Settlement.'" *Beck*, 2019 U.S. Dist. LEXIS 3503, at *7 (citing *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000)). Lead Plaintiff's decision to settle was based on a thorough understanding of the strengths and weaknesses of the claims and defenses, formed by Lead Counsel's diligent investigation and litigation. Armed with this knowledge, Lead Plaintiff and Lead Counsel negotiated a favorable settlement that provides a significant recovery to the Settlement Class.

---

[13] One factor, "reaction of the Class," cannot meaningfully be assessed until Notice is disseminated.

MOTION FOR PRELIMINARY APPROVAL
Case No. 2:21-CV-02072-CJC-PVC

## 2. **Risks of Maintaining the Class Through Trial**

If this matter does not settle, Defendants will vigorously oppose class certification and/or argue that any Class Period should be substantially shortened. Specifically, Lead Plaintiff expects Defendants will argue that any class must exclude "in-and-out traders" as well as investors who purchased Workhorse stock after October 8, 2020, and that only one of the three alleged corrective disclosures (the NGDV Contract award announcement) resulted in a statistically significant decline in Workhorse's stock price. Further, even if a class is certified, Fed. R. Civ. P. 23(c) allows a court to decertify a class at any time. Thus, this factor supports approval of the Settlement. *See Brooks v. Life Care Ctrs., Inc.*, No. 12-659, 2015 U.S. Dist. LEXIS 196428, at *9 (C.D. Cal. Oct. 19, 2015) (Carney, J.) (citing *McKenzie v. Federal Exp. Corp.*, No. 10-02420, 2012 U.S. Dist. LEXIS 103666, at *10-11 (C.D. Cal. July 2, 2012) (considering likelihood of decertification and appeal when granting final settlement approval)).

## IV. THE COURT SHOULD CERTIFY THE CLASS FOR SETTLEMENT PURPOSES

Under Fed. R. Civ. P. 23(a), a class may be certified if: (i) it is so numerous that joinder of all members is impracticable; (ii) there are common questions of law and fact; (iii) the claims or defenses of the representative parties are typical of those of the class; and (iv) the representative parties will fairly and adequately protect the class' interests. *Amchem Prods. v. Windsor*, 521 U.S. 591, 614 (1997). The proposed class must also fall within a Rule 23(b) category. *See Desai v. Deutsche Bank Sec. Ltd.*, 573 F.3d 931, 936 (9th Cir. 2009). "As the Ninth Circuit has so aptly stated, securities fraud cases fit Rule 23 'like a glove.'" *In re Cooper Cos. Secs. Litig.*, 254 F.R.D. 628, 632 (C.D. Cal. 2009) (Carney, J.) (citing *Epstein v. MCA, Inc.*, 50 F.3d 644, 668 (9th Cir. 1995)). This case is no exception.

### A. **Rule 23(a)'s Requirements Are Met**

#### 1. **Numerosity Is Satisfied**

"Numerosity is presumed where the plaintiff class contains forty or more members." *Id.* at 634 (citation omitted). "The Court certainly may infer that, when a corporation has millions of shares trading on a national exchange, more than 40 individuals purchased stock over the course of more than a year." *Id.* As Workhorse had between approximately 70.6 million and 123.2 million shares trading on the NASDAQ during the Class Period,[14] numerosity is easily satisfied.

#### 2. **Questions of Law and Fact Are Common**

The commonality requirement means the claims must depend upon a common contention that "is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). "The Ninth Circuit has repeatedly found that common issues predominate in federal securities actions where the proposed class members have all been injured by the same alleged course of conduct." *In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.*, No. MDL 901, 1993 U.S. Dist. LEXIS 21272, at *16-17 (C.D. Cal. Feb. 26, 1993).

Common questions of both law and fact abound here, including: (1) whether Defendants' alleged misstatements and omissions were material, false or misleading; (2) whether Defendants possessed the requisite scienter; and (3) whether, and by how much, Workhorse's common stock was artificially inflated. If Settlement Class Members pursue their claims individually, they will have to prove identical facts and address identical legal issues. Under similar circumstances, courts have found

---

[14] *See* Workhorse 10-Q for quarter ended Mar. 31, 2020, at 1, *available at* https://www.sec.gov/ix?doc=/Archives/edgar/data/0001425287/000162828020006544/wkhs-20200331.htm; Workhorse 10-Q for quarter ended Mar. 31, 2021, at 1, *available                                                                                          at* https://www.sec.gov/ix?doc=/Archives/edgar/data/0001425287/000162828021009595/wkhs-20210331.htm.

commonality satisfied. *See*, *e.g.*, *Smilovits v. First Solar, Inc.*, 295 F.R.D. 423, 428
(D. Ariz. 2013).

### 3.  Plaintiffs' Claims Are Typical

Typicality is found where the claims of the proposed class representatives
arise from the same course of conduct that gives rise to the claims of the other class
members and are based on the same legal theory. *In re Emulex Corp.*, 210 F.R.D.
717, 719 (C.D. Cal. 2002). In order to be typical, representative claims need only be
"reasonably co-extensive with those of the absent class members; they need not be
substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir.
1998). Here, Plaintiffs' claims are virtually identical to those of the other Settlement
Class Members, and they have all been injured by the same alleged course of
conduct. The typicality requirement is satisfied. *See Cooper*, 254 F.R.D. at 635.

### 4.  Plaintiffs Will Fairly and Adequately Protect the Interests of the Settlement Class

The adequacy requirement "requires (1) a lack of conflicts of interest between
the proposed class and the proposed representative plaintiff, and (2) representation
by qualified and competent counsel that will prosecute the action vigorously on
behalf of the class." *Beirne v. Trepco Imps. & Distrib.*, No. 19-170, 2020 U.S. Dist.
LEXIS 250856, at *7 (C.D. Cal. July 28, 2020) (Carney, J.) (citing *Staton*, 327 F.3d
at 957). "The concern . . . is that there is no collusion between the defendant, class
counsel, and class representatives to pursue their own interests at the expense of the
interests of the class." *Id.* (citing *Staton*, 327 F.3d at 958 n.12.

Here, there is no conflict of interest between Plaintiffs and the other
Settlement Class Members; to the contrary, they all have identical interests.
Plaintiffs have demonstrated their ability and willingness to actively pursue the
Litigation on behalf of the Settlement Class. Moreover, in appointing Mr. Weis as
Lead Plaintiff, the Court already made a preliminary determination of his adequacy.

ECF No. 61. And Lead Counsel is highly qualified and experienced and has arduously litigated this Action on behalf of the Settlement Class.

### B. Rule 23(b)(3)'s Requirements Are Met

Fed. R. Civ. P. 23(b)(3)'s requirements are easily satisfied: (1) common questions of law or fact "predominate" over individualized ones and (2) a class action is superior to other methods of adjudication.

### 1. Common Questions of Law or Fact Predominate

The predominance inquiry, which "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation," is "readily met" in securities class actions. *Amchem*, 521 U.S. at 623, 625. Here, common questions of law and fact clearly predominate over individual questions because Defendants' alleged misrepresentations affected all Settlement Class Members in the same manner. *See Negrete v. Allianz Life Ins. Co.*, 238 F.R.D. 482, 492 (C.D. Cal. 2006) (predominance met where "'many purchasers have been defrauded over time by similar misrepresentations, or by a common scheme to which alleged non-disclosures related'") (citation omitted).

### 2. A Class Action Is a Superior Method of Adjudication

A class action may be superior "[w]here classwide litigation of common issues will reduce litigation costs and promote greater efficiency." *Lopez v. Areotek, Inc.*, No. 14-803, 2017 U.S. Dist. LEXIS 233622, at *11 (C.D. Cal. Aug. 3, 2017) (Carney, J.) (citing *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996)). It is also superior when "no realistic alternative" exists. *Id.* (citing *Valentino*, 97 F.3d at 1234–35). "District courts have consistently recognized that the common liability issues involved in securities fraud cases are ideally suited for resolution by way of a class action." *Cooper*, 254 F.R.D. at 641.

Given the common issues presented by Settlement Class Members, adjudication of their claims on an individual basis is not realistic, particularly

because without class certification, Defendants could not obtain a class-wide release, and therefore have little incentive to settle.  Moreover, in a settlement-only class certification, the Court "need not inquire whether the case, if tried, would present intractable management problems." *Lopez*, 2017 U.S. Dist. LEXIS 233622, at *11-12 (citing *Amchem*, 521 U.S. at 620). Thus, the Court should find the superiority requirement is met.

**V.   THE COURT SHOULD APPOINT PLAINTIFFS AS CLASS REPRESENTATIVES AND LEAD COUNSEL AS CLASS COUNSEL**

As discussed above, Plaintiffs have diligently represented the Settlement Class, and Lead Counsel is extremely experienced in handling securities class actions, has doggedly pursued the Settlement Class's claims, and has committed the necessary resources to this action. Accordingly, Plaintiffs should be appointed Class Representatives and Lead Counsel should be appointed Class Counsel.

**VI.   KCC SHOULD BE APPOINTED CLAIMS ADMINISTRATOR**

"KCC specializes in providing administrative services in class action litigation," *Retina Assocs. Med. Grp. v. Keller Instruments*, No. 18-1358, 2019 U.S. Dist. LEXIS 240001, at *14 (C.D. Cal. July 22, 2019) (Carney, J.), and courts routinely approve KCC as a class action settlement administrator. *Id.*; *see also Tadepalli v. Uber Techs., Inc.*, No. 15-cv-04348, 2015 U.S. Dist. LEXIS 169076, at *39 (N.D. Cal. Dec. 17, 2015).

**VII.   THE PROPOSED NOTICE SHOULD BE APPROVED**

Consistent with Fed R. Civ. P. 23(c)(2)(B), the proposed Notice clearly states the nature of the action, the claims and defenses, the key terms of the Settlement, and the definition of the Settlement Class; explains that a Settlement Class Member may appear through their own attorney; describes how to seek exclusion from the Settlement Class or object to the Settlement; and explains that a judgment will be binding on all Settlement Class Members. *See generally* Ex. 2 at Ex. A-1. Within 14

days after entry of the Preliminary Approval Order, KCC will mail or email the Postcard Notice to all shareholders of record or their broker nominees. Ex. 1 at ¶7(b). The Summary Notice will also be published twice on a national business newswire within 21 days after distribution of the Postcard Notice begins. *Id.* at ¶7(c). Lead Plaintiff also proposes a Summary Notice and a Postcard Notice which provide key information and direct Settlement Class Members to a website with the full Notice and all Settlement documents. Ex. 2 at Exs. A-3, A-4. Accordingly, the proposed Notice provides notice in a "reasonable manner" and is the "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." FED. R. CIV. P. 23(c)(2)(B), (e)(1)(B).

The Notice also complies with the PSLRA, which requires, *inter alia*, disclosure of the amount of the settlement in the aggregate and per-share basis, whether that amount is disputed, the amount of desired attorneys' fees, counsel's contact information, and an explanation for the settlement. 15 U.S.C. §78u-4(a)(7)(A)–(F).

## VIII.  PROPOSED SCHEDULE

Lead Plaintiff respectfully proposes the following schedule for Settlement-related events. *See also* Proposed Order (Ex. 1).

| EVENT: | PROPOSED DEADLINE: |
|---|---|
| Deadline for Workhorse to provide Lead Counsel with any and all transfer agent records for potential Settlement Class Members | Not later than **7 days** after entry of Preliminary Approval Order |
| Deadline for Lead Counsel to provide notice by: (a) emailing Summary Notice to Settlement Class Members for whom KCC can obtain email addresses; or (b) mailing Postcard Notice, if email address cannot be obtained, by first class mail, postage prepaid, to Settlement Class Members who can be identified with reasonable effort by Lead Counsel, through KCC | Not later than **14 days** after entry of Preliminary Approval Order |

| Deadline for Lead Counsel to cause the Summary Notice to be published twice in nationally distributed, business-focused newswires | Not later than **21 days** after entry of Preliminary Approval Order |
|---|---|
| Deadline for Lead Counsel to file affidavit of notice | Not later than **30 days** after entry of Preliminary Approval Order |
| Deadline for filing papers in support of (i) the Settlement, (ii) the Plan of Allocation, (iii) the application by Lead Counsel for attorneys' fees and/or reimbursement of expenses (collectively, the "Applications") | Not later than **30 days** before Settlement Hearing |
| Deadline for Settlement Class Members to submit/file:<br>• Proof of Claim and Release Forms<br>• Requests for exclusion from Settlement Class<br>• Objections to Settlement or Applications | Not later than **21 days** before Settlement Hearing |
| Deadline for filing reply to any opposition to the Applications or response to any objection(s) filed | Not later than **7 days** before Settlement Hearing by the |
| Deadline for KCC to submit report outlining implementation of notice and claims administration | Not later than **7 days** before Settlement Hearing |
| Settlement Hearing | Approximately **100-110 days** after entry of Preliminary Approval Order |

## IX.   CONCLUSION

For the foregoing reasons, Lead Plaintiff respectfully requests that the Court: (1) preliminarily approve the Settlement; (2) certify the Class for settlement purposes; (3) appoint Lead Counsel as Class Counsel; (4) appoint Plaintiffs as Class Representatives; (5) approve KCC as Claims Administrator; and (6) find the proposed Notice satisfies the Federal Rules and the PSLRA and can be disseminated to the Settlement Class.

Dated: January 13, 2023

**KAHN SWICK & FOTI, LLC**

By: */s/ Kim E. Miller*
Kim E. Miller (SBN 178370)
kim.miller@ksfcounsel.com
250 Park Avenue, 7th Floor-
New York, NY 10177
Telephone: (212) 696-3730
Facsimile: (504) 455-1498

*Counsel for Lead Plaintiff Timothy M. Weis,*
*Additional Plaintiff Angelo Federico, and*
*the Settlement Class*

## CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on January 13, 2023, I authorized the electronic filing of the foregoing Notice of Motion and Motion for Preliminary Approval of Settlement with the Clerk of the Court using the CM/ECF system which will send a Notice of Electronic Filing to the e-mail addresses on the attached Electronic Mail Notice List.

*s/ Kim E. Miller*
Kim E. Miller

## LOCAL RULE 11-6.1 CERTIFICATION

The undersigned, counsel of record for Lead Plaintiff Timothy M. Weis, Additional Plaintiff Angelo Federico, and the Settlement Class, certifies that this brief contains 6,823 words, which complies with the word limit of L.R. 11-6.1.

Date: January 13, 2023

*s/ Kim E. Miller*
Kim E. Miller