**KAHN SWICK & FOTI, LLC**
Kim E. Miller (SBN 178370)
kim.miller@ksfcounsel.com
250 Park Avenue, 7th Floor
New York, NY 10177
Telephone: (212) 696-3730
Facsimile: (504) 455-1498

*Lead Counsel for Lead Plaintiff Timothy M. Weis,*
*Additional Plaintiff Angelo Federico, and the Settlement Class*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAM FARRAR, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> WORKHORSE GROUP, INC., DUANE HUGHES, STEVE SCHRADER, ROBERT WILLISON, and GREGORY ACKERSON <br><br> Defendants. | Case No. 2:21-cv-02072-CJC-PVC <br><br> LEAD PLAINTIFF'S NOTICE OF MOTION AND UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND APPROVAL OF PLAN OF ALLOCATION OF SETTLEMENT PROCEEDS <br><br> JUDGE: Hon. Cormac J. Carney <br> DATE: July 24, 2023 <br> TIME: 1:30 p.m. <br> CTRM: 9B |

## NOTICE OF MOTION AND MOTION

Lead Plaintiff Timothy M. Weis now moves, pursuant to Fed. R. Civ. P. 23(e), for final approval of class action settlement and approval of plan of allocation of settlement proceeds. A proposed order with respect to this Motion will be filed with Lead Plaintiff's reply papers on July 17, 2023, after the deadline for objecting or requesting exclusion from the Settlement Class has passed.

Lead Plaintiff's Motion is based on the Memorandum of Points and Authorities in Support thereof; the Declaration of Kim E. Miller in Support of: (A) Lead Plaintiff's Motion for Final Approval of Class Action Settlement and Approval of Plan of Allocation of Settlement Proceeds, and (B) Lead Counsel's Motion for an Award of Attorneys' Fees and Expenses and Award to Settlement Class Representatives Pursuant to 15 U.S.C. § 78u-4(a)(4) (the "Miller Declaration"); the Declaration of Lance Cavallo Regarding Notice Dissemination, Publication, and Report on Requests for Exclusion Received To Date (the "Cavallo Declaration"); the Stipulation of Settlement dated January 13, 2023 (the "Stipulation")[1]; and such additional evidence or argument as may be required by the Court.

---

[1] All capitalized terms used herein that are not otherwise defined herein shall have the meanings provided in the Stipulation of Settlement (ECF No. 105-2).

## <u>TABLE OF CONTENTS</u>

MEMORANDUM OF LAW ....................................................................1

I.    PRELIMINARY STATEMENT ...............................................1

II.   PROCEDURAL AND FACTUAL BACKGROUND.............................3

III.  THE STANDARDS GOVERNING JUDICIAL APPROVAL OF CLASS ACTION SETTLEMENTS ..........................................6

IV.  THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE .......................................................................8

    A.    The Settlement Enjoys a Presumption of Reasonableness Because It Is the Product of Arm's-Length Settlement Negotiations ................8

    B.    The Amount of the Settlement Provides a Favorable Recovery to the Class ......................................................................10

    C.    The Strengths of Plaintiffs' Case, When Balanced Against the Risk, Expense, Complexity, and Likely Duration of Further Litigation, Supports Approval of the Settlement ...................................12

    D.    The Complexity, Expense, and Likely Duration of the Litigation Justifies the Settlement ........................................................16

    E.    Lead Plaintiff Had Sufficient Information to Determine the Propriety of the Settlement .................................................................17

    F.    The Recommendations of Experienced Counsel After Extensive Litigation and Arm's-Length Settlement Negotiations Favor Approval of the Settlement ....................................................18

    G.    Reaction of the Settlement Class Supports Approval of the Settlement .....................................................................19

V.    THE COURT SHOULD FINALLY CERTIFY THE CLASS ...............20

VI.  THE PLAN OF ALLOCATION IS FAIR AND REASONABLE.........21

VII. CONCLUSION ........................................................................22

MEMORANDUM OF LAW IN SUPPORT
OF MOTION FOR FINAL APPROVAL
Case No. 2:21-CV-02072-CJC-PVC

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Beecher v. Able*, 575 F.2d 1010 (2d Cir. 1978) ........................................................21

*Brightk Consulting Inc. v. BMW of N. Am., LLC*, No. 21-cv-2063, 2023 U.S. Dist. LEXIS 38391 (C.D. Cal. Jan. 3, 2023)....................................................................9

*Brotherton v. Cleveland*, 141 F. Supp. 2d 894 (S.D. Ohio 2001) ..........................19

*Bryant v. Avado Brands, Inc.*, 100 F. Supp. 2d 1368 (M.D. Ga. 2000), *rev'd sub nom. Bryant v. Dupree*, 252 F.3d 1161 (11th Cir. 2001) ......................................12

*Class Plaintiffs v. Seattle*, 955 F.2d 1268 (9th Cir. 1992).................................. 6, 21

*DSAM Global Value Fund v. Altris Software*, 288 F.3d 385 (9th Cir. 2002)..........13

*Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15 (N.D. Cal. 1980, *aff'd*, 661 F.2d 939 (9th Cir. 1981) ........................................................................7

*Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408 (7th Cir. 2015) ............17

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ........................................8

*Hartranft v. TVI, Inc.*, No. 8:15-cv-01081-CJC, 2019 U.S. Dist. LEXIS 222611 (C.D. Cal. Oct. 21, 2019)...................................................................................20

*In re BankAtlantic Bancorp, Inc.*, 2011 U.S. Dist. LEXIS 48057 (S.D. Fla. Apr. 25, 2011)...................................................................................................17

*In re Chicken Antitrust Litig. Am. Poultry*, 669 F.2d 228 (5th Cir. 1982) ..............21

*In re Heritage Bond Litig.*, 2005 U.S. Dist. LEXIS 13555 (C.D. Cal. June 10, 2005).................................................................................... 8, 21

*In re Ikon Office Sols., Inc.*, 194 F.R.D. 166 (E.D. Pa. 2000) ......................... 12, 21

*In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454 (9th Cir. 2000) .................... 12, 17

*In re Omnivision Techs.*, 559 F. Supp. 2d 1036 (N.D. Cal. 2007) ......... 6, 11, 18, 21

*In re Oracle Corp. Sec. Litig.*, 627 F.3d 376 (9th Cir. 2010)..................................13

*In re Pac. Enters. Sec. Litig.*, 47 F.3d 373 (9th Cir. 1995).......................................6

*In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 460 F.3d 1217
(9th Cir. 2006) ...................................................................................................6

*In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570 (S.D.N.Y. 2008) ........................14

*In re Tyco Int'l, Ltd.*, 535 F. Supp. 2d 249 (D.N.H. 2007)......................................15

*In re Veeco Instruments Inc. Sec. Litig.*, 2007 U.S. Dist. LEXIS 85629
(S.D.N.Y. Nov. 7, 2007).....................................................................................16

*In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735 (S.D.N.Y. 1985),
*aff'd*, 798 F.2d 35 (2d Cir. 1986)......................................................................15

*In re Wells Fargo Loan Processor Overtime Pay Litig.*, 2011 U.S. Dist. LEXIS
84541 (N.D. Cal. Aug. 2, 2011) ...........................................................................8

*Johansson-Dohrmann v. CBR Sys.*, 2013 U.S. Dist. LEXIS 103863 (S.D. Cal.
July 24, 2013) .....................................................................................................12

*Linney v. Cellular Alaska P'ship*, 1997 U.S. Dist. LEXIS 24300 (N.D. Cal.
July 18, 1997), aff'd, 151 F.3d 1234 (9th Cir. 1998)...........................................8

*Marshall v. Holiday Magic, Inc.*, 550 F.2d 1173 (9th Cir. 1977) ............................6

*Milstein v. Huck*, 600 F. Supp. 254 (E.D.N.Y. 1984)..............................................16

*Moore v. Ulta Salon, Cosmetics & Fragrance, Inc.*, 311 F.R.D. 590
(C.D. Cal. 2015) .................................................................................................20

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523
(C.D. Cal. 2004) ....................................................................... 7, 10, 16, 18

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615
(9th Cir. 1982) ......................................................................... 6, 7, 10, 16, 17

*Perez v. DIRECTV Grp. Holdings, LLC*, No. 16-CV-01440-JLS, 2023 U.S.
Dist. LEXIS 13920 (C.D. Cal. Jan. 23, 2023).....................................................20

*Pompano Beach Police & Firefighters' Ret. Sys. v. Las Vegas Sands Corp.*,
732 F. App'x 543 (9th Cir. 2018)........................................................................13

*Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948 (9th Cir. 2009)....................................7

MEMORANDUM OF LAW IN SUPPORT
OF MOTION FOR FINAL APPROVAL
Case No. 2:21-CV-02072-CJC-PVC

*Satchell v. Fed. Express Corp.*, 2007 U.S. Dist. LEXIS 99066 (N.D. Cal.
   Apr. 13, 2007).........................................................................................9

*Thacker v. Chesapeake Appalachia, L.L.C.*, 695 F. Supp. 2d 521 (E.D. Ky. 2010),
   *aff'd sub nom. Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636
   F.3d 235 (6th Cir. 2011) ......................................................................19

*Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370 (9th Cir. 1993) .............................7

*Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943 (9th Cir. 1976) ...............................6

## Other Authorities

Janeen McIntosh, Svetlana Starykh & Edward Flores, *Recent Trends in Securities
   Class Action Litigation: 2022 Full-Year Review* (NERA 2023).........................11

Laarni T. Bulan & Laura E. Simmons, *Securities Class Action Settlements: 2022
   Review and Analysis* (Cornerstone Research 2023).............................................11

## Rules

FED. R. CIV. P. 1 .................................................................................................6

FED. R. CIV. P. 23 ................................................................................... 6, 20, 21

iv

## MEMORANDUM OF LAW

## I.    PRELIMINARY STATEMENT

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Lead Plaintiff Timothy M. Weis submits this Memorandum in Support of his Motion for: (i) Final Approval of this proposed Settlement which will resolve all claims against Defendants for $35 million in cash and stock; and (ii) approval of the Plan of Allocation. The terms of the Settlement are set forth in the Stipulation of Settlement dated January 13, 2023 (the "Stipulation"), which was previously filed with the Court. *See* ECF No. 105-2.

This Settlement represents an outstanding recovery for the Settlement Class in light of the fact that Workhorse continues to be a largely pre-production company with dwindling cash, business uncertainties, ongoing regulatory issues, and, particularly, rapidly depleting insurance coverage (which will be almost entirely exhausted by the proposed Settlement). Indeed, this Court's February 14, 2023 Order Granting Lead Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement (the "Preliminary Approval Order") (ECF No. 106), held that "by settling now, Lead Plaintiff and the class get most of Defendants' remaining insurance proceeds rather than those proceeds being used to litigate this case...." Preliminary Approval Order at 15;[2] *see also* at 17 ("Put simply, the fact that Lead Plaintiff and the class will recover nearly all of the value Workhorse has to give weighs in favor of finding the relief provided by the Settlement Agreement adequate.").

---

[2] Further supporting Lead Plaintiff's decision to settle now before insurance proceeds are further depleted, the court in *Optronic Technologies, Inc., v. Ningbo Sunny Electronic Co., Ltd. et al*, No. 16-cv-6370, ECF No. 629 at 26 (N.D. Cal. Apr. 6, 2023) noted Sheppard Mullin, one of the two firms representing Defendants here, billed a client more than $9M over three years for their defense of antitrust claims. *See* Miller Decl. at Ex. C.

As discussed below and in the Miller Declaration, this Action has been aggressively litigated for over two years. Among other things, Lead Plaintiff and Lead Counsel extensively investigated the claims, researched and drafted an amended complaint, opposed Defendants' motion to dismiss, reviewed more than 110,000 pages of documents produced by Defendants and third parties, prepared for multiple depositions, consulted with an economic expert, and engaged in a full-day in-person mediation and ongoing settlement discussions thereafter. *See* Preliminary Approval Order at 14 ("Here, [lead Counsel] engaged in voluminous discovery, largely defeated Defendants' motion to dismiss, and participated in a private mediation that culminated in this settlement."). The Settlement resulted from good-faith, arm's length negotiations between experienced counsel, under the supervision of a seasoned, well-respected mediator. As such, Lead Plaintiff and Lead Counsel were well informed about the strengths and weaknesses of their case when they agreed to settle this Action for $35 million in cash and stock. Indeed, the significant risks involved in continuing to litigate this Action through trial and inevitable appeal(s), when measured against the immediate benefit of the Settlement, justify approval. *See id.* at 16 ("The elimination of these costs and risks strongly suggests the adequacy of the Settlement Agreement.").

The Preliminary Approval Order directed that a Final Approval Hearing be held on July 24, 2023 at 1:30 p.m. In accordance with the Preliminary Approval Order, the Summary Notice was emailed to all Settlement Class Members for whom the Claims Administrator could obtain email addresses and the Postcard Notice was mailed by first class mail, postage prepaid, to all those Settlement Class Members who could be identified with reasonable effort. *See id.* at 21. As of March 14, 2023, 5,128 Postcard Notices have been sent to Settlement Class Members. *See* Cavallo Declaration at ¶ 8. In addition, the Summary Notice was published over *PR Newswire* and *Business Wire* on March 7, 2023. *See id.* at ¶ 9.

MEMORANDUM OF LAW IN SUPPORT
OF MOTION FOR FINAL APPROVAL
Case No. 2:21-CV-02072-CJC-PVC

Settlement Class Members appear to support the Settlement and Plan of Allocation. While the deadline for objecting is July 3, 2023, to date, not a single Settlement Class Member has objected to any aspect of the Settlement or Plan of Allocation, nor has any Settlement Class Member sought exclusion from the Class. As recounted below, Lead Counsel will submit reply papers in further support of the Settlement and request for attorneys' fees and expenses prior to the Final Approval Hearing on July 17, 2023, at which point they will address objections or exclusions received after this submission, if any.

In light of their informed assessment of the strengths and weaknesses of the claims and defenses asserted, the considerable risks and delay associated with continued litigation and trial, and the highly favorable Settlement Amount, Lead Plaintiff and Lead Counsel believe that the Settlement is eminently fair, reasonable, and adequate and provides a very good result for the Settlement Class. Accordingly, Lead Plaintiff respectfully requests that the Court approve this Settlement. Moreover, the Plan of Allocation, which was developed with the assistance of Plaintiffs' economics expert, is fair and reasonable and should therefore also be approved by the Court.

## II.    PROCEDURAL AND FACTUAL BACKGROUND

The following is a brief overview of the Litigation.[3] On March 8, 2021, the initial complaint was filed in this Action. Three days later, a substantially similar complaint was filed in *Kinney v. Workhorse Group, Inc., et al*, No. 2:21-cv-02207-CJC-PVC (C.D. Cal.). On May 18, 2021, the Court consolidated the actions, appointed Mr. Weis as Lead Plaintiff, and approved Lead Plaintiff's selection of Kahn Swick & Foti LLC ("KSF") as Lead Counsel. ECF No. 61. Following an

---

[3] The Court is respectfully referred to the Miller Declaration for a more detailed description of the Litigation, Lead Counsel's efforts on behalf of the Settlement Class, the risks of further litigation, and the substantial benefits obtained by this Settlement.

MEMORANDUM OF LAW IN SUPPORT
OF MOTION FOR FINAL APPROVAL
Case No. 2:21-CV-02072-CJC-PVC

extensive investigation involving interviews of former employees, substantial legal and factual research, and consultation with an economics expert, Lead Plaintiff filed the operative Amended Complaint on July 16, 2021, naming Angelo Federico as an Additional Plaintiff. ECF No. 64 (the "AC").

Plaintiffs allege Defendants Workhorse Group, Inc. ("Workhorse" or the "Company") and certain of its executives – Duane Hughes, former Chief Executive Officer, Steve Schrader, former Chief Financial Officer, Robert Willison, former Chief Operating Officer, and Gregory Ackerson, Chief Accounting Officer and Corporate Controller (collectively, "Defendants"): (1) made materially false and misleading statements regarding the Company's production and manufacturing capabilities, "backlog" of purchase orders, and positioning for a multi-billion dollar contract with the United States Postal Service ("USPS") to manufacture its new fleet of next generation delivery vehicles ("NGDV"; the "NGDV Contract"), in violation of Exchange Act §§10(b) and 20(a) and Rule 10b-5(b) and (2) engaged in a scheme to defraud investors into believing, among other things, that Workhorse was capable of winning the NGDV Contract, in violation of Rules 10b-5(a) and (c). As a result of Defendants' misrepresentations, Plaintiffs allege the price of Workhorse's stock was artificially inflated. This inflation was removed through a series of corrective disclosures beginning on October 8, 2020, when an independent research firm issued a report finding Workhorse lacked the ability to produce vehicles anywhere near the rate it had touted and there were no active purchase orders for its vehicles, and culminating on May 10, 2021, when Defendants revealed Workhorse had only produced a fraction of its year-end target of vehicles. Workhorse's stock dropped precipitously, harming Lead Plaintiff, Additional Plaintiff, and the Class.

Defendants moved to dismiss on September 3, 2021, which the Court substantially denied on December 2, 2021. ECF Nos. 65, 74. Immediately thereafter, the Parties began formal discovery, exchanging initial disclosures on January 14, 2022. In the ensuing months, Plaintiffs propounded Requests for Production and

Interrogatories on Defendants and served document subpoenas on 18 third parties, including Workhorse's accountant and various Workhorse customers. *See* Miller Decl. at ¶¶ 25-31. Counsel engaged in numerous meet-and-confers and written exchanges regarding Defendants' objections, the scope of document discovery, search terms, custodians and electronically stored information and other potential sources of relevant information. *Id.* Lead Counsel reviewed and analyzed more than 110,000 pages of documents produced by Defendants and third parties, served a 30(b)(6) deposition notice on Workhorse, and was preparing for that deposition, as well as the deposition of a third-party and several Workhorse employees, at the time of Settlement. *Id.*

On August 23, 2022, the Parties participated in a full-day, in-person mediation in New York City before Jed D. Melnick, Esq., of JAMS, a nationally recognized mediator. *See* Miller Decl. at ¶¶ 33-34, Ex. A (Melnick Decl.). Prior thereto, the Parties exchanged extensive briefs setting forth their positions on the claims and defenses, the evidence adduced during discovery, damages, and other contested issues. *Id.* No settlement was reached at the mediation, but the Parties continued to negotiate both with and without Mr. Melnick's assistance, as discovery continued on a parallel track. *Id.* Approximately two months after mediation, on October 24, 2022, the Parties accepted a mediator's proposal to settle the case and signed a Term Sheet. Miller Decl. at ¶ 35.

The Parties notified the Court of the Settlement on October 28, 2022, ECF No. 100, and signed the Stipulation of Settlement ("Stipulation") on January 13, 2023. Lead Plaintiff filed the Stipulation along with an unopposed motion for preliminary approval of the Settlement the same day. *See* ECF No. 105. On February 14, 2023, the Court granted the motion, appointing Lead Plaintiff and Additional Plaintiff Angelo Federico as Class Representatives, Lead Counsel and Counsel for the Settlement Class, KCC as Claims Administrator, and approving the proposed

forms of Notice. *See* ECF No. 106 at 22-23. The Final Approval hearing is set for Monday, July 24, 2023, at 1:30 p.m.

### III. THE STANDARDS GOVERNING JUDICIAL APPROVAL OF CLASS ACTION SETTLEMENTS

It is well-established in the Ninth Circuit that "voluntary conciliation and settlement are the preferred means of dispute resolution." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). Class actions in particular lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the complexity and typical length of the litigation. Indeed, the Ninth Circuit has recognized that "[w]hen reviewing complex class action settlements, we have a 'strong judicial policy that favors settlements.'" *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995) (quoting *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)); *see also In re Omnivision Techs.*, 559 F. Supp. 2d 1036, 1041 (N.D. Cal. 2007) ("[T]he court must also be mindful of the Ninth Circuit's policy favoring settlement, particularly in class action law suits."). It is also beyond question that "the public has an overriding interest in securing 'the just, speedy, and inexpensive determination of every action.'" *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 460 F.3d 1217, 1227 (9th Cir. 2006); FED. R. CIV. P. 1. And this too is particularly true in class action lawsuits. *See, e.g.*, *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976).

In deciding whether to approve a proposed settlement of a class action, the court must find that the proposed settlement is "fair, reasonable, and adequate." FED. R. CIV. P. 23(e); *see also Pac. Enters.*, 47 F.3d at 377; *Officers for Justice*, 688 F.2d at 625; *Marshall v. Holiday Magic, Inc.*, 550 F.2d 1173, 1178 (9th Cir. 1977). The Ninth Circuit has provided factors which may be considered in evaluating whether a settlement meets this standard, including: "the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views

of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement." *Officers for Justice*, 688 F.2d at 625; *accord Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993). "The relative degree of importance to be attached to any particular factor will depend upon…the nature of the claims advanced, the types of relief sought, and the unique facts and circumstances presented by each individual case." *Officers for Justice*, 688 F.2d at 625.

Approval of a class action settlement "is left to the sound discretion of the trial judge," and approval "will be reversed only for abuse of that discretion." *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980, *aff'd*, 661 F.2d 939 (9th Cir. 1981); *accord Torrisi*, 8 F.3d at 1375. At the same time, the Ninth Circuit provides guidance as to the limits of the inquiry to be made by the court:

> [T]he settlement or fairness hearing is not to be turned into a trial or rehearsal for trial on the merits. Neither the trial court nor this court is to reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements.

*Officers for Justice*, 688 F.2d at 625 (emphasis in original). In sum, the Ninth Circuit "has long deferred to the private consensual decision of the parties." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009).

Taking these policies into consideration, courts have taken a flexible approach toward approval of class action settlements, recognizing that the settlement process involves the exercise of judgment and that the concept of "reasonableness" can encompass a broad range of results. "'In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results.'" *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004). "As the Ninth Circuit has

noted, 'Settlement is the offspring of compromise; the question…is not whether the final product could be prettier, smarter, or snazzier, but whether it is fair, adequate, and free from collusion.'" *In re Wells Fargo Loan Processor Overtime Pay Litig.*, 2011 U.S. Dist. LEXIS 84541, at *11 (N.D. Cal. Aug. 2, 2011) (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026-27 (9th Cir. 1998)).

When examined under the applicable criteria, this Settlement is a very strong result for the Settlement Class, particularly in light of Workhorse's precarious financial position and the remaining challenges of class certification of a litigation class, *Daubert* motions, summary judgment, trial, and the inevitable post-trial motions and appeals. The Settlement achieves a substantial, certain, and immediate recovery for the Settlement Class and is superior to the likelihood that, were the Litigation to proceed to trial, there would be substantially less recovery or no recovery at all. Here, it is the considered judgment of highly experienced counsel after extensive hard-fought litigation, substantial discovery, and settlement negotiations that the Settlement is not only a very strong result for the Settlement Class but likely the best result under the circumstances and should be approved.

As discussed below, an analysis of the relevant factors demonstrates that the Settlement merits this Court's final approval.

## IV.  THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE

### A.  The Settlement Enjoys a Presumption of Reasonableness Because It Is the Product of Arm's-Length Settlement Negotiations

"A presumption of correctness is said to 'attach to a class settlement reached in arm's-length negotiations between experienced counsel after meaningful discovery.'" *In re Heritage Bond Litig.*, 2005 U.S. Dist. LEXIS 13555, at *32-33 (C.D. Cal. June 10, 2005); *see also Linney v. Cellular Alaska P'ship*, 1997 U.S. Dist. LEXIS 24300, at *16 (N.D. Cal. July 18, 1997), aff'd, 151 F.3d 1234 (9th Cir. 1998) ("The involvement of experienced class action counsel and the fact that the settlement agreement was reached in arm's length negotiations, after relevant

discovery [has] taken place create a presumption that the agreement is fair."). Further, the Ninth Circuit "put[s] a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution" in approving a class action settlement. *Rodriguez*, 563 F.3d at 965. This Settlement was reached after extensive pre-trial proceedings and arm's-length negotiations by experienced counsel on both sides, each with a well-developed understanding of the strengths and weaknesses of each party's respective claims and defenses, and under the supervision of an experienced mediator. *See* Miller Decl. at Ex. A (Melnick Decl.). Accordingly, the Settlement is entitled to a presumption of correctness and fairness.

As detailed in the Miller Declaration, the Parties exchanged evidence-based mediation briefs and attended a full-day mediation with Jed D. Melnick, Esq., of JAMS, on August 23, 2022. *See* Miller Decl. at ¶ 33, Ex. A; *see also Brightk Consulting Inc. v. BMW of N. Am., LLC*, No. 21-cv-2063, 2023 U.S. Dist. LEXIS 38391, at *16 (C.D. Cal. Jan. 3, 2023) (Carney, J.) (finding Mr. Melnick is "an experienced complex business litigation mediator who has resolved over 1,000 disputes in his career"). While the Parties negotiated in good faith at the mediation, they were unable to reach a resolution. *See* Miller Decl. at ¶ 34. Approximately two months after mediation, on October 24, 2022, the Parties accepted a mediator's proposal to settle the case and signed a Term Sheet. *See* Miller Decl. at ¶ 35. Courts have recognized that "[t]he assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive." *See, e.g.*, *Satchell v. Fed. Express Corp.*, 2007 U.S. Dist. LEXIS 99066, at *17 (N.D. Cal. Apr. 13, 2007).

Lead Counsel has many years of experience in litigating securities class actions and has negotiated dozens of settlements of these types of cases, which settlements have been approved by courts across the country. *See, e.g.*, Miller Decl. at Ex. B (KSF Firm Resumé). Defendants are also represented by highly capable and experienced lawyers from Sheppard, Mullin, Richter & Hampton LLP and Katten Muchin Rosenman LLP who zealously represented their clients. *See* Miller Decl. at

MEMORANDUM OF LAW IN SUPPORT
OF MOTION FOR FINAL APPROVAL
Case No. 2:21-CV-02072-CJC-PVC

¶ 101. The Settlement was reached after arm's-length negotiations by experienced counsel on both sides, each with a well-developed understanding of the strengths and weaknesses of their respective positions and the risks that would be presented by additional litigation. These facts established that the Settlement is the result of hard-fought negotiations and is "not the product of fraud or overreaching by, or collusion between, the negotiating parties." *Officers for Justice*, 688 F.2d at 625.

## B. The Amount of the Settlement Provides a Favorable Recovery to the Settlement Class

"In assessing the consideration obtained by the class members in a class action settlement, '[i]t is the complete package taken as a whole, rather than the individual component parts, that must be examined for overall fairness.'" *DIRECTV*, 221 F.R.D. at 527 (quoting *Officers for Justice*, 688 F.2d at 628). "[I]t is well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial." *DIRECTV*, 221 F.R.D. at 527. "'Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with litigation….'" *Officers for Justice*, 688 F.2d at 624.

Here, the result achieved is substantial. The Settlement Class will receive $35 million (consisting of $15 million in cash and $20 million worth of shares of Workhorse common stock), less Court-awarded fees and expenses and the costs of notice and administering the Settlement. This recovery provides an immediate, tangible, and significant benefit to the Settlement Class and eliminates the risk that the Settlement Class could recover less than the Settlement Amount, or nothing at all, if the Litigation continued. Importantly, this recovery is in line with median securities settlement as a percentage of estimated damages. Specifically, the Settlement represents approximately 3% of the absolute highest recoverable damages as estimated by Plaintiffs' damages expert ($1.2 billion). According to

MEMORANDUM OF LAW IN SUPPORT
OF MOTION FOR FINAL APPROVAL
Case No. 2:21-CV-02072-CJC-PVC

Cornerstone Research, the median settlement as a percentage of estimated damages in in 2022 was 3.6%. *See* Laarni T. Bulan & Laura E. Simmons, *Securities Class Action Settlements: 2022 Review and Analysis* at 20, Appendix 5 (Cornerstone Research 2023). According to NERA, however, "[b]etween 2020 and 2022, the median ratio of settlement amount to Investor Losses has been stable at 1.8%."[4] Janeen McIntosh, Svetlana Starykh & Edward Flores, *Recent Trends in Securities Class Action Litigation: 2022 Full-Year Review* at 17 (NERA 2023). Courts may consider such data in evaluating a class action settlement. *See, e.g.*, *Omnivision*, 559 F. Supp. 2d at 1042 (finding that settlement amount was reasonable in part because it was "higher than the median percentage of investor losses recovered in recent shareholder class action settlements").

Moreover, in light of the fact that the $15 million Settlement Cash essentially exhausted the coverage of Defendants' applicable insurance policies, the Settlement Stock component further underscores the excellent recovery Lead Plaintiff and Lead Counsel achieved for the Settlement Class. The Settlement minimizes risk to the Class regarding the stock component by providing that the Settlement Stock shall consistent of $20 million *worth* of Workhorse common stock. The exact number of shares to be transferred to the Settlement Class will be "based on the volume weighted average price for the fifteen (15) consecutive trading days ending on the trading day immediately preceding the date the Court enters the judgment (the "VWAP")." ECF No. 105-2 at ¶ 1.39. If, however, the price per share deviates more than 25% above or below the VWAP as of the close of market on the trading day before the Transfer Date (5 days after the Settlement becomes final), the number of shares of Settlement Stock must be adjusted so that the overall value is $20 million. *Id.* at ¶ 2.4.

---

[4] "The NERA-Defined Investor Loss measure is constructed assuming investors had invested in stocks during the class period whose performance was comparable to that the S&P 500 Index." *Id.*

Had this Action proceeded, there was a real possibility that the Settlement Class would recover a far smaller amount—or nothing at all—after protracted litigation. In addition to the risk that Plaintiffs could lose at class certification, summary judgment, or trial, continued litigation could include lengthy and costly appellate practice which could ultimately result in Plaintiffs' claims being significantly reduced or even extinguished. Accordingly, this factor weighs heavily in favor of the Settlement.

### C.    The Strengths of Plaintiffs' Case, When Balanced Against the Risk, Expense, Complexity, and Likely Duration of Further Litigation, Supports Approval of the Settlement

In determining whether a proposed settlement is fair, reasonable, and adequate, the court should balance against the continuing risks of litigation, benefits afforded to the class, and the immediacy and certainty of a substantial recovery. *See Johansson-Dohrmann v. CBR Sys.*, 2013 U.S. Dist. LEXIS 103863, at *12 (S.D. Cal. July 24, 2013) (citing *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000)). Securities actions pose unique risks and have "become more difficult from a plaintiff's perspective in the wake of the PSLRA." *In re Ikon Office Sols., Inc.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000); *Bryant v. Avado Brands, Inc.*, 100 F. Supp. 2d 1368, 1377 (M.D. Ga. 2000) ("An unfortunate byproduct of the PSLRA is that potentially meritorious suits will be short-circuited by the heightened pleading standard."), *rev'd on other grounds and remanded sub nom. Bryant v. Dupree*, 252 F.3d 1161 (11th Cir. 2001).

Although Plaintiffs survived Defendants' attacks on the pleadings, had these claims proceeded to trial, Plaintiffs faced serious obstacles to recovery, both with respect to liability and damages. The claims asserted in the Litigation on behalf of the Settlement Class were based on Sections 10(b) and 20(a) of the Exchange Act and Rule 10b-5 promulgated by the U.S. Securities and Exchange Commission. To prevail on their Section 10(b) claims, Plaintiffs bear the burden of proving: (a) a misstatement or omission; (b) of material fact; (c) made with scienter; (d) on which

plaintiffs relied; and (e) that caused plaintiffs' damages. *See DSAM Global Value Fund v. Altris Software*, 288 F.3d 385, 388 (9th Cir. 2002).

Moreover, Lead Counsel was well aware that many other similar actions lose on dispositive motions, at trial, or on appeal. *See, e.g., Pompano Beach Police & Firefighters' Ret. Sys. v. Las Vegas Sands Corp.*, 732 F. App'x 543, 547 (9th Cir. 2018) (affirming summary judgment in favor of defendants where plaintiffs failed to establish loss causation); *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 395 (9th Cir. 2010) (same). The Settlement recognizes the risks of complex litigation involving difficult legal and factual issues. As discussed herein and in the Miller Declaration, the risks of continued litigation, when weighed against the substantial and certain recovery for the Settlement Class, confirms the reasonableness of the Settlement.

### 1.    The Risks of Proving Liability

After over two years of litigation, including the review and analysis of over 110,000 pages of documents, Lead Plaintiff believed they had obtained substantial evidence supporting his claims and that further discovery would uncover additional supporting evidence. But, as discussed above and in the Miller Declaration, this Litigation involves substantial risks in proving liability. *See* Miller Decl. at ¶¶ 44-58. Under these circumstances, there was no guarantee that all claims would proceed to trial and that a jury would find in Plaintiffs' favor. Lead Plaintiff carefully considered these and related risks during the settlement negotiations.

Even before settlement discussions commenced, it was very clear that Defendants did not agree that Plaintiffs would prevail on any of their claims, particularly with respect to falsity and scienter, and there is no question that Defendants would have raised every available argument to avoid an adverse judgment had litigation continued. The defenses raised by Defendants certainly had the possibility of success, making the ultimate outcome difficult to predict. While Lead Counsel believes that the documents produced demonstrate both the falsity of

Defendants' statements, Defendants' interpretation and understanding of those documents is entirely different, and Plaintiffs' success in establishing falsity and materiality was certainly not guaranteed.

Plaintiffs also faced a significant challenge in establishing scienter, as "[p]roving a defendant's state of mind is hard in any circumstances." *See In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 579 (S.D.N.Y. 2008) (granting final approval of $5 million settlement). Lead Counsel believed that discovery had revealed significant evidence of Defendants' scienter, but Defendants no doubt saw things differently. *See* Miller Decl. at ¶ 56. Plaintiffs would point to the circumstances surrounding the Individual Defendants' Class Period sales of Workhorse stock, including that they collectively sold 850,000 shares for proceeds of over $21.5 million, that all these shares were sold during a short period when Workhorse stock was trading at over $15/share, and that they didn't sell any shares before the Class Period or after the stock crashed in late February 2021. AC at ¶¶ 310-316.

The specific risks faced by Plaintiffs would be exacerbated by the risks inherent in all shareholder litigation, including the unpredictability of a lengthy and complex jury trial, the risk that witnesses could be unavailable or simply not recall critical facts or that jurors could react to the evidence in unforeseen ways, the risk that a jury could find that some or all of the alleged misrepresentations were not material, and the risk that the jury could find that Defendants believed in the appropriateness of their actions at the time.

Indeed, these very risks were recently borne out in *In re Tesla Inc. Sec. Litig.*, No. 18-cv-4865 (N.D. Cal.). This federal securities fraud class action was initiated against defendants Elon Musk and Tesla, Inc. on August 10, 2018, and was litigated all the way to trial. The trial commenced on January 17, 2023, and went to deliberations on February 3, 2023. Despite a strong case presented by the plaintiffs, after just a few hours of deliberations, the jury returned a unanimous verdict in favor

of the defense. Thus, after nearly four-and-a-half years of hard-fought litigation, Tesla investors will likely receive nothing.

## 2.    The Risks of Proving Loss Causation and Damages

Plaintiffs also faced substantial risk in proving loss causation and damages. *See In re Tyco Int'l, Ltd.*, 535 F. Supp. 2d 249, 260-61 (D.N.H. 2007) ("Proving loss causation would be complex and difficult. Moreover, even if the jury agreed to impose liability, the trial would likely involve a confusing 'battle of the experts' over damages."). In addition to proving falsity and scienter, in order to prevail on their Section 10(b) claims, Plaintiffs would be required to prove that Defendants' allegedly false and misleading statements and omissions inflated the price of Workhorse stock and the amount of the artificial inflation.

Proving loss causation would require that Plaintiffs overcome Defendants' arguments that the alleged corrective disclosures did not reveal that the alleged misstatements were false or misleading, and that the decline in Workhorse's stock price was due to some other factor(s). *See* Miller Decl. at ¶ 57. If the Court or jury accepted Defendants' argument that other factors, as opposed to the alleged corrective disclosures, had negatively impacted Workhorse's stock price, the potential to significantly decrease damages was very real. In addition to these arguments, Plaintiffs would also have to defeat Defendants' likely *Daubert* challenges to their experts, and would likely raise challenges of their own. *See id.* at ¶ 52. Defendants' experts would likely attempt to undermine the loss causation and damages assessments made by Plaintiffs' expert, leading to a costly, unpredictable, and potentially confusing "battle of the experts." *Id.* at 57.

The reaction of a jury to complex expert testimony is highly unpredictable, and Lead Counsel recognizes the possibility that a jury could be swayed by convincing experts for the Defendants and find there were no damages or only a fraction of the amount of damages asserted by Plaintiffs. *See, e.g.*, *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 744-45 (S.D.N.Y. 1985) (approving

settlement where "it is virtually impossible to predict with any certainty which testimony would be credited, and ultimately, which damages would be found to have been caused by actionable, rather than the myriad nonactionable factors such as general market conditions"), *aff'd*, 798 F.2d 35 (2d Cir. 1986); *In re Veeco Instruments Inc. Sec. Litig.*, 2007 U.S. Dist. LEXIS 85629, at *30 (S.D.N.Y. Nov. 7, 2007) ("The jury's verdict with respect to damages would depend on its reaction to the complex testimony of experts, a reaction which at best is uncertain.").

In the end, while Lead Counsel believes that reliable and convincing expert testimony can be provided on the damages question, the meaningful and substantial risks presented made the outcome of a trial extremely uncertain. As a result, this factor also weighs in favor of the Settlement.

### D. The Complexity, Expense, and Likely Duration of the Litigation Justifies the Settlement

The immediacy and certainty of a recovery is another factor for the Court to balance in determining whether this proposed Settlement is fair, adequate, and reasonable, as "[t]he expense and possible duration of the litigation should be considered in evaluating the reasonableness of [a] settlement." *Milstein v. Huck*, 600 F. Supp. 254, 267 (E.D.N.Y. 1984); *see also Officers for Justice*, 688 F.2d at 626; *DIRECTV*, 221 F.R.D. at 526 ("In this respect, 'It has been held proper to take the bird in hand instead of a prospective flock in the bush.'")

As noted above, Defendants demonstrated a commitment to defend this case through and beyond trial, if necessary, and are represented by well-respected and highly capable counsel. If not for this Settlement, the expense and time of continued litigation would have been substantial.

If this Litigation continued, Plaintiffs' motion for class certification and Defendants' motions for summary judgment, as well as potential discovery motions, *Daubert* motions, motions *in limine*, etc., would have to be briefed and argued. Substantial time and expense would need to be incurred in preparing the case for

MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR FINAL APPROVAL Case No. 2:21-CV-02072-CJC-PVC

trial. The trial itself would have been long, expensive, and uncertain, and post-trial motions and appeals challenging the jury verdict would be virtually assured. *See, e.g.*, *Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408 (7th Cir. 2015); *In re BankAtlantic Bancorp, Inc.*, 2011 U.S. Dist. LEXIS 48057, at *26 (S.D. Fla. Apr. 25, 2011). All of these events and proceedings would add considerably to the expense and duration of the litigation.

The legal issues presented are complex—proving scienter, causation, and damages—and would involve expert testimony, as discussed above. The Settlement will spare the litigants the significant delay, risk, and expense of continued litigation. Many hours of the Court's time and resources also have been spared. Moreover, even if the Settlement Class could obtain a larger judgment at a trial, the additional delays through post-trial motions, and appeals would reduce and/or deny any recovery for years, and the collectability issues also reduce the prospects of recovery of a larger judgment to virtually zero. The $35 million settlement, at this juncture, results in an immediate and substantial recovery, without the considerable risk, expense, and delay of continued litigation.

### E.    <u>Lead Plaintiff Had Sufficient Information to Determine the Propriety of the Settlement</u>

In reviewing a class action settlement, the Court may also consider the stage of the proceedings and the discovery thus far completed. *See Officers for Justice*, 688 F.2d at 625; *Mego Fin.*, 213 F.3d at 458. Here, both the knowledge of Lead Counsel and the proceedings themselves have reached a stage where an intelligent evaluation of the strengths and weaknesses of Plaintiffs' case and the propriety of the Settlement could be made. As discussed above and in the Miller Declaration, this Litigation has involved extensive discovery, including the production of over 110,000 pages of documents. *See* Miller Decl. at ¶ 6. The Parties also participated in extensive settlement negotiations, including an all-day, face-to-face mediation session with Mr. Melnick in August 2022, where the Parties' claims and defenses

were fully vetted. *See id.* at ¶ 34. Prior to the mediation, the parties exchanged detailed mediation statements which further highlighted the factual and legal issues in dispute. *Id*. As a result, Lead Counsel was able to assess the strengths and weaknesses of the claims asserted and resolve the Action on a highly favorable basis for the Settlement Class.

**F.    The Recommendations of Experienced Counsel After Extensive Litigation and Arm's-Length Settlement Negotiations Favor Approval of the Settlement**

As the Ninth Circuit observed in *Rodriguez*, "[t]his circuit has long deferred to the private consensual decision of the parties" and their counsel in settling an action. 563 F.3d at 965. Courts have recognized that "'[g]reat weight' is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation." *DIRECTV*, 221 F.R.D. at 528; *accord Omnivision*, 559 F. Supp. 2d at 1043 ("The recommendations of plaintiffs' counsel should be given a presumption of reasonableness….").

Lead Counsel has significant experience in securities and other complex class action litigation and has negotiated numerous other substantial class action settlements throughout the country. *See* Miller Decl. at Ex. B. Having carefully considered and evaluated, *inter alia*, the relevant legal authorities and evidence to support the claims asserted against Defendants, the likelihood of prevailing on these claims, the risk, expense, and duration of continued litigation, and the likely appeals and subsequent proceedings necessary if Plaintiffs did prevail against Defendants at trial, Lead Counsel has concluded that the Settlement is an excellent result for the Settlement Class. *See id.* at ¶ 60. Here, "[t]here is nothing to counter the presumption that Lead Counsel's recommendation is reasonable." *Omnivision*, 559 F. Supp. 2d at 1043. As discussed above, the settlement was the result of arms-length negotiations with a respected mediator, Jed D. Melnick. *See* Milelr Decl. at Ex. A (Melnick Decl.). Importantly, Lead Plaintiff Weis and Additional Plaintiff Federico,

who were both active in the Litigation, authorized counsel to settle and support the reasonableness of the Settlement. *See id.* at ¶ 111.

### G.  Reaction of the Settlement Class Supports Approval of the Settlement

Pursuant to the Preliminary Approval Order, the Court-approved Postcard Notice was emailed and/or mailed to potential Settlement Class Members who could be identified with reasonable effort and a Summary Notice was published over *PR Newswire* and *Business Wire* on March 7, 2023. *See* Cavallo Decl. at ¶¶ 2-9. These documents were also posted on the Settlement-specific website established by the Claims Administrator. *See id.* at ¶ 11. The Notice advised the Settlement Class of the terms of the Settlement and the Plan of Allocation as well as the procedure and deadline for filing objections. As of March 14, 2023, 5,128 Postcard Notices had been mailed to potential Settlement Class Members and nominees. *See id.* at ¶ 8. While the July 3, 2023, objection deadline has not yet passed, to date, no Class Member has objected to the Settlement or the Plan of Allocation. Pursuant to the Preliminary Approval Order, Lead Counsel will submit reply papers in further support of the Settlement on July 17, 2023, after deadline to object or request exclusion has passed, at which point it will address any objections or exclusions.

Of course, to the extent any objections are ultimately received, "[t]he fact that some class members object to the Settlement does not by itself prevent the court from approving the agreement." *Brotherton v. Cleveland*, 141 F. Supp. 2d 894, 906 (S.D. Ohio 2001). "'A certain number of…objections are to be expected in a class action.'" *Thacker v. Chesapeake Appalachia, L.L.C.*, 695 F. Supp. 2d 521, 533 (E.D. Ky. 2010), *aff'd sub nom. Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235 (6th Cir. 2011). Each of the above factors fully supports a finding that the Settlement is fair, reasonable, and adequate, and therefore deserves this Court's final approval.

MEMORANDUM OF LAW IN SUPPORT
OF MOTION FOR FINAL APPROVAL
Case No. 2:21-CV-02072-CJC-PVC

## V.    THE COURT SHOULD FINALLY CERTIFY THE CLASS

The Parties have stipulated to certification, for settlement purposes only, of a Class of: "[A]ll Persons who purchased or otherwise acquired Workhorse securities during the Class Period and were damaged thereby, excluding Defendants, officers, and directors of Workhorse, members of their immediate families and their legal representatives, heirs, successors, or assigns, any entity in which Defendants have or had a controlling interest, and Persons who timely and validly request exclusion." *See* Stipulation of Settlement, ECF No. 105-2 at ¶ 1.40.

In the Preliminary Approval Order, the Court provisionally certified the Settlement Class after analyzing each of the factors under Federal Rule of Civil Procedure 23(a) (numerosity, commonality, typicality, and adequacy) and Rule (b)(3) (predominance and superiority). The circumstances supporting the Court's analysis in preliminarily certifying the class are still present. Indeed, the element of numerosity has been strengthened by the fact that the Claims Administrator has already identified and sent out Postcard Notices to 5,128 potential Settlement Class Members and nominees, a strong indication that the number of Class Members exceeds 40. *See Moore v. Ulta Salon, Cosmetics & Fragrance, Inc.*, 311 F.R.D. 590, 602–03 (C.D. Cal. 2015) ("As a general matter, courts have found that numerosity is satisfied when class size exceeds [forty] members.") Thus, Lead Plaintiff respectfully requests the Court finally certify the Settlement Class. *See Perez v. DIRECTV Grp. Holdings, LLC*, No. 8:16-CV-01440-JLS, 2023 U.S. Dist. LEXIS 13920, at *15 (C.D. Cal. Jan. 23, 2023) (incorporating the class certification analysis from the preliminary approval order because "[n]othing since the Preliminary Approval Order counsels the Court to depart from its previous conclusions on the existence of a proper Settlement Class."); *Hartranft v. TVI, Inc.*, No. 8:15-cv-01081-CJC, 2019 U.S. Dist. LEXIS 222611, at *4 (C.D. Cal. Oct. 21, 2019) (Carney, J.) (confirming the analysis in the in the preliminary approval order that the proposed

Settlement Class satisfies the requirements of Fed. R. Civ. P. 23 and making final the conditional class certification set forth in the preliminary approval order.).

## VI.    THE PLAN OF ALLOCATION IS FAIR AND REASONABLE

Lead Plaintiff also seeks approval of the Plan of Allocation. The Plan of Allocation provides an equitable basis to allocate the Net Settlement Fund among all Settlement Class Members who submit an acceptable Proof of Claim, and it is set forth in full in the Notice.

Assessment of a plan of allocation of settlement proceeds in a class action under Rule 23 of the Federal Rules of Civil Procedure is governed by the same standards of review applicable to the settlement as a whole--the plan must be fair, reasonable, and adequate. *Ikon*, 194 F.R.D. at 184; *see also Class Plaintiffs*, 955 F.2d at 1284-85. District courts enjoy "broad supervisory powers over the administration of class-action settlements to allocate the proceeds among the claiming class members…equitably." *Beecher v. Able*, 575 F.2d 1010, 1016 (2d Cir. 1978); *accord In re Chicken Antitrust Litig. Am. Poultry*, 669 F.2d 228, 238 (5th Cir. 1982).

Courts have concluded that "[i]t is reasonable to allocate the settlement funds to class members based on the extent of their injuries or the strength of their claims on the merits." *See Omnivision*, 559 F. Supp. 2d at 1045; *Heritage Bond*, 2005 U.S. Dist. LEXIS 13555, at *38 (concluding as fair, a plan of allocation which "'makes interclass distinctions based upon, inter alia, the relative strengths and weaknesses of class members' individual claims and the timing of purchases of the securities at issue'"). Here, the Plan of Allocation was developed by Lead Counsel with the assistance of Plaintiffs' economic expert based on Plaintiffs' damages theory. *See* Miller Decl. at ¶ 73. As a result, the Plan of Allocation will result in a fair distribution of the available proceeds among Settlement Class Members who submit valid claims and therefore should be approved. To date, there has been no objection to the Plan of Allocation.

## VII.  CONCLUSION

The Settlement is a highly favorable result, given the considerable risk, expense, and delay if the Litigation were to continue, the certain and immediate benefit of the Settlement to the Members of the Settlement Class, and the lack of opposition mounted by Settlement Class Members to date. In addition, the Plan of Allocation tracks the theory of damages asserted in the Action and is necessarily fair, reasonable, and adequate. For the foregoing reasons, therefore Lead Plaintiff respectfully requests that the Court: (1) finally approve the Settlement; and (2) approve the Plan of Allocation, as fair, reasonable, and adequate.

DATED: March 16, 2023              **KAHN SWICK & FOTI, LLC**

By: */s/ Kim E. Miller*
Kim E. Miller (SBN 178370)
kim.miller@ksfcounsel.com
250 Park Avenue, 7th Floor-
New York, NY 10177
Telephone: (212) 696-3730
Facsimile: (504) 455-1498

*Counsel for Lead Plaintiff Timothy M. Weis,*
*Additional Plaintiff Angelo Federico, and*
*the Settlement Class*

## LOCAL RULE 11-6.1 CERTIFICATION

The undersigned, counsel of record for Lead Plaintiff Timothy M. Weis, Additional Plaintiff Angelo Federico, and the Settlement Class, certifies that this brief contains 6,997 words, which complies with the word limit of L.R. 11-6.1.

*/s/ Kim E. Miller*
Kim E. Miller

MEMORANDUM OF LAW IN SUPPORT
OF MOTION FOR FINAL APPROVAL
Case No. 2:21-CV-02072-CJC-PVC

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify under penalty of perjury that on March 16, 2023, I authorized the electronic filing of the foregoing Notice of Motion and Motion for Preliminary Approval of Settlement with the Clerk of the Court using the CM/ECF system which will send a Notice of Electronic Filing to the e-mail addresses on the attached Electronic Mail Notice List.

*/s/ Kim E. Miller*
Kim E. Miller

23