**KAHN SWICK & FOTI, LLC**
Kim E. Miller (SBN 178370)
kim.miller@ksfcounsel.com
250 Park Avenue, 7th Floor
New York, NY 10177
Telephone: (212) 696-3730
Facsimile: (504) 455-1498

*Lead Counsel for Lead Plaintiff Timothy M. Weis,*
*Additional Plaintiff Angelo Federico, and the Settlement Class*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAM FARRAR, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> WORKHORSE GROUP, INC., DUANE HUGHES, STEVE SCHRADER, ROBERT WILLISON, and GREGORY ACKERSON <br><br> Defendants. | Case No. 2:21-cv-02072-CJC-PVC <br><br> LEAD COUNSEL'S NOTICE OF MOTION AND MOTION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES AND SERVICE AWARDS TO SETTLEMENT CLASS REPRESENTATIVES <br><br> JUDGE: Hon. Cormac J. Carney <br> DATE: July 24, 2023 <br> TIME: 1:30 p.m. <br> CTRM: 9B |

## NOTICE OF MOTION AND MOTION

Lead Counsel Kahn, Swick & Foti, LLC ("Lead Counsel" or "KSF") moves for an order:

(1)    Awarding attorneys' fees of 25% of the Settlement Amount, valued at approximately $8.75 million, plus interest, in the same proportion of cash and stock as Settlement Class Members;

(2)    Awarding Lead Counsel $112,027.51, plus interest, for reasonable, out-of-pocket expenses advanced by Lead Counsel; and

(3)    Awarding each of the Settlement Class Representatives, Lead Plaintiff Timothy M. Weis and Additional Plaintiff Angelo Federico, service awards of $5,000 ($10,000 total).[1]

This motion is based upon the Memorandum of Points and Authorities, the Declaration of Kim. E. Miller in Support of Final Approval of Class Action Settlement, Plan of Allocation of Settlement Proceeds, and Application for an Award of Attorneys' Fees, Reimbursement of Litigation Expenses, and Service Awards to Settlement Class Representatives, all other pleadings and matters of record, and such additional evidence or argument as may be presented before or at the hearing of this motion.

---

[1] Capitalized terms not defined herein have the meaning ascribed to them in the Stipulation of Settlement (ECF No. 105-2).

MOTION FOR ATTORNEYS' FEES
Case No. 2:21-CV-02072-CJC-PVC

# TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES.......................................1

I.     INTRODUCTION ..........................................................................1

II.    ARGUMENT.................................................................................3

    A.    Lead Counsel Is Entitled to an Award of Attorneys' Fees from the Common Fund...............................................................................3

    B.    A Fee of 25% of the Common Fund is Reasonable.............................4

        1.    Lead Counsel Achieved Excellent Results for the Settlement Class ..............................................................................4

        2.    The Risks of Continued Litigation Are Substantial....................6

        3.    Lead Counsel Performed High Quality Work in this Complex Case ...............................................................................10

        4.    The Contingent Nature of the Fee and the Financial Burden on Lead Counsel Support the Requested Fee Award ....................12

        5.    A 25% Fee is Justified in Light of Fee Awards Made in Similar Cases ...............................................................................13

    C.    A Lodestar Cross-Check Confirms the Requested Fee Award Is Reasonable.................................................................................15

    D.    Lead Counsel Should Be Awarded Its Reasonable Expenses ............18

    E.    The Settlement Class Representatives Should be Awarded Service Awards.......................................................................................20

III.   CONCLUSION .................................................................................21

# TABLE OF AUTHORITIES

**Cases**

*Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215 (10th Cir. 1996) ...........................9

*Azar v. Blount Int'l, Inc.*, No. 3:16-cv-0483, 2019 U.S. Dist. LEXIS 223032 (D. Or. Dec. 31, 2019) ................................................................................................5

*Barbosa v. Cargill Meat Solutions Corp.*, 297 F.R.D. 431 (E.D. Cal. 2013)..........11

*Becerra-South v. Howroyd-Wright Empl. Agency, Inc.*, No. CV 18-083448, 2021 U.S. Dist. LEXIS 14663 (C.D. Cal. Jan. 25, 2021)........................................ 4, 20

*Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245 (N.D. Cal. Mar 19, 2015) ..20

*Bluetooth Headset Prods. Liability Litig. v. Brennan*, 654 F.3d 935 (9th Cir. 2011) ...................................................................................................................3

*Blum v. Stenson*, 465 U.S. 886 (1984) ....................................................................3

*Brown v. China Integrated Energy*, No. CV 11-02559, 2016 U.S. Dist. LEXIS 204416 (C.D. Cal. July 22, 2016)...................................................... 5, 6, 7, 10, 13

*Brown v. Papa Murphy's Holdings, Inc.*, No. 19-cv-5514, 2022 U.S. Dist. LEXIS 79209 (W.D. Wash. May 2, 2022) ..................................................................15

*Buttonwood Tree Value Partners L.P. v. Sweeney*, No. SACV 10-00537 (C.D. Cal. July 21, 2014) ...................................................................................... 5, 14

*Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973 (9th Cir. 2008)..........................18

*Chalmers v. Los Angeles*, 796 F.2d 1205 (9th Cir. 1986) ....................................17

*Clem v. KeyBank, N.A.*, No. 13-cv-789, 2014 U.S. Dist. LEXIS 87174 (S.D.N.Y. June 20, 2014)................................................................................................17

*Destefano v. Zynga, Inc.*, No. 12-cv-04007, 2016 U.S. Dist. LEXIS 17196 (N.D. Cal. Feb. 11, 2016).......................................................... 4, 8, 9, 10, 11, 13, 16, 17, 18

*Gilliam v. Levine*, No. CV 18-2580, 2022 U.S. Dist. LEXIS 25209 (C.D. Cal. Jan. 25, 2022)................................................................................................18

*Glickenhaus & Co. v. Household Int'l., Inc.*, 787 F.3d 408 (7th Cir. 2015), *reh'g denied* (July 1, 2015) ...................................................................................................9

*Hicks v. Toys 'R' Us-Del., Inc.*, No. CV 13-1302, 2014 U.S. Dist. LEXIS 135596 (C.D. Cal. Sept. 2, 2014) ...............................................................................................18

*Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713 (11th Cir. 2012) .................9

*In re Am. Apparel S'holder Litig.*, No. CV 10-06252, 2014 U.S. Dist. LEXIS 184548 (C.D. Cal. July 28, 2014)............................................................. 4, 7, 10, 11, 19, 20

*In re Amgen Sec. Litig.*, No. CV 7-2536, 2016 U.S. Dist. LEXIS 148577 (C.D. Cal. Oct. 25, 2016) .......................................................................................................13

*In re Apollo Grp. Inc. Sec. Litig.*, No. CV 04-2147, 2012 U.S. Dist. LEXIS 55622 (D. Ariz. Apr. 20, 2012) ...................................................................................................3

*In re Banc of California Secs. Litig.*, No. SA CV 17-118, 2020 U.S. Dist. LEXIS 48778 (C.D. Cal. Mar. 16, 2020)...............................................................................14

*In re Broadcom Corp. Sec. Litig.*, No. 01-275, 2005 U.S. Dist. LEXIS 41983 (C.D. Cal. Sept. 14, 2005) ...................................................................................................6

*In re Cytrx Corp. Secs. Litig.*, No. 2:14-cv-1956, 2016 U.S. Dist. LEXIS 70190, (C.D. Cal. May 18, 2016) .................................................................................................14

*In re Diamond Foods*, Inc., No. C 11-05386, 2014 U.S. Dist. LEXIS 3252, (N.D. Cal. Jan. 20, 2014) .....................................................................................................10

*In re Facebook, Inc. IPO Sec. & Deriv. Litig.*, MDL No. 12-2389, 2015 U.S. Dist. LEXIS 152668  (S.D.N.Y. Nov. 9, 2015) ...........................................................11

*In re Mego Fin. Corp. Sec.Litig.*, 213 F.3d 454 (9th Cir. 2000)..............................14

*In re Nuvelo, Inc. Sec. Litig.*, No. C 07-04056, 2011 U.S. Dist. LEXIS 72260 (N.D. Cal. July 6, 2011)...................................................................................................14

*In re Omnivision Techs., Inc.*, 559 F.Supp.2d 1036 (N.D. Cal. 2008) 4, 6, 10, 15, 18

*In re Portland GE Sec. Litig.*, No. 3:20-cv-1583, 2022 U.S. Dist. LEXIS 51404 (D. Or. Mar. 22, 2022) ............................................................................. 13, 17

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291 (9th Cir. 1994).........3

*In re Wireless Facilities Sec. Litig.*, No. 04cv1589, 2009 U.S. Dist. LEXIS 153477 (S.D. Cal. Jan. 13, 2009) .............................................................................. 8, 9, 12

*Johnson v. Gen. Mills, Inc.*, No. SACV 10-00061, 2013 U.S. Dist. LEXIS 90338 (C.D. Cal. June 17, 2013) ...................................................................................... 4, 18

*Kaye v. Immunocellular Therapeutics, Ltd.*, No. SA CV 17-3250, 2019 U.S. Dist. LEXIS 201657 (C.D. Cal. Nov. 19, 2019) ................................................. 6, 10, 13

*Kendall v. Odonate Therapeutics, Inc.*, No. 3:20-cv-01828, 2022 U.S. Dist. LEXIS 101021 (S.D. Cal. June 6, 2022) ............................................................... 6, 14, 15

*Khoja v. Orexigen*, No. 15-cv-540, 2021 U.S. Dist. LEXIS 230105 (S.D. Cal. Nov. 30, 2021) ...........................................................................................................14

*Mandalevy v. Bofi Holding, Inc.*, No. 3:17-CV-667, 2022 U.S. Dist. LEXIS 174345 (S.D. Cal. Sept. 23, 2022)........................................................ 7, 10, 13, 18, 19, 20

*Mauss v. NuVasive, Inc.*, No. 13-cv-2005, 2018 U.S. Dist. LEXIS 206387 (S.D. Cal. Dec. 6, 2018) ...........................................................................................................14

*Mossberg v. Indymac Fin.*, No. CV07-1635, 2013 U.S. Dist. LEXIS 205686 (C.D. Cal. Jan. 28, 2013) ...................................................................................... 8, 11

*Nguyen v. Radient Pharms. Corp.,* No. SACV 11-00406, 2014 U.S. Dist. LEXIS 63312 (C.D. Cal. May 6, 2014) ...........................................................................14

*Patel v. Axesstel, Inc.*, No. 14-cv-1037, 2015 U.S. Dist. LEXIS 146949 (S.D. Cal. Oct. 23, 2015) ................................................................................................. 14, 15

*Prodanova v. H.C. Wainwright & Co., LLC*, 993 F.3d 1097 (9th Cir. 2021) ...........7

*Ramsey v. MRV Communs. Inc.*, No. CV 08-04561, 2010 U.S. Dist. LEXIS 161816 (C.D. Cal. Nov. 16, 2010) ........................................................................... 14, 20

*Rankin v. Am. Greetings, Inc.*, No. 2:10-CV-01831, 2011 U.S. Dist. LEXIS 72250 (E.D. Cal. July 5, 2011). .................................................................................17

*Redwen v. Sino Clean Energy, Inc.*, No. CV 11-3936, 2013 U.S. Dist. LEXIS 100275 (C.D. Cal. July 9, 2013)...............................................................................19

*Robbins v. Koger Properties, Inc.*, 116 F.3d 1441 (11th Cir. 1997) ........................9

*Rutti v. Lojack Corp., Inc.*, No. SACV 06-350, 2012 U.S. Dist. LEXIS 107677 (C.D. Cal. July 31, 2012)..................................................................................19

*Scott v. ZST Dig. Networks, Inc.*, No. CV 11-3531, 2013 U.S. Dist. LEXIS 197940 (C.D. Cal. Aug. 5, 2013) ...............................................................................13

*Smith v. Experian*, No. 17-cv-629 (C.D. Cal. Nov. 9, 2020)...................................17

*Spann v. J.C. Penney Corp.*, 211 F. Supp. 3d 1244 (C.D. Cal. 2016).....................16

*Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003)................................................20

*Sudunugunta v. NantKwest,* No. CV 16-1947, 2019 U.S. Dist. LEXIS 81337 (C.D. Cal. May 13, 2019) .................................................................................8

*Vincent v. Hughes Air West, Inc.*, 557 F.2d 759 (9th Cir. 1977) ..............................3

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002).................... 3, 4, 13, 16

*Wong v. Arlo Techs.*, No. 5:19-cv-00372, 2021 U.S. Dist. LEXIS 58514 (N.D. Cal. Mar. 25, 2021) ......................................................................................5

**Other Authorities**

Cornerstone Research, *Securities Class Action Settlements: 2022 Review and Analysis*..................................................................................................6

NERA Economic Consulting, *Recent Trends in Securities Class Action Litigation: 2022 Full-Year Review* ........................................................... 6, 7, 20

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Lead Counsel has achieved a tremendous result in this case -- $35 million in cash and stock -- for the benefit of the Settlement Class that faced the real risk of recovering substantially less, or nothing at all, in light of Workhorse's precarious financial position, rapidly depleting insurance coverage available to fund a settlement, and ongoing governmental investigation. Lead Counsel respectfully seeks an award of attorneys' fees of 25% of the Settlement Amount, valued at approximately $8.75 million, plus interest, in the same proportion of cash and stock as Settlement Class Members.[2]

The requested award is justified in light of the excellent result achieved for the Settlement Class, the complexity of the case, the high quality of work and effort expended by Lead Counsel, and the risks Lead Counsel undertook on a wholly contingent basis. It is also consistent with the Ninth Circuit's "benchmark" for a reasonable fee award. Lead Counsel, which has prosecuted this Action for nearly two years and has received no payment to date, has spent over 3,900 hours litigating

---

[2] The $35 million Settlement Amount consists of $15 million in cash (the "Settlement Cash") and $20 million worth of Workhorse common stock (the "Settlement Stock"). ¶¶ 1.39, 2.2. The exact number of shares to be transferred to the Settlement Class will be "based on the volume weighted average price for the fifteen (15) consecutive trading days ending on the trading day immediately preceding the date the Court enters the judgment (the "VWAP")." ¶ 1.39. If, however, the price per share deviates more than 25% above or below the VWAP as of the close of market on the trading day before the Transfer Date (5 days after the Settlement becomes final), the number of shares of Settlement Stock must be adjusted so that the overall value is $20 million. ¶ 2.4. Lead Counsel seeks an award of attorneys' fees amounting to 25% of the Settlement Cash ($3.75 million) and 25% of the Settlement Stock (stock valued at $5 million as of the Transfer Date).

MEMORANDUM IN SUPPORT OF
MOTION FOR ATTORNEYS' FEES
Case No. 2:21-CV-02072-CJC-PVC

this case against Defendants. *See* Declaration of Kim E. Miller ("Miller Declaration") filed herewith, at ¶¶ 92, 104.[3]

In addition, Lead Counsel respectfully requests reimbursement of $112,027.51, plus interest, for reasonable, out-of-pocket expenses advanced by Lead Counsel. The requested expenses, which were for investigators, experts, consultants, a discovery platform, and other routine litigation expenses, were necessary to prosecute this Action and to resolve the claims against Defendants in a highly beneficial manner for the Settlement Class and are the type of expenses that are regularly approved. *See* Miller Decl. at ¶¶ 110-117. Moreover, the requested expenses are below the maximum amount set forth in the Notice ($130,000).

Finally, Lead Counsel requests service awards of $5,000 to each of the Settlement Class Representatives, Lead Plaintiff Timothy M. Weis and Additional Plaintiff Angelo Federico ($10,000 total) – each of whom invested substantial time and effort in this Action. Lead Plaintiff monitored Lead Counsel and regularly communicated with Lead Counsel regarding the litigation, risks, and strategy, and both the Lead Plaintiff and Additional Plaintiff produced documents, reviewed and provided input on various filings, and conferred with Lead Counsel.[4]

---

[3] The Miller Declaration and its exhibits are integral to this submission. Lead Plaintiff respectfully refers the Court to them for a detailed description of the factual and procedural history of the Action, the negotiations leading to the Settlement, and the fairness and reasonableness of the Settlement, the Plan of Allocation, and Lead Counsel's request for an award of attorneys' fees and expenses and service awards for the Settlement Class Representatives.

[4] The deadline for potential Settlement Class Members to object to the Settlement, request for attorneys' fees and expenses, and/or request for service awards is July 3, 2023. Lead Counsel will address any such objections in its reply brief.

## II.    ARGUMENT

### A. Lead Counsel Is Entitled to an Award of Attorneys' Fees from the Common Fund

In *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984), the Supreme Court recognized that under the common fund doctrine, a reasonable fee may be based "on a percentage of the fund bestowed on the class." Likewise, it has long been recognized in the Ninth Circuit that "a private plaintiff, or his attorney, whose efforts create, discover, increase or preserve a fund to which others also have a claim is entitled to recover from the fund the costs of his litigation, including attorneys' fees." *Vincent v. Hughes Air West, Inc.*, 557 F.2d 759, 769 (9th Cir. 1977). The purpose of the common fund doctrine is to avoid unjust enrichment so that "those who benefit from the creation of the fund should share the wealth with the lawyers whose skill and effort helped create it." *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994).

The Ninth Circuit has expressly approved the use of the percentage method in common fund cases. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002). Although courts have discretion to award fees in such cases based on either the so-called lodestar/multiplier method or the percentage-of-the-fund method, *id.,* district courts in this Circuit have almost uniformly shifted to the percentage method in awarding fees in common fund class actions. "'Because the benefit to the class is easily quantified in common-fund settlements,' courts can award attorneys a percentage of the common fund 'in lieu of the often more time-consuming task of calculating the lodestar.'" *In re Apollo Grp. Inc. Sec. Litig.*, No. CV 04-2147, 2012 U.S. Dist. LEXIS 55622, at *20 (D. Ariz. Apr. 20, 2012) (quoting *Bluetooth Headset Prods. Liability Litig. v. Brennan*, 654 F.3d 935, 941 (9th Cir. 2011)). Nevertheless, "[w]here a court employs the percentage-of-recovery method, the lodestar method is often used as a cross-check to assess reasonableness." *Johnson v. Gen. Mills, Inc.*,

MEMORANDUM IN SUPPORT OF
MOTION FOR ATTORNEYS' FEES
Case No. 2:21-CV-02072-CJC-PVC

No. SACV 10-00061, 2013 U.S. Dist. LEXIS 90338, at *18 (C.D. Cal. June 17, 2013) (Carney, J.) (citing *Vizcaino*, 290 F.3d at 1050-51 ).

### B. A Fee of 25% of the Common Fund is Reasonable

"In determining the reasonableness of the percentage requested in any given case, the court must consider "(1) the results achieved; (2) the risk of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee and the financial burden carried by the plaintiffs; and (5) awards made in similar cases." *In re Am. Apparel S'holder Litig.*, No. CV 10-06252, 2014 U.S. Dist. LEXIS 184548, at *67-68 (C.D. Cal. July 28, 2014) (citing *In re Omnivision Techs., Inc.*, 559 F.Supp.2d 1036, 1046 (N.D. Cal. 2008)).

Under the percentage-of-recovery method, "[t]he Ninth Circuit has held that 25% of a common fund is the 'benchmark' for a reasonable fee award, and courts must provide adequate explanation in the record of any 'special circumstances' to justify a departure from this benchmark" – whether upward or downward. *Becerra-South v. Howroyd-Wright Empl. Agency, Inc.*, No. CV 18-083448, 2021 U.S. Dist. LEXIS 14663, at *11-12 (C.D. Cal. Jan. 25, 2021) (Carney, J.) (citing *Bluetooth*, 654 F.3d at 942-43; *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989)).

Lead Counsel respectfully submits that a benchmark award of 25% is eminently reasonable here.

### 1. Lead Counsel Achieved Excellent Results for the Settlement Class

"The overall result and benefit to the class from the litigation is the most important factor in granting a fee award." *Destefano v. Zynga, Inc.*, No. 12-cv-04007, 2016 U.S. Dist. LEXIS 17196, at *57-58 (N.D. Cal. Feb. 11, 2016) (citing *Omnivision*, 559 F. Supp. 2d at 1046).

Had Plaintiffs continued to litigate the case, any available funds or insurance proceeds would have been depleted, resulting a lower recovery, or potentially no

recovery at all. Through the Settlement, Lead Counsel achieved an exceptional result for the Settlement Class: it was able to extract virtually all of Defendants' remaining insurance proceeds, and a sizeable amount of Workhorse common stock – for a total Settlement valued at $35 million – from a company with rapidly-dwindling cash, limited insurance coverage, business uncertainties, and ongoing regulatory issues – which more than justifies the requested 25% fee award. *See Brown v. China Integrated Energy*, No. CV 11-02559, 2016 U.S. Dist. LEXIS 204416, at *32 (C.D. Cal. July 22, 2016) ("The settlement also secures a substantial recovery for Plaintiffs, which is a good result given the complexity of the litigation and Defendant['s] [ ] lack of American assets that could be used to satisfy any judgment against it. This factor weighs in favor of an attorneys' fees award of twenty-five percent."); *Buttonwood Tree Value Partners L.P. v. Sweeney*, No. SACV 10-00537, ECF No. 216 (C.D. Cal. July 21, 2014) (Carney, J.) (awarding 33.3% in fees where "Class Counsel achieved an excellent recovery for the Class in light of the limited funds available to pay a judgment").

Further, after consulting with an economics expert, Lead Plaintiff and Lead Counsel believe a successful verdict on all claims could result in aggregated damages as high as $1.2 billion. However, given Workhorse's precarious financial position, that figure is illusory. Simply put, the Settlement Class could have recovered nothing had litigation continued while the insurance policies quickly wasted. Nevertheless, taking this maximum damages number at face value, the Settlement still constitutes approximately 3% of maximum Class-wide damages – within the range of reasonableness and on par with comparable securities class action settlements. *See Wong v. Arlo Techs.*, No. 5:19-cv-00372, 2021 U.S. Dist. LEXIS 58514, at *28-29 (N.D. Cal. Mar. 25, 2021) (awarding 25% in attorneys' fees where 2.35% of maximum possible damages recovered); *Azar v. Blount Int'l, Inc.*, No. 3:16-cv-0483, 2019 U.S. Dist. LEXIS 223032, at *29 (D. Or. Dec. 31, 2019) (recovery of 2.8-4.7% of Class's total damages justified 25% fee award); *China*

*Integrated*, 2016 U.S. Dist. LEXIS 204416, at \*32 (noting "average recovery of three percent in securities class action settlements") (citing *Omnivision*, 559 F. Supp. 2d at 1046); *In re Broadcom Corp. Sec. Litig.*, No. 01-275, 2005 U.S. Dist. LEXIS 41993, at \*20-21 (C.D. Cal. Sept. 14, 2005) (2.7% of damages "not [] inconsistent with the average recovery in securities class action[s]"); *cf. Kendall v. Odonate Therapeutics, Inc.*, No. 3:20-cv-01828, 2022 U.S. Dist. LEXIS 101021, at \*22 (S.D. Cal. June 6, 2022) (awarding 33.33% fee where settlement represented "3.49% of maximum estimated damages, which was above the 2021 median recovery for securities class actions").[5]

## 2. The Risks of Continued Litigation Are Substantial

"The risk that further litigation might result in Plaintiffs not recovering at all, particularly a case involving complicated legal issues, is a significant factor in the award of fees." *Kaye v. Immunocellular Therapeutics, Ltd.*, No. SA CV 17-3250, 2019 U.S. Dist. LEXIS 201657, at \*19 (C.D. Cal. Nov. 19, 2019) (citing *Omnivision*, 559 F.Supp.2d at 1046-47). The initial hurdle Plaintiffs faced was at the pleading stage, where the majority of motions to dismiss are granted.[6] *See Mandalevy v. Bofi*

---

[5] *See also* NERA Economic Consulting, *Recent Trends in Securities Class Action Litigation: 2022 Full-Year Review* at 17 (median settlement value 1.3% for securities class actions with damages of $1 billion to $1.49 billion between 2011 and 2022), *available at* https://www.nera.com/publications/archive/2023/recent-trends-in-securities-class--action-litigation--2022-full-.html; Cornerstone Research, *Securities Class Action Settlements: 2022 Review and Analysis* at 6 (median recovery of 2.2% of simplified tiered damages for 10(b)(5) actions with damages over $1 billion in 2022), *available at* https://www.cornerstone.com/wp-content/uploads/2023/03/Securities-Class-Action-Settlements-2022-Review-and-Analysis.pdf. As in any securities class action, it is almost certain that less than 100% of eligible Settlement Class Members will file claims (despite efforts to notify as many claimants as possible); accordingly, the percentage of damages Settlement Class Members will recover will likely be higher.

[6] Motions to dismiss were filed in 96% of cases brought and resolved between 2013 and 2022. 73% of those motions were decided by the court. Of those, just 20% were

MEMORANDUM IN SUPPORT OF
MOTION FOR ATTORNEYS' FEES
Case No. 2:21-CV-02072-CJC-PVC

*Holding, Inc.*, No. 3:17-CV-667, 2022 U.S. Dist. LEXIS 174345, at \*40 (S.D. Cal. Sept. 23, 2022) ("Securities class actions are complex, difficult to prove, and must surmount many hurdles, including, at the outset, PSLRA's stringent pleading standards. This factor weighs in favor of the [25%] fee."). While Plaintiffs were able to overcome challenges at the motion to dismiss stage of this litigation, there was no assurance of success at any later stages.

Indeed, had this case not settled, Plaintiffs would face – at every future stage of the litigation – complex legal and factual issues vehemently disputed by Defendants. Specifically, Lead Counsel expects that disputes about whether Defendants' statements were materially false or misleading would be hotly contested. *See* Miller Decl. at ¶ 54. Further, Defendants have been adamant they had no intent to deceive and would have continued to argue that, even if Plaintiffs could establish a material misstatement or omission, there was no evidence upon which the requisite scienter—*i.e.*, that Defendants misled investors intentionally or with deliberate recklessness—could be proven.[7] *See Prodanova v. H.C. Wainwright & Co., LLC*, 993 F.3d 1097, 1106 (9th Cir. 2021) ("The 'strong inference' [of scienter] standard 'present[s] no small hurdle for the securities fraud plaintiff.'") (citation omitted); *China Integrated*, 2016 U.S. Dist. LEXIS 204416, at \*33 (noting "scienter[ ] [ ] can be particularly difficult to establish"); *see also* Miller Decl. at ¶ 56.

Another considerable risk is whether Plaintiffs could ultimately prove, in the face of vigorous opposition, that the Class was damaged by the alleged misrepresentations (loss causation) and the amount of damages. *See, e.g., Am. Apparel*, 2014 U.S. Dist. LEXIS 184548, at \*70 ("considerable risk" proving scienter and loss causation "weigh in favor of approving a 25% fee award"); *see also* Miller Decl. at ¶ 57.  Indeed, loss causation would have come down to a "battle of

denied in full, with an additional 19% denied in part and granted in part. *See* NERA, *Recent Trends*, at 11.

[7] *See, e.g.*, ECF No. 65 (Defendants' motion to dismiss) at 23-24.

7

experts," the outcome of which is never predictable. *See In re Wireless Facilities Sec. Litig.*, No. 04cv1589, 2009 U.S. Dist. LEXIS 153477, at *27-28 (S.D. Cal. Jan. 13, 2009) (risks in securities class action include "winning the 'battle of the experts'"). There existed the very real possibility that a jury could be swayed by Defendants' experts to minimize the Class's losses or to conclude that the losses were attributable to factors other than the alleged misstatements and omissions. *See* Miller Decl. at ¶ 57. Thus, even if Plaintiffs prevailed as to liability at trial, the judgment obtained could have been only a fraction of the damages claimed.

Defendants also would vigorously oppose class certification and/or argue that any Class Period should be substantially shortened. Specifically, Defendants would likely continue to argue that only one of the three alleged corrective disclosures was in fact a corrective disclosure resulting in a statistically significant decline in the stock price, so any Class Period should be limited to that one drop. *See* ECF No. 65. Defendants would also likely submit an expert report challenging price impact, as well as potentially challenging market efficiency. *See* Miller Decl. at ¶ 48. If Defendants were to prevail on any of these arguments, Plaintiff's recovery would be reduced, if not eliminated entirely.

The continued risks of litigation here support Lead Counsel's requested fee award. *See Sudunugunta v. NantKwest,* No. CV 16-1947, 2019 U.S. Dist. LEXIS 81337, at *17 (C.D. Cal. May 13, 2019) ("Continued litigation carries the risk for the class of an inferior award or nothing. Maintaining class action status, as well as ultimately obtaining a finding of liability, remains uncertain."; 25% fee awarded); *Zynga*, 2016 U.S. Dist. LEXIS 17196, at *58 ("[T]he risks associated with this case were substantial given the challenges of obtaining class certification and establishing the falsity of the misrepresentations and loss causation."; 25% fee awarded); *Mossberg*, 2013 U.S. Dist. LEXIS 205686, at *18 ("Obviously, the plaintiff class did not face a simple path if it continued with this litigation into further discovery, summary judgment motions and, eventually, trials and, potentially, appeals."; 25%

MEMORANDUM IN SUPPORT OF
MOTION FOR ATTORNEYS' FEES
Case No. 2:21-CV-02072-CJC-PVC

fee awarded); *Wireless Facilities*, 2009 U.S. Dist. LEXIS 153477, at *25 ("Lead Plaintiff faced significant hurdles and risks associated with proving loss causation and damages and establishing liability. The results Lead Counsel achieved in light of these risks and uncertainty favor granting Lead Counsels' fee request [of 25%]."); *Broadcom*, 2005 U.S. Dist. LEXIS 41993, at *20 (in approving 25% fee, noting substantial risks of continued litigation, including dismissal, *Daubert* motions, and trial).

Finally, a substantial portion of Defendants' insurance policies has already been depleted – not only by defense costs of this litigation, but also by related shareholder derivative suits and governmental investigations. Absent settlement, defense costs would fully exhaust Defendants' remaining insurance proceeds. The Company has very limited cash, and the outcome and impact of the pending investigation of Defendants by the Department of Justice is uncertain. *See* Miller Decl. at ¶ 61. Thus, even if Plaintiffs had been able to secure a larger verdict at trial and defend it on appeal, this would be a pyrrhic victory because Defendants' insurance would be long gone, having been wasted by the litigation, and Plaintiffs would be unable to collect on the judgment.[8]  These additional risks further weigh in favor of Lead Counsel's fee request.  *See Zynga*, 2016 U.S. Dist. LEXIS 17196, at *58 (approving 25% fee; risks were "particular[ly] high" because "following Zynga's disclosures, Zynga's stock value plummeted, and Lead Counsel understood

---

[8] Moreover, even successful trial verdicts for plaintiffs may be overturned on appeal or on a post-trial motion. *See*, *e.g.*, *Glickenhaus & Co. v. Household Int'l., Inc.*, 787 F.3d 408, 413 (7th Cir. 2015), *reh'g denied* (July 1, 2015) (reversing jury verdict awarding investors $2.46 billion and remanding for new trial on loss causation); *Robbins v. Koger Properties, Inc.*, 116 F.3d 1441, 1449 (11th Cir. 1997) ($81 million jury verdict reversed and judgment entered for defendant); *Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713, 730 (11th Cir. 2012) (affirming judgment as a matter of law for defendants following jury verdict for plaintiffs); *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215, 1233 (10th Cir. 1996) (overturning plaintiffs' jury verdict in case filed in 1973 and tried in 1988 on the basis of 1994 Supreme Court opinion).

MEMORANDUM IN SUPPORT OF
MOTION FOR ATTORNEYS' FEES
Case No. 2:21-CV-02072-CJC-PVC

this to mean there would always be an issue as to collectability of any judgment achieved"); *China Integrated*, 2016 U.S. Dist. LEXIS 204416, at *33 (that Plaintiffs "may have difficulty collecting any judgment they might obtain against Defendants" weighed in favor of 25% fee award); *In re Diamond Foods*, Inc., No. C 11-05386, 2014 U.S. Dist. LEXIS 3252, at *13 (N.D. Cal. Jan. 20, 2014) (noting "risk of [Plaintiffs] not recovering anything due to Diamond's weakened financial condition").

### 3.  Lead Counsel Performed High Quality Work in this Complex Case

"The 'prosecution and management of a complex national class action requires unique legal skills and abilities.'" *Kaye,* 2019 U.S. Dist. LEXIS 201657, at *19-20 (citing *Omnivision*, 559 F.Supp.2d at 1047). "[T]his is particularly true in securities class actions because the PSLRA makes it difficult to get past the motion to dismiss stage." *Mandalevy*, 2022 U.S. Dist. LEXIS 174345, at *40 (citing *Omnivision*, 559 F. Supp. 2d at 1047); *see also Am. Apparel*, 2014 U.S. Dist. LEXIS 184648, at *71 ("The difficulty of securities litigation generally – particularly the challenges presented by the PSLRA's pleading requirements – requires skilled counsel familiar with the relevant statutes and case law.").

Here, Lead Counsel has considerable experience in prosecuting class actions in the specialized field of securities litigation. *See* Miller Decl. at ¶ 100 & Ex. B. Lead Counsel was able to leverage its skills and experience to successfully defeat Defendants' motion to dismiss and to achieve the excellent result here efficiently and expeditiously, with Defendants' limited resources going to the Settlement Class rather than being expended on further litigation. This weighs in favor of the 25% fee. *See Kaye*, 2019 U.S. Dist. LEXIS 201657, at *20 (that "class counsel are experienced class action litigators who have been appointed class counsel in other class actions . . . weighs in favor of granting the requested fee"); *Zynga*, 2016 U.S.

Dist. LEXIS 17196, at *59-60 (finding "the skill required and quality of work performed supports the fee award sought").

"The quality of opposing counsel is also relevant to the quality and skill that class counsel provided." *Zynga*, 2016 U.S. Dist. LEXIS 17196, at *59-60 (citing *Barbosa v. Cargill Meat Solutions Corp.*, 297 F.R.D. 431, 449 (E.D. Cal. 2013)). This litigation was vigorously contested by Defendants, who were ably represented by experienced and highly qualified attorneys from Sheppard Mullin, Richter & Hampton, LLP ("Sheppard Mullin") (for Defendants Workhorse and Ackerson) and Katten Muchin Rosenman LLP (for Defendants Hughes, Schrader, and Willison) – both preeminent law firms that have defended numerous securities cases resulting in favorable decisions for defendants. *See* Miller Decl. at ¶ 101. That Lead Counsel achieved the Settlement for the Settlement Class in the face of high-quality legal opposition further evidences the quality of their efforts. *See Am. Apparel*, 2014 U.S. Dist. LEXIS 184548, at *72-73 (that defendants were represented by "well-respected firms with a significant practice defending securities class actions" weighed in favor of counsel's request for 25% fee); *Mossberg*, 2013 U.S. Dist. LEXIS 205686, at *18 ("Counsel actively, thoroughly and impressively litigated a complex subject matter (both factually and legally), all the while confronting formidable defense counsel."; 25% fee awarded).

Moreover, Lead Counsel's work will not end with the Court's approval of the Settlement. Lead Counsel will necessarily expend many additional hours and resources assisting Settlement Class Members with Proofs of Claim, shepherding the claims process, and responding to Settlement Class Member inquiries – work for which no additional compensation will be sought. *See In re Facebook, Inc. IPO Sec. & Deriv. Litig.*, MDL No. 12-2389, 2015 U.S. Dist. LEXIS 152668, at *27 (S.D.N.Y. Nov. 9, 2015) ("Considering that the work in this matter is not yet concluded for Plaintiffs' counsel who will necessarily need to oversee the claims process, respond to inquiries, and assist Class Members in submitting their Proof of

11

Claims, the time and labor expended by counsel in this matter support a conclusion that a 33% fee award in this matter is reasonable.").

### 4. The Contingent Nature of the Fee and the Financial Burden on Lead Counsel Support the Requested Fee Award

As the court stated in *Broadcom* when approving an attorneys' fee award of 25% of a $150 million settlement:

> Lead Counsel assumed a substantial risk that there would be no recovery when it took the case on a contingent fee basis. Given the demanding standards for pleading securities fraud, many cases are dismissed at the threshold. A case that survives motions to dismiss later confronts summary judgment motions, *Daubert* challenges and the uncertainty of trial. The complexity and subtlety of Defendants' scheme and the quality of the opposition added to the uncertainty of success.

2005 U.S. Dist. LEXIS 41993, at *20; *see also Wireless Facilities*, 2009 U.S. Dist. LEXIS 153477, at *27-28 (summarizing Lead Counsel's risks in securities class action).

Here, Lead Counsel undertook this complex Action on a wholly contingent-fee basis, with no guarantee of ever being compensated for the investment of time and money that the Action would require. *See* Miller Decl. at ¶ 103. Lead Counsel steadfastly pursued the claims on behalf of the Settlement Class, dedicating substantial attorney and professional resources to this effort. *See id.* at ¶¶ 90-96. Lead Counsel also advanced $112,027 dollars in out-of-pocket expenses with no guarantee that they would ever be reimbursed. *See id.* at ¶¶ 110-114. Unlike Defendants' counsel, who are paid substantial hourly rates and reimbursed for their expenses on a regular basis, Lead Counsel has not been compensated for any time or expenses since this case began and would have received no compensation or expenses had this case not been successful. *Id.* at ¶ 103. Indeed, the risk of no recovery in complex cases of this type is very real. *See supra* § II.B.2. That risk was exacerbated here by Defendants' dwindling insurance proceeds and the Company's

limited cash. *Id.; see also* Miller Decl. at ¶ 5.

In light of the risks Lead Counsel assumed by litigating on a contingent basis, this factor weighs in favor of the requested 25% fee award. *See Mandalevy*, 2022 U.S. Dist. LEXIS 174345, at *40 ("Lead Counsel's fees were entirely contingent on a successful outcome, and Lead Counsel risked non-payment of 2,323 billable hours and $138,631.36 of expenses for five years . . . thus this factor supports the requested [25%] fee."); *Zynga*, 2016 U.S. Dist. LEXIS 17196, at *61 ("[T]hat Lead Counsel here have significant experience in this field and took on this matter on a contingent basis further indicates that the 25 percent benchmark fee request is reasonable"); *China Integrated,* 2016 U.S. Dist. LEXIS 204416, at *34-35 ("[S]ignificant financial burden and the amount of time devoted by Lead Counsel to this case support the requested attorneys' fees award [of 25%]"); *Scott v. ZST Dig. Networks, Inc.*, No. CV 11-3531, 2013 U.S. Dist. LEXIS 197940, at *25-26 (C.D. Cal. Aug. 5, 2013) ("Because counsel worked entirely on a contingent-fee basis and the Court agrees that there were significant risks of litigation, these factors weigh in favor of awarding the benchmark level of attorney's fees.").

### 5. A 25% Fee is Justified in Light of Fee Awards Made in Similar Cases

This Court and others in the Ninth Circuit have routinely awarded attorneys' fees of 25% of the common fund in complex securities fraud cases similar to this one. *See In re Portland GE Sec. Litig.*, No. 3:20-cv-1583, 2022 U.S. Dist. LEXIS 51404, at *27-28 (D. Or. Mar. 22, 2022) (25% of $6.75 million settlement); *Kaye*, 2019 U.S. Dist. LEXIS 201657, at *20 (25% of $1.15 million settlement); *In re Amgen Sec. Litig.*, No. CV 7-2536, 2016 U.S. Dist. LEXIS 148577, at *25 (C.D. Cal. Oct. 25, 2016) (25% of $95 million settlement "reasonable under the percentage of the common fund method because it both matches the 'benchmark' and meets the *Vizcaino* reasonableness factors"); *Kmiec v. Powerwave Techs., Inc.*, No. 12-cv-222, ECF No. 215 (C.D. Cal. July 11, 2016) (Carney, J.) (awarding 25% of $8.2

million settlement); *In re Cytrx Corp. Secs. Litig.*, No. 2:14-cv-1956, 2016 U.S. Dist. LEXIS 70190, at *11 (C.D. Cal. May 18, 2016) (25% in cash and stock of $8.5 million settlement); *Ramsey v. MRV Communs. Inc.*, No. CV 08-04561, 2010 U.S. Dist. LEXIS 161816, at *24-26 (C.D. Cal. Nov. 16, 2010) (25% of $10 million settlement awarded).

In fact, numerous courts in this Circuit – including this one – regularly award greater than the 25% benchmark in securities class actions where, like here, the excellent results achieved, skill and quality of work by lead counsel, complexity of securities litigation, and risks of continued litigation justified the award.[9] For example, in *Odonate Therapeutics*, the court recently awarded fees of 33% of a $12.75 million settlement because the settlement fund represented approximately 3.49% of maximum estimated damages, which the court noted was above the median recovery (of 1.8) in securities class actions for 2021, there was a "substantial risk in continued litigation" because of the complexity of securities class action cases, and lead counsel had been working on a contingency basis. 2022 U.S. Dist. LEXIS 101021, at *22-23.  Similarly, in *Brown v. Papa Murphy's Holdings, Inc.*, the court

---

[9] *See also In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000) (33.33% of $1.725 million settlement); *Khoja v. Orexigen*, No. 15-cv-540, 2021 U.S. Dist. LEXIS 230105, at *29 (S.D. Cal. Nov. 30, 2021) (33% of $4.8 million settlement); *In re Banc of California Secs. Litig.*, No. SA CV 17-118, 2020 U.S. Dist. LEXIS 48778, at *4-5 (C.D. Cal. Mar. 16, 2020) (33% of $19.75 million settlement); *Mauss v. NuVasive, Inc.*, No. 13-cv-2005, 2018 U.S. Dist. LEXIS 206387, at *36 (S.D. Cal. Dec. 6, 2018) (30% of $7.9 million settlement); *Patel v. Axesstel, Inc.*, No. 14-cv-1037, 2015 U.S. Dist. LEXIS 146949, at *21 (S.D. Cal. Oct. 23, 2015) (30% of $1.25 million settlement); *Buttonwood*, No. 10-cv-537, ECF No. 216 (July 21, 2014) (33% of $5.5 million settlement); *Nguyen v. Radient Pharms. Corp.,* No. 11-cv-00406, 2014 U.S. Dist. LEXIS 63312, at *29-30 (C.D. Cal. May 6, 2014) (28% of $2.5 million settlement); *In re Nuvelo, Inc. Sec. Litig.*, No. 07-cv-04056, 2011 U.S. Dist. LEXIS 72260, at *9 (N.D. Cal. July 6, 2011) (30% of $8.9 million settlement); *Omnivision,* 559 F. Supp. 2d at 1049 (28% of $13.75 million settlement).

14

MEMORANDUM IN SUPPORT OF
MOTION FOR ATTORNEYS' FEES
Case No. 2:21-CV-02072-CJC-PVC

awarded 31.50% of $2.4 million settlement in attorneys' fees because of the "very favorable result for the Settlement Class" (above the 2021 median recovery), risk of continued litigation, and skill and quality of counsel's work, which was done on a purely contingency basis. No. 19-cv-5514, 2022 U.S. Dist. LEXIS 79209, at *8-9 (W.D. Wash. May 2, 2022).

Notably, these cases were pending for roughly the same amount of time as the instant case and had reached a similar stage of litigation at the time of settlement. *See Odonate Therapeutics*, 2022 U.S. Dist. LEXIS 101021, at *23-24 (motion to dismiss denied; no discovery conducted; case pending 2.5 years); *Papa Murphy's,* 2022 U.S. Dist. LEXIS 79209, at *8-9 (motion to dismiss denied and interlocutory appeal pending; no discovery conducted; case pending less than 3 years); *see also Patel*, 2015 U.S. Dist. LEXIS 146949, at *21 (30% in fees awarded; no discovery conducted other than exchange of initial disclosures; case pending 1.5 years); *Omnivision*, 559 F.Supp. 2d at 1048 (28% in fees awarded; no formal discovery; class not certified; case pending 3.5 years).

Nevertheless, Lead Counsel seeks no more than the 25% benchmark here. This modest request is reasonable in light of the tremendous result achieved by Lead Counsel: in the face of considerable risks, including that the Settlement Class might recover nothing at all, Lead Counsel successfully negotiated a $35 million Settlement, consisting of all remaining insurance proceeds in cash and a sizeable amount of Workhorse common stock.

C. **A Lodestar Cross-Check Confirms the Requested Fee Award Is Reasonable**

Lead Counsel has expended over 3,900 hours in the investigation, prosecution, and resolution of the claims against Defendants, for a total lodestar of $2,789,140, resulting in a lodestar multiplier of approximately 3.14. *See* Miller Decl. at ¶ 91. The Settlement was only achieved after Lead Plaintiff, by and through Lead Counsel: conducted an extensive investigation involving interviews of former

employees, substantial legal and factual research, and consultation with an economic expert; drafted and filed the 363-paragraph Amended Complaint; successfully defeated Defendants' motion to dismiss; propounded extensive written discovery requests, including subpoenas on 18 third-parties; engaged in numerous meet-and-confers and written exchanges with Defendants regarding their objections, the scope of document discovery, search terms, custodians, and an electronically-stored information protocol; reviewed and analyzed more than 110,000 pages of documents produced by Defendants and third-parties; served a 30(b)(6) deposition notice on Workhorse; prepared for multiple depositions of fact witnesses; engaged in a full-day in-person mediation; conducted ongoing settlement negotiations thereafter as discovery continued on a parallel track; worked with damages consultants to prepare the Plan of Allocation; and, once a settlement agreement was reached, briefed and filed an unopposed motion for preliminary approval of class action settlement. *See* Miller Decl. at ¶¶ 90, 21-36.[10]

"Multipliers of 1 to 4 are commonly found to be appropriate in complex class action cases." *Zynga*, 2016 U.S. Dist. LEXIS 17196, at *69-70 (citations omitted); *see also Vizcaino*, 290 F.3d at 1051 (affirming 3.65 multiplier based on complexity of case and risks involved, among others); *Spann v. J.C. Penney Corp.*, 211 F. Supp. 3d 1244, 1265 (C.D. Cal. 2016) ("Counsel's lodestar yields a 3.07 multiplier, which is well within the range for reasonable multipliers"); *Hopkins v. Stryker Sales Corp.*, No. 11-CV-02786, 2013 U.S. Dist. LEXIS 16939, at *12 (N.D. Cal. 2013) ("Multipliers of 1 to 4 are commonly found to be appropriate in complex class action cases."). Indeed, in *Powerwave*, this Court's award of 25% of the $8.2 million settlement represented a multiplier of 3.3. 12-cv-222, ECF No. 215 (July 11, 2016). And in *Experian*, this Court found a multiplier of 3.8 to be "reasonable," awarding

---

[10] The lodestar excludes anyone who billed under 20 hours on the case, as well as any time spent on this Application for an Award of Attorneys' Fees, Reimbursement of Litigation Expenses, and Service Awards to Settlement Class Representatives. *See* Miller Decl. at ¶ 97.

MEMORANDUM IN SUPPORT OF
MOTION FOR ATTORNEYS' FEES
Case No. 2:21-CV-02072-CJC-PVC

25% in attorneys' fees on a $5 million settlement fund. *Smith v. Experian*, No. 17-cv-629, ECF No. 53 (C.D. Cal. Nov. 9, 2020) (Carney, J.). *See also Portland GE*, 2022 U.S. Dist. LEXIS 51404, at *28-29 (multiplier of 2.7; 25% fee).

Thus, the requested lodestar multiplier of 3.14 falls squarely within the range of multipliers approved by courts in similar cases. While Lead Counsel could have done additional work to lower the lodestar multiplier, it wanted to settle the case early to maximize value for the Settlement Class and should not be "penalized . . . for settling the case without protracted litigation." *Rankin v. Am. Greetings, Inc.*, No. 2:10-CV-01831, 2011 U.S. Dist. LEXIS 72250, at * 4 (E.D. Cal. July 5, 2011). Further, Lead Counsel will exclude from the lodestar any time spent preparing for the final approval hearing, as well as time spent after final approval relating to administration of the Settlement. *See* Miller Decl. at ¶ 98. The additional tasks after final approval, which are significant, will lower the multiplier even further. *See Clem v. KeyBank, N.A.*, No. 13-cv-789, 2014 U.S. Dist. LEXIS 87174, at *27 (S.D.N.Y. June 20, 2014) (Where "class counsel will be required to spend significant additional time on this litigation in connection with implementing and monitoring the settlement, the multiplier will actually be significantly lower because the award includes not only time spent prior to the award, but after in enforcing the settlement.").

The billing rates used to develop Lead Counsel's lodestar are also reasonable. "In determining a reasonable hourly rate, the district court should be guided by the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Zynga*, 2016 U.S. Dist. LEXIS 17196, at *63 (citing *Chalmers v. Los Angeles*, 796 F.2d 1205, 1210-11 (9th Cir. 1986)).

The hourly billing rates for KSF attorneys working on this case ranged from $350 (associates) to $1,200 (senior partners). *See* Miller Decl. at ¶ 96. These rates are comparable to peer plaintiffs and defense firms litigating matters of similar magnitude and complexity and similar rates have been approved by this Court and

others.  *See, e.g.*, *Mandalevy*, 2022 U.S. Dist. LEXIS 174345, at *41 (approving attorney rates of $335 to $1,025); *Quality Sys.,* No. 13-cv-1818, ECF Nos. 109 at Ex. A, 117, 120 (approving attorney rates of $375 to $1,030); *see also Gilliam v. Levine*, No. CV 18-2580, 2022 U.S. Dist. LEXIS 25209, at *12 (C.D. Cal. Jan. 25, 2022) ("In Los Angeles, the median hourly rate for finance and securities attorneys is $1,045 for partners and $714 for associates.") (citing *2020 Real Rate Report: The Industry's Leading Analysis of Law Firm Rates, Trends, and Practices* ("Real Rate Report"), at 164).[11] These rates are also aligned with past rates charged by Defense Counsel Sheppard Mullin in past cases.[12]

In light of the time and effort devoted to this case by Lead Counsel to achieve the $35 million recovery for the Settlement Class, the lodestar cross-check confirms that the requested fee award of 25% is reasonable and should be granted.

### D. Lead Counsel Should Be Awarded Its Reasonable Expenses

"[T]he law allows attorneys to 'recover their reasonable expenses that would typically be billed to paying clients in non-contingency matters.'" *Gen. Mills*, 2013 U.S. Dist. LEXIS 90338, at *21 (citing *Omnivision*, 559 F. Supp. 2d at 1048). Lead Counsel respectfully requests that the Court grant reimbursement of $112,027.51,

---

[11] "The relevant community for the purposes of determining the prevailing market rate is generally the 'forum in which the district court sits.'" *Zynga*, 2016 U.S. Dist. LEXIS 17196, at *63 (citing *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008)). The court may consider "examples of rates awarded to counsel in previous cases" to determine what prevailing market rate. *Id.* (citation omitted). The Real Rate Report "identifies attorney rates by location, experience, firm size, areas of expertise and industry, as well as specific practice areas, and is based on actual legal billing, matter information, and paid and processed invoices from more than 80 companies," and courts have found that it "is a useful guidepost to assess the reasonableness of hourly rates in the Central District of California." *Gilliam*, 2022 U.S. Dist. LEXIS 25209, at *11 (citing *Hicks v. Toys 'R' Us-Del., Inc.*, No. CV 13-1302, 2014 U.S. Dist. LEXIS 135596, at *5 (C.D. Cal. Sept. 2, 2014)).

[12] *See In re: Alpha Media Holdings LLC, et al.*, No. 21-bk-30209, ECF No. 456 (Bankr. E.D. Va. Jun. 2, 2021) (charging hourly rates of $915-$1,150 for partners and $730-$885 for associates in 2021).

plus interest, in reasonable expenses that Lead Counsel incurred in the investigation, prosecution, and resolution of the Action. *See* Miller Decl. at ¶¶ 110-117.

"[B]ecause of the contingent nature of this action, Counsel had no incentive to accrue unnecessary or unreasonable expenses." *Mandalevy*, 2022 U.S. Dist. LEXIS 174345, at *42. Indeed, Lead Counsel went to great lengths to keep expenses down. *See* Miller Decl. at ¶ 112. Approximately 15.5% of the requested expenses ($17,390.00), are for the fees of Plaintiffs' damages and loss causation expert, whose assistance was crucial to both the litigation and settlement of this case. *See Am. Apparel*, 2014 U.S. Dist. LEXIS 184548, at *94 ("To plead causation and damages adequately, and to arrive at an informed assessment concerning the reasonableness of the settlement and create a plan of allocation, class counsel needed to retain damages and loss causation experts."); Miller Decl. at ¶¶ 113-114. Fees for investigators and consultants amount to $10,594.15, or approximately 9.5%, of the expenses. *Id*. These professionals were critical in assisting with the investigation of Plaintiffs' claims, including interviewing the confidential witnesses cited in the Amended Complaint. *Id.* at ¶ 114; *see Am. Apparel*, 2014 U.S. Dist. LEXIS 184548, at *94 ("Class counsel's investigation and interviews with former American Apparel employees were, as noted, reasonable because they assisted in alleging facts that plausibly showed defendants acted with the requisite scienter."). The remainder of the expenses are for mediator fees ($9,788.58), discovery document hosting ($38,500) and other litigation expenses such as photocopying, legal research, and court costs (Miller Decl. at ¶ 113), which are the type of expenses normally charged to clients in non-contingency cases. *See, e.g., Redwen v. Sino Clean Energy, Inc.*, No. CV 11-3936, 2013 U.S. Dist. LEXIS 100275, at *32 (C.D. Cal. July 9, 2013); *Rutti v. Lojack Corp., Inc.*, No. SACV 06-350, 2012 U.S. Dist. LEXIS 107677, at *28-29 (C.D. Cal. July 31, 2012).

Further, the requested expenses amount to only 0.3% of the Settlement Amount, which is eminently reasonable in light of the complexity of the case, efforts

19

undertaken by Lead Counsel, and results achieved for the Settlement Class. *See*, *e.g.*, *Mandalevy*, 2022 U.S. Dist. LEXIS 174345, at *42 (awarding expenses of $138,631, approximately 15.4% of $900,000 settlement); *Gen. Mills*, 2013 U.S. Dist. LEXIS 90338, at *22 (awarding expenses of $896,387.09, approximately 10.5% of $8.5 million settlement); *Powerwave*, No. 12-cv-222, ECF No. 215 (awarding expenses of $1.096 million, approximately 13% of $8.2 million settlement).[13]

Finally, the requested expenses are below the noticed cap of $130,000 (ECF No. 105-2), which further supports Lead Counsel's request. *See Ramsey*, 2010 U.S. Dist. LEXIS 161816, at *27 (approving expense application where "expenses are [ ] less than the . . . potential expenses referenced in the settlement notice").

### E. The Settlement Class Representatives Should be Awarded Service Awards

"[I]t is well-established that the court may grant a modest incentive award to a class representative, both as an inducement to participate in the suit and as compensation for time spent in litigation activities…." *Am. Apparel*, 2014 U.S. Dist. LEXIS 184548, at *96-97. In the Ninth Circuit, a $5,000 incentive award is 'presumptively reasonable.'" *Becerra-South,* 2021 U.S. Dist. LEXIS 14633, at *15 (awarding $5,000 to plaintiff in light of time and effort spent) (citing *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 266 (N.D. Cal. Mar 19, 2015)).

"When evaluating the reasonableness of an incentive award, courts consider "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions," and the time the plaintiff spent pursuing the litigation." *Id.* (citing *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003)). This Court has already found that the requested incentive awards are "presumptively reasonable." ECF No. 106 at 21. Indeed, as the Court recognized, the Settlement Class Representatives were actively involved in this case: they

---

[13] From 2013-2022, in settlements from $25 million up to $100 million, median expenses were 1.9% of the settlement value. *See* NERA, *Recent Trends*, at 21.

MEMORANDUM IN SUPPORT OF
MOTION FOR ATTORNEYS' FEES
Case No. 2:21-CV-02072-CJC-PVC

"assisted with the investigation of the claims, reviewed the AC, provided extensive documents supporting the claims to Lead Counsel, monitored the litigation, provided input during settlement negotiations, and approved the Settlement." *Id.* (citing Motion for Prelim. Approval at 15); *see also* Miller Decl. at ¶ 120. Further, Lead Plaintiff monitored Lead Counsel and regularly communicated with Lead Counsel regarding the litigation, risks, and strategy. *Id.* For these efforts, each of the Settlement Class Representatives should receive a service award of $5,000.

## III.    CONCLUSION

For the foregoing reasons, Lead Counsel respectfully requests that the Court: (i) award it attorneys' fees in the amount of 25% of the Settlement Amount, being $3.75 million in Settlement Cash and 25% of the Settlement Stock (valued at approximately $5 million as of the Transfer Date), plus interest; (2) award it expenses in the amount of $112,027.51, plus interest; and (3) award each of the Settlement Class Representatives, Lead Plaintiff Timothy M. Weis and Additional Plaintiff Angelo Federico, service awards of $5,000 ($10,000 total).

Dated: March 16, 2023

**KAHN SWICK & FOTI, LLC**

By: /s/ *Kim E. Miller*
Kim E. Miller (SBN 178370)
kim.miller@ksfcounsel.com
250 Park Avenue, 7th Floor-
New York, NY 10177
Telephone: (212) 696-3730
Facsimile: (504) 455-1498

*Counsel for Lead Plaintiff Timothy M. Weis,*
*Additional Plaintiff Angelo Federico, and*
*the Settlement Class*

MEMORANDUM IN SUPPORT OF
MOTION FOR ATTORNEYS' FEES
Case No. 2:21-CV-02072-CJC-PVC

## LOCAL RULE 11-6.1 CERTIFICATION

The undersigned, counsel of record for Lead Plaintiff Timothy M. Weis, Additional Plaintiff Angelo Federico, and the Settlement Class, certifies that this brief contains 6,963 words, which complies with the word limit of L.R. 11-6.1.

Date: March 16, 2023          _s/ Kim E. Miller_
                              Kim E. Miller


## CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on March 16, 2023, I authorized the electronic filing of the foregoing Notice of Motion and Motion for Award of Attorneys' Fees and Expenses and Service Awards to Settlement Class Representatives with the Clerk of the Court using the CM/ECF system which will send a Notice of Electronic Filing to the e-mail addresses on the attached Electronic Mail Notice List.

                              _s/ Kim E. Miller_
                              Kim E. Miller


22