# EXHIBIT C

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

OPTRONIC TECHNOLOGIES, INC,

Plaintiff,

v.

NINGBO SUNNY ELECTRONIC CO., LTD., et al.,

Defendants.

Case No. 5:16-cv-06370-EJD

**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO ALTER JUDGMENT; DENYING RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW; DENYING MOTION FOR NEW TRIAL; GRANTING MOTION FOR ATTORNEYS' FEES AND COSTS**

Re: Dkt. Nos. 534, 556, 557, 558

After nearly three years of litigation, this antitrust case went to trial last fall. On November 26, 2019, the jury returned a verdict for Plaintiff Optronic Technologies, Inc. ("Orion") and against Defendants Ningbo Sunny Electronic Co., LTD ("Ningbo Sunny"), Sunny Optics, Inc. ("Sunny Optics"), and Meade Instruments, Corp. ("Meade") on all claims. Dkt. No. 501. Presently before the Court are Ningbo Sunny's Motion to Alter or Amend Judgment to Set Off Value of Prior Settlement Agreement (Dkt. No. 534), Ningbo Sunny's Renewed Motion for Judgment as a Matter of Law (Dkt. No. 556), Ningbo Sunny's Motion for a New Trial (Dkt. No. 557), and Orion's Motion for Attorneys' Fees and Costs (Dkt. No. 558). The Court has considered the parties' papers and held a hearing. The Court's rulings on these motions are stated below.

## I. The Verdict, the Partial Judgment, and Relevant Post-Trial Procedure

The basic facts and procedural history underlying this case are well known to the Court

United States District Court
Northern District of California

and the parties, so the Court does not recount them here. The jury found that Defendants had conspired to fix prices or credit terms in violation of the Sherman Act Section 1 (Claim 1), had conspired to allocate the market for telescopes in violation of the Sherman Act Section 1 (Claim 2), had attempted to monopolize the market in violation of the Sherman Act Section 2 (Claim 3), had conspired to monopolize the market in violation of the Sherman Act Section 2 (Claim 4), and that the acquisition of Meade by Ningbo Sunny and Sunny Optics harmed competition in violation of the Clayton Act Section 7 (Claim 5). Dkt. No. 501. The jury found that Orion suffered $14 million in damages for each of the Sherman Act claims and $16.8 million for the Clayton Act Claim. *Id.* The jury awarded $16.8 million in total damages. *Id.*

After the verdict, Sunny Optics and Meade entered bankruptcy and the litigation was stayed for them. Dkt. Nos. 511, 512. On December 5, 2019, the Court entered partial judgment against Ningbo Sunny in the amount of $50,400,000 in accordance with the verdict's award of $16,800,000 in damages as trebled pursuant to 15 U.S.C. § 15(a). Dkt. No. 518 (the "Partial Judgment"). The parties stipulated to a briefing schedule for both the instant motions and a separate briefing schedule for Orion's Motion for Permanent Injunction (Dkt. No. 583). Dkt. Nos. 522, 525. The Permanent Injunction Motion includes Orion's state law claims, and the Court will address that motion in a separate order.

## II. Ningbo Sunny's Motion for New Trial (Dkt. No. 557)

The Court first considers Ningbo Sunny's Motion for a New Trial pursuant to Federal Rule of Civil Procedure 59(a). Ningbo Sunny raises six arguments: (1) that Orion's references to non-party Sunny Optical Group as "Big Sunny" and as a "multibillion dollar" company owned by "one of the wealthiest" men in the world were not relevant and were unfairly prejudicial, (2) that Orion argued that it would "die" without a multimillion dollar verdict, (3) that Orion did not present any evidence of damages arising from Claim 5 brought under Section 7 of the Clayton Act, (4) that the testimony of Orion's technical expert Dr. José Sasian should have been excluded, (5) that the Court's instruction to the jury concerning the testimony of Ningbo Sunny's rebuttal expert, Dr.

Case No.: 5:16-cv-06370-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO ALTER JUDGMENT; DENYING RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW; DENYING MOTION FOR NEW TRIAL; GRANTING MOTION FOR ATTORNEYS' FEES AND COSTS

2

United States District Court
Northern District of California

Celeste Saravia, was improper and prejudicial, and (6) that the arguments set out in its Renewed Motion for Judgment as a Matter of Law warrant a new trial.  The Court finds that none of these arguments are persuasive and denies the motion.

a.  Legal Standard

Federal Rule of Civil Procedure 59(a) provides that a district court may order a new trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court."  Federal Rule of Civil Procedure 61 states that "unless justice requires otherwise," no error "is ground for granting a new trial, for setting aside a verdict, or for vacating, modifying, or otherwise disturbing a judgment or order."  A "trial court may grant a new trial only if the verdict is contrary to the clear weight of the evidence, is based upon false or perjurious evidence, or to prevent a miscarriage of justice." *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007); *see also Settlegoode v. Portland Pub. Sch.*, 371 F.3d 503, 516-17 (9th Cir. 2004) ("A new trial should only be granted where the flavor of misconduct sufficiently permeates an entire proceeding to provide conviction that the jury was influenced by passion and prejudice in reaching its verdict.").

Where the movant failed to raise contemporaneous objections to the alleged errors or misconduct, the threshold for granting a new trial is even higher.  *Settlegoode*, 371 F.3d at 517. In such circumstances, the movant must show "plain or fundamental error." *Id.*  That showing requires the movant demonstrate (1) that there was "an error; (2) that the error [was] plain or obvious; (3) that the error [was] prejudicial or affect[ed] substantial rights; and (4) that review [is] necessary to prevent a miscarriage of justice." *Id.*  "Plain error is a rare species in civil litigation, encompassing only those errors that reach the pinnacle of fault." *Apple, Inc. v. Samsung Elecs. Co.*, 2014 WL 549324, at *10 (N.D. Cal. Feb. 7, 2014).

b.  Orion's References to "Big Sunny"

Sunny Optical Group is a Chinese company that is an investor in and related party to Ningbo Sunny; its chairman and owner is the uncle of Defendants' principal, Peter Ni.  Trial Tr. at

Case No.: 5:16-cv-06370-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO ALTER JUDGMENT; DENYING RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW; DENYING MOTION FOR NEW TRIAL; GRANTING MOTION FOR ATTORNEYS' FEES AND COSTS

3

522:25-523:8, 526:10-16, 533:21-25; TX 1926 at 63. During its case-in-chief and its closing argument, Orion referred to Sunny Optical Group as "Big Sunny," called it a "multibillion dollar" company, and stated it is owned "one of the wealthiest" people in the world. Trial Tr. at 2546:12-2547:14, 2548:20-2549:5, 2553:4-2556:18, 2605:22-25, 2606:6-7, 2606:16-19. Neither Sunny Optical Group nor Mr. Ni's uncle are parties to this litigation. Ningbo Sunny contends that these statements were not relevant to the case and that they were an attempt to lead the jury to believe that Ningbo Sunny had the capacity to pay millions of dollars in damages. Such arguments about Defendants' size and wealth were improper and prejudiced the jury, Ningbo Sunny argues, requiring a new trial.

The Court is not persuaded. Defendants themselves put their size and finances at issue in their opening statement and during the presentation of evidence in an effort to argue against Orion's claimed damages. *See, e.g.*, *id*. at 267-69 (Defendants' counsel arguing, "We are entitled to provide some context to what Orion's damages claims by benchmarking it against here is the revenue for these companies"), 395:22-396:9 (Defendants' counsel arguing, "If you look at what Meade's average profit was, you look at the past five years, it's losing about $2.2 million . . . Ningbo Sunny's average yearly net profit is only about 3 and a half million dollars."), 631:4 (Mr. Ni testifying that Ningbo Sunny's "profit was very low"), 750:14-15 (Mr. Ni Testifying that "our profit margin is . . . low"). "It is widely recognized that a party who raises a subject in an opening statement 'opens the door' to admission of evidence on that same subject by the opposing party." *Bowoto v. Chevron Corp.*, 621 F.3d 1116, 1130 (9th Cir. 2010). Defendants chose to put their finances before the jury. Orion was therefore entitled to present evidence about Defendants financial condition, including evidence as to a significant investor and related company. To the extent that Orion made the one reference, identified by Ningbo Sunny, to Mr. Ni's uncle's wealth, the Court finds that it was not sufficiently prejudicial to warrant a new trial.

c. Orion's Statement That It Would "Die" Without a Favorable Verdict

Ningbo Sunny contends that a new trial is necessary because Orion improperly argued

Case No.: 5:16-cv-06370-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO ALTER JUDGMENT; DENYING RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW; DENYING MOTION FOR NEW TRIAL; GRANTING MOTION FOR ATTORNEYS' FEES AND COSTS

4

United States District Court
Northern District of California

during closing that it would "die" or otherwise cease to exist without the relief it sought. *See, e.g.*, Trial Tr. at 2576:24-2577:1, 2616:20-22. Ningbo Sunny argues that Orion's financial condition was not relevant and served only to unfairly garner sympathy from the jury. The Court disagrees. During trial, Orion presented evidence, without objection from Defendants, that if Defendants continued their anticompetitive conduct, Orion would go out of business. *See id.* at 2499:24-2500:2. "The right to argue a case to the jury [during closing argument] is very broad. Counsel may state his or her views as to what the evidence shows and the conclusions to be drawn therefrom." *Hammonds v. Yeager*, 2017 WL 10560471, at *1 (C.D. Cal. Aug. 9, 2017). "During closing argument in a civil case, counsel is permitted to make inferences and advance plausible arguments in light of the record." *Draper v. Rosario*, 836 F.3d 1072, 1083-84 (9th Cir. 2016). Indeed, "[u]sing some degree of emotionally charged language during closing argument in a civil case is a well-accepted tactic in American courtrooms." *Settlegoode*, 371 F.3d at 518. Evidence was in the record as to what Orion believed would be the effect of Defendants' anticompetitive conduct. Orion was therefore permitted to argue in closing about the effect of that conduct. Orion's statements in closing did not "permeate[]" the trial such that it created the "conviction that the jury was influenced by passion and prejudice." *Id.* at 516-17.

Ningbo Sunny supports its position with citations to several out of circuit cases, but the Court finds that they are all inapposite. Each of those cases concerned circumstances where the plaintiff had argued that "because the defendants were rich and because the plaintiff was poor, the jury should base its verdict in favor of plaintiff on this financial disparity." *Draper v. Airco, Inc.*, 580 F.2d 91, 95 (3rd Cir. 1978); *see also* City of Cleveland v. Peter Kiewit Sons' Co., 624 F.2d 749, 757 (6th Cir. 1980) (same); *Koufakis v. Carvel*, 425 F.2d 892, 902 (2d Cir. 1970) (same). Here, Orion argued that its dire circumstances were caused by the alleged misconduct underlying the entire litigation, not that the jury should side with the underdog. Ningbo Sunny's cases are off point.

Case No.: 5:16-cv-06370-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO ALTER JUDGMENT; DENYING RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW; DENYING MOTION FOR NEW TRIAL; GRANTING MOTION FOR ATTORNEYS' FEES AND COSTS

5

d. <u>Damages Arising From Claim 5—the Clayton Act Claim</u>

Ningbo Sunny next argues that the Court should order a new trial because the jury's verdict awarding Orion $16.8 million for Claim 5—the Clayton Act claim—is against the weight of evidence because Orion failed to introduce any evidence of injury arising from that claim. This argument fails because it relies on far too narrow a reading of the report and testimony of Orion's retained damages expert, Dr. J. Douglas Zona. Ningbo Sunny argues that Dr. Zona's report does not disclose a theory of damages flowing from Claim 5 based on this sentence: "As a result of Defendants' collusion to fix prices and divide the market for telescope manufacturing, Orion's [*sic*] has suffered damages in the form of lost profits from price overcharges on telescopes purchased from Defendants and their co-conspirators in a range from about $11.4 million to $30.6 million." Zona Rep. ¶ 8(c).

This argument does not succeed because it relies entirely on that one summary sentence while ignoring the rest of the report. Dr. Zona opined that in the years following the Meade acquisition the Herfindahl–Hirschman Index ("HHI") spiked, indicating that the telescope manufacturing market became highly concentrated such that Defendants had market power or, in other words, "power sufficient to impact competitive outcomes in a meaningful way." Zona Rep. ¶¶ 45, 48, 56-57; TX 1938. Dr. Zona's overcharge analysis turned on the lack of competition in that market. *See, e.g.*, Zona Rep. ¶¶ 76, 108. In his deposition, Dr. Zona testified to the anticompetitive impact of the Meade acquisition. Dkt. No. 568-7 at 223:21-224:10. At trial he testified that the Meade acquisition harmed competition and injured Orion. Trial Tr. at 1998:24-1999:8, 2099:5-2100:7, 2057:13-23. Dr. Zona's trial testimony, which is consistent with his report and his deposition, was sufficient evidence for the jury to conclude that the Meade acquisition contributed to and was a part of Defendants' anticompetitive conduct that harmed Orion.

e. <u>Dr. Sasian's Testimony</u>

Ningbo Sunny's next argument is that Dr. Sasian's testimony should have been excluded

Case No.: 5:16-cv-06370-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO ALTER JUDGMENT;
DENYING RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW; DENYING
MOTION FOR NEW TRIAL; GRANTING MOTION FOR ATTORNEYS' FEES AND COSTS

6

<div style="margin-left: 0; writing-mode: vertical-rl;">United States District Court
Northern District of California</div>

and that its admission was prejudicial error. He testified that Ningbo Sunny and Suzhou Synta, one of the settling co-conspirators, were capable of manufacturing the same telescopes. *See, e.g.*, *id*. at 1856:24-1857:2. Ningbo Sunny argues that his opinion was purely theoretical and did not assist the jury in determining a fact at issue, and that he admitted that his opinion was not based on any technical or specialized knowledge. These arguments are not convincing because they do not account for the sum of his testimony. Dr. Sasian testified as to the technology and technical capabilities necessary to manufacture different types of telescopes—*e.g.*, (a) whether a manufacturer that can build a telescope with one size mirror can build a similar telescope with a mirror of a different size or (b) the role of certain machines or components in the manufacture of telescopes. *See, e.g.*, *id*. at 1861:22-15, 1872:5-1873:13. He then concluded that Ningbo Sunny and Suzhou Synta were each technically capable of manufacturing the telescopes that were made by the other. *Id.* at 1862:16-1875:22. This testimony was relevant because it supports an inference that Ningbo Sunny and Suzhou Synta are horizontal competitors, despite Defendants' protestations that they do not compete. Further, his testimony and conclusions were based on his specialized knowledge and training, and were offered to assist the jury. A layperson would lack knowledge of the machines and technology used to manufacture telescopes. The quotes that Ningbo Sunny cherry picks to discredit Dr. Sasian do not fairly characterize the entirety of his testimony, his methodology, or his conclusions. It was not prejudicial error for the Court to admit Dr. Sasian's testimony.

        f.   The Court's Jury Instruction Regarding Dr. Saravia's Testimony

Defendants chose not to disclose an affirmative expert report on damages. Instead, they disclosed a report written by their retained expert Dr. Saravia to rebut Dr. Zona's affirmative report and testimony on Orion's damages. As a rebuttal witness, Dr. Saravia was not permitted to offer an affirmative opinion or her own damages calculations. *See* Fed. R. Civ. P. 26(a)(2)(D)(ii). In conference with the Court, Defendants represented that Dr. Saravia would only offer testimony as to her sensitivity testing of Dr. Zona's models, not her own damages calculations. *See, e.g.*,

Case No.: 5:16-cv-06370-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO ALTER JUDGMENT; DENYING RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW; DENYING MOTION FOR NEW TRIAL; GRANTING MOTION FOR ATTORNEYS' FEES AND COSTS
7

United States District Court
Northern District of California

Trial Tr. at 2012:12-16. However, at trial Dr. Saravia attempted to offer her own damages calculations. *See, e.g.*, *id*. at 2122:6-16, 2171:20-25. The Court held sidebars with counsel to discuss the issue; and finally spoke to the jury and counsel. The Court asked Defendants' counsel, "This witness is a witness who is not testifying about damages. Is that correct, counsel?" *Id*. at 2175:22-24. To which, Defendants' counsel responded, "It is." *Id.* at 2175:25. The Court then instructed the jury, "She is testifying, as the slide that she had before her is, limited to the area of sensitivities which is a distinct and different matter than damages. . . . You are not to consider this witness's testimony as to any amount of damages, nor her opinion as to damages." *Id.* at 2176:5-11. Defendants' counsel did not raise a contemporaneous objection.

Ningbo Sunny now argues that the court's instruction went too far in that the jury must have disregarded all of Dr. Saravia's testimony, and that this error was prejudicial to Ningbo Sunny. Because Defendants did not object to the instruction, the Court will apply the plain error standard. *See Settlegoode*, 371 F.3d at 517. The Court finds that there was no plain error. Dr. Saravia's testimony and sensitivity testing were subject to briefing and multiple conferences between the Court and the parties. *See, e.g.*, Dkt. Nos. 302, 314, 455; May 2, 2019 Hr'g Tr. at 8-10; Trial Tr. 2011:3-2012:2, 2126:4-16, 2172:3-2175:15. Defendants represented that Dr. Saravia would appropriately limit her testimony to rebutting Dr. Zona's conclusion without presenting her own damages calculations. *See, e.g.*, Dkt. Nos. 302 at 2-3; May 2, 2019 Hr'g Tr. at 9:22-10:4; Trial Tr. at 2126:4-14, 2172:5-15. However, Dr. Saravia attempted to testify as to affirmative damages calculations. Trial Tr. at 2122:6-16, 2171:20-25. That testimony provoked the Court's instruction. In front of the jury, Defendants' counsel agreed with the Court that her testimony was not about damages. Accordingly, it was not plain error for the Court to instruct the jury that Dr. Saravia's testimony was "limited to the area of sensitivities, which is a distinct and different matter than damages" and that the jurors should not consider her testimony as to "any amount of damages, nor her opinion as to damages." *Id*. at 2176:6-7.

United States District Court
Northern District of California

g. <u>Renewed Motion for Judgment as a Matter of Law</u>

Finally, Ningbo Sunny moves for a new trial for the reasons argued in its Renewed Motion for Judgment as a Matter of Law. As discussed below, the Court denies that motion, so the arguments expressed therein are not grounds for a new trial.

**III. Ningbo Sunny's Renewed Motion for Judgment as a Matter of Law (Dkt. No. 556)**

Defendants initially moved for judgment as a matter of law under Federal Rule of Civil Procedure 50(a) on November 18, 2019—after Orion had concluded its presentation of evidence to the jury. Dkt. No. 464. The Court denied that motion. Dkt. No. 500 (the "First JMOL Order"). After the Court entered the Partial Judgment, Ningbo Sunny filed this Renewed Motion for Judgment as a Matter of Law under Federal Rule of Civil Procedure 50(b) on Orion's claims under Sections 1 and 2 of the Sherman Act, Section 7 of the Clayton Act, California's Cartwright Act, and California's Unfair Competition Law. Dkt. No. 556. Orion opposed. Dkt. No. 569. Ningbo Sunny did not file a reply. The fundamental flaw in Ningbo Sunny's motion is that, while it argues that interpretations of the evidence that are contrary to the jury's verdict are possible, it fails to show that the jury's conclusions were not supported by substantial evidence. The motion must be denied.

a. <u>Legal Standard</u>

"A renewed motion for judgment as a matter of law 'is properly granted if the evidence, construed in the light most favorable to the nonmoving party, permits only one reasonable conclusion, and that conclusion is contrary to the jury's verdict.'" *Cieslikowski v. Chrysler*, 2019 WL 978095, at *3 (C.D. Cal. Feb. 4, 2019) (quoting *Escriba v. Foster Poultry Farms, Inc.*, 743 F.3d 1236, 1242 (9th Cir. 2014)). "A jury's verdict must be upheld if it is supported by substantial evidence that is adequate to support the jury's findings, even if contrary findings are also possible." *Dunlap v. Liberty Nat. Prod., Inc.*, 878 F.3d 794, 797 (9th Cir. 2017). Although the court must draw all reasonable inferences in the non-moving party's favor, "a reasonable inference 'cannot be supported by only threadbare conclusory statements instead of significant probative

Case No.: 5:16-cv-06370-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO ALTER JUDGMENT; DENYING RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW; DENYING MOTION FOR NEW TRIAL; GRANTING MOTION FOR ATTORNEYS' FEES AND COSTS

<div style="margin-left:auto">United States District Court<br>Northern District of California</div>

evidence.'" *Lakeside-Scott v. Multnomah Cty.*, 556 F.3d 797, 802 (9th Cir. 2009) (internal citation omitted). "It is error to deny a judgment as a matter of law when it is clear that the evidence and its inferences cannot reasonably support a judgment in favor of the opposing party." *Weaving v. City of Hillsboro*, 763 F.3d 1106, 1111 (9th Cir. 2014) (internal alteration and citation omitted).

"[A] party cannot raise arguments in its post-trial motion for judgment as a matter of law under Rule 50(b) that it did not raise in its pre-verdict Rule 50(a) motion." *OTR Wheel Eng'g, Inc. v. W. Worldwide Servs., Inc.*, 897 F.3d 1008, 1016 (9th Cir. 2018).

### b. Claims Under Section 2 of the Sherman Act

Ningbo Sunny first attacks the jury's findings on the claims for attempted monopolization and conspiracy to monopolize, both brought under Section 2 of the Sherman Act. The Court finds that Orion presented substantial evidence that supports the jury's verdict as to both claims.

### i. Shared Monopoly

First, Ningbo Sunny argues that Orion presented a theory of liability based on a joint or shared monopoly between Defendants and the Synta Entities, and that the Court adopted that theory of liability in the First JMOL Order. This would be legal error because "[t]he Ninth Circuit does not recognize a 'shared monopoly' or 'joint monopoly' theory." *Lenhoff Enterprises, Inc. v. United Talent Agency, Inc.*, 2015 WL 7008185, at *4 (C.D. Cal. Sept. 18, 2015). However, this argument is based on a misunderstanding of the First JMOL Order. The Court did not find that Defendants and the Synta Entities had attempted to acquire, or conspired to acquire a shared or joint monopoly. Rather, the Court found that the circumstances around the Meade acquisition were sufficient to support a jury verdict that Defendants and the Synta Entities had conspired for "one of the parties to the agreement [to] obtain or maintain monopoly power in the telescope and accessory manufacturing market." *See* Dkt. No. 499 at 56 (Jury Instruction No. 41§ ii); *see also* Dkt. No. 500  While the Court grants that the single sentence of the First JMOL Order quoted by Ningbo Sunny could have been more clear, there is insufficient evidence to support Ningbo Sunny's position. Moreover, the jury was instructed that the alleged monopoly had to be held by

Case No.: 5:16-cv-06370-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO ALTER JUDGMENT; DENYING RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW; DENYING MOTION FOR NEW TRIAL; GRANTING MOTION FOR ATTORNEYS' FEES AND COSTS

United States District Court
Northern District of California

"one of the parties to the agreement." *See, e.g.*, Dkt. No. 499 at 56. The jury was not instructed on a joint monopoly theory.

Ningbo Sunny's two subsidiary arguments—that Orion did not introduce sufficient evidence of specific intent to monopolize the market, and that Orion did not introduce sufficient evidence of a conspiracy to monopolize—also fail. Starting with specific intent, Ningbo Sunny argues that the Meade acquisition, in and of itself, is insufficient for the jury to have found specific intent. But Orion presented much more evidence of specific intent than just the fact of Ningbo Sunny's acquisition of Meade. Indeed, the conduct of Defendants and the Synta Entities in carrying out the Meade acquisition, combined with the acquisition itself, were sufficient to support the jury's finding. For example, a Ningbo Sunny email flatly stated that it sought to acquire Meade in order "[t]o prevent" another competitor from acquiring it. TX 1378. Additionally, Orion presented evidence that the Synta Entities attempted to hide facts about the Meade Acquisition from U.S. regulators; David Shen, the principal of the Synta Entities, provided funding to assist with the acquisition through his company Sky Rainbow but he represented to the FTC that he had no involvement in the acquisition. Trial Tr. at 581-583; TX 1779; TX 1377. Orion additionally notes that Defendants' also made misrepresentations about the acquisition to the FTC, and that Mr. Ni purchased Meade in his personal capacity and then transferred it to Ningbo Sunny for one dollar. See TX 1779; TX 1377; TX 2153; TX 1077; TX 1928; Trial Tr. at 581-58, 722-725. This evidence sufficiently supports a finding of specific intent. Moreover, specific intent to monopolize may be inferred from Defendants' conduct—discussed below— supporting Orion's claims under Section 1 of the Sherman Act. *See William Inglis & Sons Baking Co. v. ITT Cont'l Baking Co.*, 668 F.2d 1014, 1028 (9th Cir. 1981); Dkt. No. 499 at 53 (Jury Instruction No. 39). The evidence presented to the jury goes beyond showing a "mere intention to exclude competition and to expand one's own business." *Great Escape, Inc. v. Union City Body Co.*, 791 F.2d 532, 541 (7th Cir. 1986). Orion has presented substantial evidence to support the jury's conclusion that Defendants acted with specific intent.

Ningbo Sunny next argues that Defendants cannot be held liable for a conspiracy to achieve a joint monopoly and that there is insufficient evidence to show that Defendants and the Synta Entities conspired to vest one firm with monopoly power. As discussed above, the Court did not adopt a joint monopoly theory and the jury was not instructed on such a theory. Moreover, Orion presented sufficient evidence that Defendants and the Synta Entities conspired for Ningbo Sunny to obtain a monopoly in connection with the Meade acquisition. *See* TX 1393; TX 1301.002; TX 1301.002; TX 1317; TX 1323.14; TX 1305.015; Trial Tr. 956:23-958:2; Trial Tr. at 997:3.

ii. Dangerous Probability of Achieving Monopoly Power

Next, Ningbo Sunny argues that Orion failed to present sufficient evidence that there is a dangerous probability that Ningbo Sunny would obtain monopoly power. "Monopoly power is the power to control prices or exclude competition." *Axiom Advisers & Consultants, Inc. v. Sch. Innovation & Advocacy, Inc.*, 2006 WL 1049997, at *6 (E.D. Cal. Mar. 20, 2006); *see* Dkt. No. 499 (Jury Instruction No. 40). Market power may be demonstrated by direct or circumstantial evidence. *Rebel Oil Co. v. Atl. Richfield Co.*, 51 F.3d 1421, 1434 (9th Cir. 1995). Orion has presented substantial evidence that Ningbo Sunny can control prices. For example, witnesses testified that Ningbo Sunny refused to negotiate over prices and credit terms with Orion. Trial Tr. at 1310-1311, 1654:13-1655:25. Orion also presented evidence that Ningbo Sunny charged Orion 30 to 80 percent more than it charged its co-conspirator Celestron. TX 1771; TX 1935; Trial Tr. at 1725:20-1726:17. And documents produced by Ningbo Sunny discuss restricting Orion's supply: "Our pricing strategy of sales should not be altered, even when Orion lowers its prices, we would reduce sales volume rather than following suit blindly." TX 1194.

A plaintiff may also demonstrate market power by "(1) defin[ing] the relevant market, (2) show[ing] that the defendant owns a dominant share of that market, and (3) show[ing] that there are significant barriers to entry and show that existing competitors lack the capacity to increase their output in the short run." *Rebel Oil*, 51 F.3d at 1434. Orion has also presented sufficient

Case No.: 5:16-cv-06370-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO ALTER JUDGMENT; DENYING RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW; DENYING MOTION FOR NEW TRIAL; GRANTING MOTION FOR ATTORNEYS' FEES AND COSTS

12

United States District Court
Northern District of California

evidence to make this showing. First, Dr. Zona sufficiently testified as to the definition of the relevant market (further discussed in § III.b.iv). Trial Tr. at 1978-1983, 2079-2086, 2052-2053, 2100-2101. Second, he offered unrebutted testimony that Defendants' market share ranged from around 33 percent to over 63 percent during the relevant time period. TX 1938. Dr. Zona further testified that the market was concentrated beyond what DOJ Guidelines find acceptable. Trial Tr. at 1987:20-1989:4. Orion also offered evidence that following the Meade acquisition, Ningbo Sunny became the largest telescope manufacturer in the world. TX 1295; TX 1927. The third factor was satisfied by witness testimony that no new companies have entered the market in the past decade. Trial Tr. at 1649:6-1650:19. Orion presented sufficient evidence for the jury to find that Defendants had a dangerous probability of achieving monopoly power.

### iii. Damages Arising From the Section 2 Claims

Ningbo Sunny argues that Dr. Zona's trial testimony went beyond his pre-trial expert report because he testified that he based his opinion on his overcharge analysis on the Section 1 and the Section 2 claims (*see* Trial Tr. at 2057:17-23), while his report only applied the overcharge analysis to the Section 1 claims. So, Ningbo Sunny argues, his trial testimony must be excluded by Federal Rule of Civil Procedure 37(c)(1) as an alteration to the conclusions of his expert report. The Court does not consider this argument though because Ningbo Sunny did not argue for exclusion of his testimony in the First Motion For a Judgment as a Matter of Law. *See* Dkt. 464 at 4-5. Ningbo Sunny has therefore waived the argument. *OTR Wheel Eng'g.*, 897 F.3d at 1016.

### iv. The Relevant Market

Next, Ningbo Sunny contends that Orion failed to adequately define the relevant market. Dr. Zona testified as to what it means to define a market in an antitrust case. Trial Tr. at 1978:15-1979:12. He explained how he defined the market in this case. *Id*. at 2081:8-2086:3, 2102:3-2103:6. He testified that he examined the entities in the market, their roles in the market and why some entities that do not manufacture telescopes fall outside the market (*id.* at 1979:21-1981:1, 20:52:22-2053:7); that he examined the products produced and sold in the market (*id.* at

Case No.: 5:16-cv-06370-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO ALTER JUDGMENT; DENYING RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW; DENYING MOTION FOR NEW TRIAL; GRANTING MOTION FOR ATTORNEYS' FEES AND COSTS
13

United States District Court
Northern District of California

1981:1982:9, 2079:22-2081:10); and that he considered past actions by the FTC in the telescope industry and how the FTC defined the market (*id.* at 1982:11-1983:2, 2100:16-2102:1). His testimony is substantial evidence of the relevant market that supports the jury's verdict. Ningbo Sunny also argues that Dr. Zona's analysis is fatally flawed because he did not perform certain tests or analyses, and did not consider certain facts. But Ningbo Sunny cites no authority holding that the tests it raises are necessary to properly define a market, and the Court is not persuaded that they are necessary in this case. While Ningbo Sunny's arguments may support a finding contrary to the jury's finding, they do not show that the jury's verdict cannot stand. *See Dunlap*, 878 F.3d at 797.

### v. Predatory Conduct

To support its Section 2 claims, Orion had to show that Defendants engaged in predatory conduct. *See Coalition for ICANN Transparency, Inc. v. Verisign, Inc*., 611 F.3d 495, 506 (9th Cir. 2010). In the First JMOL Order, the Court found that Defendants' conduct in connection with the Meade acquisition and the Hayneedle Assets was sufficient to support a finding of predatory conduct. The facts of the Meade acquisition and the Hayneedle assets also underpin much of Orion's Section 1 claims. Ningbo Sunny contends that if this motion succeeds on the Section 1 claims, then it must also succeed in showing that there was insufficient evidence to support a finding of predatory conduct. Accordingly, the motion is denied as to the predatory conduct argument for the same reasons that motion is denied as to the Section 1 claims as discussed below.

### c. Claims Under Section 1 of the Sherman Act

Ningbo Sunny advances three arguments pertaining to Orion's claims under Section 1 of the Sherman Act: (1) that Orion failed to produce sufficient evidence to prove that Ningbo Sunny joined a conspiracy to fix Orion's prices or credit terms, (2) that Orion did not produce sufficient evidence that Ningbo Sunny joined a conspiracy to allocate the market, and (3) that there is no evidence of injury or of a conspiracy continuing after September 2016.

Case No.: 5:16-cv-06370-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO ALTER JUDGMENT; DENYING RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW; DENYING MOTION FOR NEW TRIAL; GRANTING MOTION FOR ATTORNEYS' FEES AND COSTS
14

United States District Court
Northern District of California

### i. Conspiracy to Fix Prices or Credit Terms

Ningbo Sunny attacks the sufficiency of the evidence as to Claim 1 for Conspiracy to fix prices and credit terms on three separate grounds. Ningbo Sunny first argues that there is not sufficient evidence that Ningbo Sunny and Suzhou Synta—the Synta entity with which it is a direct horizontal competitor—entered into a conspiracy. The argument is that Orion purchased Ningbo Sunny's telescopes through an individual named Joyce Huang who worked for a distributor called Good Advance and not for Suzhou Synta. And that Ningbo Sunny provided its pricing information to Huang. Trial Tr. at 1331:25-1335:19, 1578:1-12, 1579:3-20. So, the argument goes, Ningbo Sunny had legitimate reasons to exchange pricing information with Huang as the distributor of its telescopes. But this argument overlooks the abundant evidence that Shen also controlled Good Advance and that Huang worked for Shen. *Id*. at 432:13-433-23; TX 1779.007; TX 2091.002; TX 1402. Orion also produced evidence that Defendants and the Synta Entities conspired through Huang to fix prices. *See, e.g.*, TX 1347; TX 1864; TX 1935. Accordingly, there was substantial evidence for the jury to find that Defendants and the Synta Entities conspired to fix prices. Because this evidence is sufficient to support the jury's verdict on this claim, the Court does not need to consider Ningbo Sunny's other arguments concerning this Claim.

### ii. Conspiracy to Allocate the Market

Ningbo Sunny's next argument—that there is insufficient evidence that it conspired with the Synta Entities to divide the market—fares no better. Orion presented evidence that the Defendants and the Synta Entities had an agreement to "cooperate for the benefit of the entire group of companies" and to "dominate the telescope industry." TX 1311; TX 1805. Orion further presented evidence that the Synta Entities and Defendants coordinated to allocate customers between them. TX 1769.001; TX 1765. Orion also presented evidence that even though Defendants and the Synta Entities are capable of manufacturing competing lines of telescopes, Defendants do not make lines of telescopes that compete with telescopes made by the Synta

Case No.: 5:16-cv-06370-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO ALTER JUDGMENT; DENYING RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW; DENYING MOTION FOR NEW TRIAL; GRANTING MOTION FOR ATTORNEYS' FEES AND COSTS

15

United States District Court
Northern District of California

Entities, which supports an inference that they are, in fact, competitors. Trial Tr. at 1856:11-1857:2, 1864:11-21; TX 1927; TX 1438.

Ningbo Sunny argues that this evidence is deficient. First, it argues that the communications between Defendants and the Synta Entities can be interpreted in a way that would not imply unlawful conduct. This argument fails because the Court must draw inferences in Orion's favor on this motion. *See Dunlap*, 878 F.3d at 797; *Cieslikowski*, 2019 WL 978095, at \*3. Next, Ningbo Sunny argues that this theory of liability makes no economic sense because Dr. Zona testified that over 200 entities operate in the market. Trial Tr. at 1989:9-22. However, this argument omits that those 200 entities control just 20-30 percent of the market. *Id.*; TX 1938. Ningbo Sunny also argues that a market-allocation conspiracy makes no economic sense because its subsidiary Meade and Celestron compete against each other to sell high-end telescopes. However, the substantial evidence that Mr. Shen and other officers for the Synta Entities—including Celestron itself—assisted Ningbo Sunny in acquiring Meade undercuts this theory. *E.g.*, Trial Tr. 581:23-582:4, 818:4-821:15, 956:23-958:2; TX 1076 Ex. A; TX 1303.002; TX 1378; TX 1787; TX 1209; TX 1779.007; TX 1157; TX 1317. Indeed, after the acquisition Mr. Ni and Mr. Shen shared information about Meade's pricing and business strategy, and they, along with the officers of Meade and Celestron, discussed strategy on multiple occasions. Trial Tr. 680:11-16; TX 1017; TX 1286; TX 1660; TX 1306; TX 1533; TX 1082; TX 1313; TX 1208. Finally, Ningbo Sunny argues that the testimony Dr. Sasian is inadmissible because it was based on neither his technical or specialized knowledge, nor his personal knowledge. *See* Fed. R. Evid. 702. However, Ningbo Sunny did not raise this argument in its Rule 50(a) motion, so it is waived here. *OTR Wheel Eng'g.*, 897 F.3d at 1016. But even if it had not been waived the Court would deny this argument for the reasons discussed above in section II.e of this order.

### iii. Conspiracy After September 2016

In September 2016, Orion and the Synta Entities executed a settlement agreement and a supply agreement. Dkt. No. 534-2 (the "Settlement"); Dkt. No. 534-4 (the "Supply Agreement").

Case No.: 5:16-cv-06370-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO ALTER JUDGMENT; DENYING RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW; DENYING MOTION FOR NEW TRIAL; GRANTING MOTION FOR ATTORNEYS' FEES AND COSTS

16

United States District Court
Northern District of California

Under these agreements, Orion began purchasing telescopes directly from the Synta Entities with a "Most Favored Customer" pricing provision. Dkt. No. 534-4. At that time, Ningbo Sunny stopped selling products to Orion. Trial Tr. at 1642:3-5. The Synta Entities now provide about 75 percent of Orion's supply. Trial Tr. at 1738:11-21, 1767:1768:15, 1769:23-1770:14. Ningbo Sunny argues that Orion bears of the burden of showing that the conspiracy extended past the date of those agreements, and that it has failed to do so. Assuming without accepting that Ningbo Sunny's legal argument is correct, the Court would still reject this argument. As discussed above, Orion has presented significant evidence that Defendants and the Synta Entities engaged in an anticompetitive conspiracy that targeted Orion. Orion presented evidence that the conspiracy continued into 2016. *See, e.g.*, TX 1208. And Orion's witnesses testified that following the execution of the Settlement and the Supply Agreement, the Synta Entities briefly reset its prices, but then began increasing them so that Orion must now pay more for telescopes that it had before. Trial Tr. at 1738:11-21, 1767:1768:15, 1769:23-1770:14. Given the totality of the evidence and Ningbo Sunny's heavy burden, the Court denies the motion as to this argument.

### d. Claim 5—the Clayton Act Claim

In assessing claims brought under Section 7 of the Clayton Act, courts employ a burden shifting framework where the plaintiff must first establish a prima facie case that the merger in question is anticompetitive, then the burden shifts to the defendants to rebut the prima facie case, and if the defendant can do so the burden shifts back to the plaintiff. *See Saint Alphonsus Med. Ctr.-Nampa Inc. v. St. Luke's Health Sys., Ltd.*, 778 F.3d 775, 783 (9th Cir. 2015). "To establish a prima facie case, the [plaintiff] must (1) propose the proper relevant market and (2) show that the effect of the merger in that market is likely to be anticompetitive." *Fed. Trade Comm'n. v. Penn State Hershey Med. Ctr.*, 838 F.3d 327, 337–38 (3d Cir. 2016). "Definition of the relevant market is a factual question dependent upon the special characteristics of the industry involved." *Saint Alphonsus*, 778 F.3d at 783 (citation and quotation omitted).

United States District Court
Northern District of California

Ningbo Sunny first argues that there is insufficient evidence to sustain the jury's verdict on Claim 5 because Orion failed to properly define the relevant market. For the reasons discussed above, the Court finds that this argument is not persuasive. Next, Ningbo Sunny refers back to its Rule 50(a) motion to argue that the Meade acquisition was actually pro-competitive because Ningbo Sunny was brought back from the brink of bankruptcy. However, Dr. Zona analyzed the Meade acquisition's effect on the Herfindahl-Hirschman Index ("HHI") for the market and found that following the acquisition, the HHI spiked more than 1000 points. TX 1939. This jump in HHI is substantial evidence that the Meade acquisition's effect "may be substantially to lessen competition, or to tend to create a monopoly." 18 U.S.C. § 18; *see United States v. Anthem, Inc.*, 855 F.3d 345, 367 (D.C. Cir. 2017); *ProMedica Health Sys., Inc. v. Fed. Trade Comm'n .*, 749 F.3d 559, 570 (6th Cir. 2014); *Fed. Trade Comm'n. v. H.J. Heinz Co.*, 246 F.3d 708, 716 (D.C. Cir. 2001). Thus, Ningbo Sunny's argument is not the only reasonable conclusion the jury could have reached, and it has failed to rebut Orion's prima facie case.

Finally, Ningbo Sunny argues that Orion has not presented any evidence of damages flowing from Claim 5. The Court had already considered and rejected this argument as discussed above in section II.d of this order.

### e. State Law Claims

Finally, Ningbo Sunny argues that because Orion's state law claims are based on the same conduct as the federal claims, it is entitled to judgment as a matter of law on those claims as well. *See Cnty. of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1160 (9th Cir. 2001); *Stevens v. Sup. Ct.*, 75 Cal. App. 4th 594, 602 (1999). But, as discussed above, the Court finds that the motion must be denied as to the federal claims, so it must also be denied as to the state law claims.

## IV. Ningbo Sunny's Motion Alter or Amend Judgment (Dkt. No. 534)

Ningbo Sunny moves to reduce the amount of the Partial Judgment by the value of the Settlement and the Supply Agreement. Ningbo Sunny's motion is based on four separate values that it contends arise from those agreements: (a) $500,000 that the Synta Entities paid to Orion as

Case No.: 5:16-cv-06370-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO ALTER JUDGMENT; DENYING RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW; DENYING MOTION FOR NEW TRIAL; GRANTING MOTION FOR ATTORNEYS' FEES AND COSTS

18

part of the Settlement; (b) $8,665,586.59 that Ningbo Sunny represents is the profits that Orion earned from telescopes purchased from Suzhou Synta through the Supply Agreement, *i.e.*, the value of the Supply Agreement; (c) $600,000 that the Synta Entities paid cash to Orion under the Supply Agreement; and (d) $3 million that Ningbo Sunny represents is the value of the Hayneedle Assets that were transferred to Orion from the Synta Entities as part of the Settlement. Orion agrees that the $500,000 should be offset from the Partial Judgment. Accordingly, the Court will deduct $500,000 from the Partial Judgment. The parties disagree as to the three other amounts. The Court denies the motion as to the $8,665,586.59 purportedly representing the value of the Supply Agreement, grants the motion as to the $600,000 paid under the Supply Agreement, and partially grants the motion as to value of the Hayneedle Assets.

"[A] plaintiff who has recovered any item of damage from one coconspirator may not again recover the same item from another conspirator; the law . . . does not permit a plaintiff to recover double payment." *Zenith Radio Corp. v. Hazeltine Research, Inc*., 401 U.S. 321, 348, (1971). "If the payment made is in a form other than cash, the district court should value the property and deduct that amount." *Seymour v. Summa Vista Cinema, Inc*., 809 F.2d 1385, 1389 (9th Cir.), *amended*, 817 F.2d 609 (9th Cir. 1987); *see also Bal Theatre Corp. v. Paramount Film Distrib. Corp*., 206 F. Supp. 708, 714 (N.D. Cal. 1962) ("The rule . . . seems to be that anything of value received should be set off in addition to the cash settlement."). However, "[d]istrict courts may not . . . engage in speculation in evaluating settlements." *Seymour*, 809 F.2d at 1390. Courts should first treble the damages award, and then deduct the amount of any prior settlements. *William Inglis & Sons*, 981 F.2d at 1024.

      a.   The Supply Agreement

           i.   Judicial Estoppel

Orion first opposes setting off any value from the Supply Agreement on the grounds that Ningbo Sunny is judicially estopped from arguing that the Supply Agreement is part of the Settlement because Ningbo Sunny already successfully argued—in opposing Orion's *limine*

motion—that the Supply Agreement and the Settlement are separate. *See* Dkt. Nos. 329 (Orion's *limine* motion), 356 (Defendants' opposition), 416 & 423 (the Court's orders on Orion's *limine* motion). "Judicial estoppel is an equitable doctrine that precludes a party from gaining an advantage by asserting one position, and then later seeking an advantage by taking a clearly inconsistent position." *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 782 (9th Cir. 2001). Courts should consider three factors when determining whether to apply the judicial estoppel doctrine: (1) whether a party's later position "must be clearly inconsistent" with its earlier position, (2) whether the party succeeded in persuading the court to accept its earlier position, and (3) whether the party seeking to assert the inconsistent position would derive an unfair advantage if not estopped. *Id.*

Orion's argument misreads both Ningbo Sunny's earlier argument and the Court's prior orders such that that Orion cannot succeed on the first and second factors. While Ningbo Sunny did argue that the Settlement and the Supply Agreement are separate documents, it did not argue that the Supply Agreement was not incorporated into the Settlement or that the Supply Agreement was not a material term of the Settlement. *See* Trial Tr. at 150:17-18 (the Supply Agreement "*by itself*, is not a settlement. It's not a release of claims. It is a pure business document.") (emphasis added), 172:10-13 ("it's attached to the Settlement Agreement and it's incorporated by reference"). Similarly, the Court did not rule that the Supply Agreement is not "part of" the Settlement. Rather, the Court ruled that Federal Rule of Evidence 408 did not bar the admission of the Supply Agreement's § 4, which is the most favored customer pricing provision. Dkt. Nos. 416 at 5-8, 423. The Court reasoned that § 4 of the Supply Agreement "standing alone" was not evidence of the Settlement, so it did not fall within the plain text of Federal Rule of Evidence 408. Dkt. No. 416 at 6-7. The Court also found that precluding admission of § 4 would likely lead to inefficiencies at trial and confusion among the jurors. *Id.* at 5, 7. The Court did not find that the Supply Agreement is not a material term or condition of the Settlement. Accordingly, Orion does not succeed on the first and second factors, so this argument fails.

United States District Court
Northern District of California

ii. Orion's Profits Arising From The Supply Agreement

The Court now considers the two amounts stemming from the Supply Agreement: the $600,000 cash payment from the Synta Entities to Orion, and Orion's purported profits attributable to the Supply Agreement. Orion does not address this cash payment in its opposition and did not address it at the hearing. Because the Supply Agreement is a material term of the Settlement, the Court finds that the cash payment under the Supply Agreement, like the cash payment under the Settlement, should be deducted from the Partial Judgment.

Turning to the Orion's profits from the Supply Agreement, the parties disagree as to proper way to determine the value of such a non-monetary, commercial settlement term. Ningbo Sunny attached a declaration from Dr. Savaria, wherein she concludes that Orion acquired $8,665,586.59 in profits from September 2016 to August 2019 on account of the Supply Agreement. Dkt. No. 435 ¶ 5. Dr. Savaria's declaration, Ningo Sunny argues, is not an expert report and is therefore admissible. Ningbo Sunny argues that Orion does not provide a monetary valuation of the Supply Agreement, so the Court should accept Dr. Saravia's valuation and reduce the Partial Judgment by that amount. Orion counters that Ningbo Sunny, as the movant, bears the burden of proving the value of the Supply Agreement and that Dr. Savaria's declaration is an inadmissible expert report. So, the argument goes, Ningbo Sunny has not met the burden of proof as to this portion of the motion.

Orion has the better argument. First, Dr. Savaria's declaration is an expert report that is untimely and inadmissible under Federal Rules of Civil Procedure 26 and 37, and Federal Rule of Evidence 702. Ningbo Sunny's argument that Dr. Savaria merely tallied Orion's supply purchases from the Synta Entities and applied the profit margin calculated by Dr. Zona oversimplifies her declaration and her methodology. For example, she made the decision to apply the profit margin that Dr. Zona calculated for *all* of Orion's sales from 2012 through 2018, instead of a profit margin for Orion's profits from Synta Suzhou telescopes from September 2016 through August 2019. Her conclusion "assum[es]" that Orion had the same margin on products provided by

Case No.: 5:16-cv-06370-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO ALTER JUDGMENT; DENYING RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW; DENYING MOTION FOR NEW TRIAL; GRANTING MOTION FOR ATTORNEYS' FEES AND COSTS

21

United States District Court
Northern District of California

Suzhou Synta as products from other suppliers. Dkt. No. 435 at 2 n.2. The Court does not accept that the decision to apply one margin of profit for certain products over a specific time period to other products sold over a different time period is a decision that can be made without expertise or specialized technical knowledge. The Court does not raise this issue to find that her conclusion is incorrect, but rather to point out that her declaration and her conclusion as to the value of the Supply Agreement fall within the scope of Federal Rule of Evidence 702. Dr. Savaria's declaration is expert testimony. Because it was not properly disclosed during expert discovery, it is inadmissible now. *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001).

In its reply, Ningbo Sunny changes its argument from simply offering Dr. Savaria's number as the proper amount to offset as it did in the motion (Dkt. No. 534 at 4-5) to arguing that because there is a settlement, the burden shifts to Orion to demonstrate the monetary value of the Supply Agreement so that it can be offset from the Partial Judgment (Dkt. No. 573 at 6). Because Orion does not provide such a value, Ningbo Sunny contends that Dr. Savaria's number is "unrebutted." Ningbo Sunny bases its argument on the Third Circuit case *Gulfstream III Assocs., Inc. v. Gulfstream Aerospace Corp.*, 995 F.2d 425, 435 (3d Cir. 1993). But that case is off-point and inapplicable here. There, the Third Circuit considered how to allocate the values of various settlements with different settling defendants across the plaintiff's multiple claims supporting its judgment against a single non-settling defendant. *See id.* at 433-36. The plaintiff contended that one of the settlements resolved state law fraud claims against one settling defendant, so that settlement amount should not be deducted from the jury award for his federal antitrust claim against the non-settling defendant. *Id.* The monetary values of the settlements in question were not in dispute. *See id.* at 433-35. The Third Circuit found that a burden-shifting framework would be appropriate to allocate the definite settlement amounts across various claims relating to different defendants. *Id.* at 436. Ningbo Sunny cites no cases that have applied such a burden-shifting framework to determining the monetary value of the non-monetary terms of a settlement.

This Court sees no reason to use such a framework here.

Instead, the Court will follow the Restatement of Torts that places the burden of proving that an offset is appropriate on the defendant. *See* Restatement (Third) of Torts: Apportionment of Liability § 16 cmt. f (2000). The Court notes that this approach aligns with other courts in this District. *See, e.g.*, *Borges v. Cty. of Humboldt*, 2017 WL 4552006, at *2 (N.D. Cal. Oct. 12, 2017) ("A defendant seeking an offset against a money judgment has the burden of proving the offset"); *Davis v. Prison Health Servs.*, 2012 WL 4462520, at *3 (N.D. Cal. Sept. 25, 2012) ("Defendant has the burden of showing that he is entitled to an offset."); *Velez v. Roche*, 335 F. Supp. 2d 1022, 1042 (N.D. Cal. 2004) ("[The non-settling defendant] has failed to meet its burden" to prove an offset is appropriate.).

The Court finds that Ningbo Sunny bore the burden of proving the value that Orion derived from the Supply Agreement. Because Ningbo Sunny relied on an inadmissible expert report, it has failed to carry its burden as to this portion of the motion. The Court will not offset any profits Orion may have obtained from the Supply Agreement.[1]

b. The Hayneedle Assets

Ningbo Sunny also moves to offset $3 million, which it represents is the value of the Hayneedle Assets. The Synta Entities transferred them to Orion as part of the Settlement. Dkt. No. 534-2 § 3. Orion originally tried to purchase the Hayneedle Assets in 2014 for $4.4 million. Trial Tr. at 1804:7-1805:9; TX 1241. After Orion and the Synta Entities executed the Settlement and Orion acquired the Hayneedle Assets, Orion's President valued them between $2-3 million in an internal document. TX 217-004. Orion argues that Ningbo Sunny has not adequately proven

---

[1] In Section III of its opposition, Orion makes two arguments that it represents apply to both its profits under the Supply Agreement and the Hayneedle Assets. However, the arguments presented concern only Orion's profits from the Supply Agreement, not the value of the Hayneedle assets. The Court does not consider these arguments because it has already ruled that it will not deduct Dr. Saravia's calculation of Orion's profits from the partial judgment. For similar reasons, the Court does not consider Orion's argument in Section I.C that also applies only to the value of the Supply Agreement.

their value so this offset must be denied in full. The Court finds that Ningbo Sunny has carried its burden in part. Unlike the value of the Supply Agreement, expert analysis is not necessary here because Orion's president calculated the value in question. Orion also argues that unrebutted trial testimony indicates that when Orion obtained them, "they had been greatly diminished in value." Trial Tr. at 1820:25-1821:1. This argument does not move the Court because it is consistent with Orion's attempt to purchase them for $4.4 million in 2014, and its assessment of their value at $2-3 million after the acquisition two years later.

Orion also argues that Defendants' interference with Orion's 2014 attempt to purchase the Hayneedle Assets was litigated to the jury and the jury knew that Orion eventually acquired them, so the jury's damages award already offset their value. This argument is pure speculation. While there was trial testimony that Orion acquired the Hayneedle Assets, Defendants did not argue that the jury should deduct their value from any damages award, and the verdict form does not indicate that the jury considered the value of the Hayneedle Assets in determining damages. *See* Dkt. No. 501. This argument does not move the Court.

Because Orion's president determined the value of the Hayneedle Assets to fall within a range, the Court will only offset the Partial Judgment by the low end of that range. It is Ningbo Sunny's burden to show that more than the minimum amount should be offset. It has not done so.

c. Conclusion

The Court denies the motion to offset the purported value of the Supply Agreement; grants the motion as to the $500,000 paid under the Settlement and the $600,000 paid under the Supply Agreement, and partially grants the motion as to the value of the Hayneedle Assets by deducting $2 million from the Partial Judgment. In total, the Court will offset $3.1 million from the Partial Judgment.

**V.    Orion's Motion for Attorneys' Fees and Costs (Dkt. No. 558)**

Orion moves for an order to recover its attorneys' fees and costs. As the prevailing party, the Partial Judgment recognized that Orion is entitled to such a recovery. Dkt. No. 518. Ningbo

Sunny opposed the motion. Orion seeks $4,204,664.85 in fees and $525,706.88 in costs for a total award of $4,730,371.73. Having considered the parties papers—including the declaration of Orion's counsel, Noah Hagey of the law firm Braun Hagey & Borden LLP ("BHB"), and the exhibits attached thereto, the Court grants the motion. Dkt. Nos. 562-1 (Hagey's Declaration.), 558-2, 553-3 (the exhibits to the Hagey Declaration).[2]

The Clayton Act provides that a prevailing antitrust plaintiff "shall recover . . . the cost of suit, including a reasonable attorney's fee." 15 U.S.C. § 15(a). In the Ninth Circuit, courts use the "lodestar" method of calculating attorneys' fees. *Camacho v. Bridgeport Fin., Inc*., 523 F.3d 973, 982 (9th Cir. 2008). "The 'lodestar' is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." *Morales v. City of San Rafael*, 96 F.3d 359, 363 (9th Cir.1996). "The prevailing party must submit evidence of the appropriate hours expended on the litigation and establish that its requested hourly rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Masimo Corp. v. Tyco Health Care Group, L.P*., 2007 WL 5279897, *2 (C.D. Cal. Nov. 5, 2007); *see also Frank Music Corp. v. Metro-Goldwyn-Mayer Inc*., 886 F.2d 1545, 1557 (9th Cir. 1989) ("Plaintiffs bear the burden of showing the time spent and that it was reasonably necessary to the successful prosecution of their copyright claims."). "In establishing the reasonable hourly rate, the court may take into account: (1) the novelty and complexity of the issues; (2) the special skill and experience of counsel; (3) the quality of representation; and (4) the results obtained." *Caplan v. CNA Fin. Corp*., 573 F. Supp. 2d 1244, 1249 (N.D. Cal. 2008). The party opposing the motion "has the burden of rebuttal to challenge the accuracy or reasonableness of the hours charged." *Masimo*, 2007 WL 5279897, at *2. In most cases, the lodestar calculation is presumptively reasonable. *Camacho*, 523 F.3d at 982. While in some cases, the prevailing party may need to submit detailed records of its time,

---

[2] Orion originally filed the Hagey Declaration at Docket Number 558-1, but later filed an errata at Docket Numbers 562 and 562-1.

Case No.: 5:16-cv-06370-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO ALTER JUDGMENT; DENYING RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW; DENYING MOTION FOR NEW TRIAL; GRANTING MOTION FOR ATTORNEYS' FEES AND COSTS

25

"[t]he lack of contemporaneous records does not justify an automatic reduction in the hours claimed." *Frank Music*, 886 F.2d at 1557. If the hours claimed under are "reasonable under the circumstances and supported by other evidence such as testimony or secondary documentation," the court may credit the hours. *Id.*

At the outset, the Court notes that Ningbo Sunny's counsel, the law firm Sheppard, Mullin, Richter & Hampton LLP ("Sheppard"), has billed over $9 million in attorneys' fees and costs for this litigation. Dkt. No. 558-3 at 3. Ningbo Sunny's bills are approximately twice the amount that Orion seeks in this motion. The Court finds that this disparity in billing between the two firms is strong evidence that BHB's bills and costs are reasonable.

Turning to the BHB's claimed hourly rates for its attorneys, contract attorneys, legal assistants, and paralegals, the Court finds them to be reasonable. BHB charges hourly rates between $795 to $425. Dkt. No. 562-1 ¶ 8. These rates are in line with rates that have been approved in other cases in the Northern District. *See, e.g.*, *Walker v. B&G Foods, Inc., et al.*, Case No. 16-15349, slip op. at 306, Dkt. No. 26, (9th Cir., Jul. 20, 2017) (finding BHB's rates to be reasonable); *Hill v. Robert's American Gourmet Food, LLC*, No. 3:13-mc-80166-JST, Dkt. No. 17, slip op. at 1-2 (N.D. Cal. Oct. 11, 2013) (granting BHB's motion for fees at an hourly rate of $695); *In re TFT-LCD (Flat Panel) Antitr. Litig.*, No. 3:07-md-01827-SI, Dkt. No. 7688, slip op. at 13-14 (approving award where special master set hourly rates between $350 and $1,000). The four contract attorneys Orion hired charged between $225 and $450 per hour. Dkt. No. 562-1 ¶ 45. Each of the contract attorneys are well credentialed and their billing rates are in line with, or less than, the rates of the U.S. Attorney's Office Fees Matrix, which the federal government uses when seeking fees for attorneys who represent the United States. Dkt. No. 575-2. For its paralegals and legal assistants, BHB charged hourly rates between $175 and $275. Dkt. No. 562-1 ¶¶ 52-56. While these rates are above the U.S. Attorney's Office Fees Matrix rate of $173, the Court finds that they are not unreasonable given the quality of the representation provided to Orion by BHB, the results of the trial, and the difference between BHB's total claimed bills and

Case No.: 5:16-cv-06370-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO ALTER JUDGMENT; DENYING RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW; DENYING MOTION FOR NEW TRIAL; GRANTING MOTION FOR ATTORNEYS' FEES AND COSTS

26

United States District Court
Northern District of California

the total bills charged to Ningbo Sunny by its counsel. *See Theme Promotions, Inc. v. News Am. Mktg. FSI, Inc*., 731 F. Supp. 2d 937, 948 (N.D. Cal. 2010); *Caplan*, 573 F. Supp. 2d at 1249.

The Court also finds that the hours claimed in this motion are reasonable. Before filing this motion, BHB wrote off over $122,000 in billing that was excessive or redundant. Dkt. No. 562-1 ¶ 57. BHB then wrote off an additional five percent of its total billing, reducing its claimed bills by an additional $221,298.15. *Id.* The Court also notes that the underlying facts of this litigation were complex and that the litigation was hard fought. Defendants are a foreign parent company and its two subsidiaries. The antitrust conspiracy involved many other foreign entities allegedly controlled by one person. This litigation has been before this Court since November 2016. Defendants filed two motions to dismiss. Dkt. Nos. 17, 44. The parties produced nearly 6.5 million pages of documents, and deposed multiple Mandarin speaking witnesses. The parties brought several discovery disputes before the assigned magistrate judge. *See, e.g.*, Dkt. Nos. 97, 115, 138, 173, 174, 175, 120, 208, 242. Both parties moved for summary judgment. Dkt. Nos. 256, 270. Both parties filed two motions to exclude expert testimony. Dkt. Nos. 252, 254, 257, 259. They briefed a total of 10 *limine* motions. Dkt. Nos. 316, 317, 318, 319, 320, 321, 322, 324, 325, 329. The trial lasted 18 court days during which time, the parties presented arguments, offered evidence, and made objections. Ningbo Sunny objects because Orion has not submitted any billing records. But here, the Court finds that significant difference in bills between the two law firms indicates that the claimed hours are reasonable under the circumstances, so the Court may rely on Hagey's declaration—which was made and signed under penalty of perjury—without reviewing contemporaneous billing records. Dkt. No. 562-1; *Frank Music*, 886 F.2d at 1557.

Finally, Ningbo Sunny objects that Orion did not meet and confer before filing this motion as required by Civil Local Rule 54-5(a). However, one of Orion's attorney's filed a declaration stating that BHB requested to continue another conference to discuss Orion's attorneys' fees and costs, but Ningbo Sunny's counsel declined. Dkt. No. 575-5 ¶ 3. He represents that Ningbo Sunny's counsel stated that further discussion would not be productive and would have no point.

Case No.: 5:16-cv-06370-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO ALTER JUDGMENT; DENYING RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW; DENYING MOTION FOR NEW TRIAL; GRANTING MOTION FOR ATTORNEYS' FEES AND COSTS

27

United States District Court
Northern District of California

*Id.* The Court finds that Orion's attempt to meet and confer satisfies the requirement of Civil Local Rule 43-5(a).

The Court will also award Orion its claimed costs. Orion initially sought $778,117.02 in costs, but when Ningbo Sunny objected to certain costs in its opposition, Orion removed those costs from its request. This reduced Orion's request by $252,410.14 to $535,706.88. *See* Dkt. No. 575 at 6 n.2. Ningbo Sunny objects that Orion has not submitted sufficient records to support this portion of the motion, but again, the Court finds that the comparison between BHB's billings and Sheppard's billings indicates that the claimed costs are reasonable and that the Court need not review more detailed records. *See Frank Music*, 886 F.2d at 1557. The Court can and will rely on the Hagey declaration.

Ningbo Sunny next two arguments are related and seem to arise from a misunderstanding of the Clayton Act's fee shifting provision. Ningbo Sunny argues that Civil Local Rule 54-1 requires a prevailing party to file a Bill of Costs in order to recover taxable costs. It then argues that many of the claimed costs are not recoverable under the Local Rule or 28 U.S.C. § 1920. These arguments are related because Local Rule 54-3 and 28 U.S.C. § 1920 set out what costs are taxable, and the Bill of Costs is required for a party seeking to recover taxable costs. The flaw in this argument is that under the Clayton Act and Ninth Circuit case law, Orion's recovery goes beyond taxable costs. In *Grove v. Wells Fargo Financial California, Inc*., the Ninth Circuit held that the statutory phrase "reasonable attorney's fees includes certain litigation expenses when it is the prevailing practice in a given community for lawyers to bill those costs separate from their hourly rates." 606 F.3d 577, 580 (9th Cir. 2010). The Clayton Act directs that a prevailing antitrust plaintiff "shall" recover "a reasonable attorney fee." Here, the Hagey declaration states that the claimed costs were ordinarily incurred and paid by the client. Accordingly, Orion may recover the claimed non-taxable costs. Ningbo Sunny's objections to certain costs as not authorized under Local Rule 53-3 or 28 U.S.C. § 1920 lack merit.

Case No.: 5:16-cv-06370-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO ALTER JUDGMENT; DENYING RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW; DENYING MOTION FOR NEW TRIAL; GRANTING MOTION FOR ATTORNEYS' FEES AND COSTS

28

The Court further finds that Hagey's declaration satisfies Local Rule 54-1's requirement that Orion file a Bill of Costs. Exhibit 1 to the declaration lists all of the claimed costs and Hagey's sworn declaration attests that they are a true and correct list of Orion's expenses. Orion filed it pursuant to a stipulated briefing schedule that included the instant motion. Denying this motion because Orion filed a declaration instead of a Bill of Costs would elevate form over substance. *Cf. Murguia v. Palmer*, 2016 WL 54669, at \*2 (D. Nev. Jan. 5, 2016); *McCollough v. Johnson, Rodenburg & Lauinger*, 2009 WL 2476543, at \*5 (D. Mont. June 3, 2009). Orion may recover $525,706.88 in costs.

Orion's Motion for Attorneys' Fees and Costs is granted. The Court will add $4,730,371.73 to the Partial Judgment.

## VI. Conclusion

For the reasons discussed above, the Court denies Ningbo Sunny's Motion for a New Trial, denies Ningbo Sunny's Renew Motion for Judgment as a Matter of Law; denies in part and grants in part Ningbo Sunny's Motion to Alter the Judgment; and grants Orion's Motion for Attorneys' Fees and Costs. Based on these rulings the Court will deduct $3,100,000 from the Partial Judgment to offset the value of the Settlement and the Supply Agreement, and then add $4,730,371.73 for Orion's attorneys' fees and costs. The Court will issue an Amended Partial Judgment totaling $52,030,371.73.

**IT IS SO ORDERED.**

Dated: April 3, 2020

EDWARD J. DAVILA
United States District Judge

Case No.: 5:16-cv-06370-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO ALTER JUDGMENT; DENYING RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW; DENYING MOTION FOR NEW TRIAL; GRANTING MOTION FOR ATTORNEYS' FEES AND COSTS

29

United States District Court
Northern District of California